UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

DAVID JELLISON,               §
    Plaintiff,            §
                      §
v.                            §      CIVIL ACTION NO. 1:15-cv-1054 LY
                      §
STATE FARM LLOYDS,            §
    Defendant.            §

## DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Defendant State Farm Lloyds ("State Farm") files this Motion for Summary Judgment pursuant to Fed. R. Civ. P. 56(a), because the appraisal is now complete, and State Farm's payment of the appraisal award entitles Defendant to summary judgment on Plaintiff's contractual and extra-contractual claims.

## I.
## SUMMARY

1.    Plaintiff brought this suit against Defendant alleging various claims concerning damage to his dwelling from a storm occurring on October 31, 2013. State Farm invoked the appraisal provision of the Homeowners Policy. Broadly speaking, the appraisal provision allows either party to invoke a process by which the amount of the loss is determined by agreement of appraisers or, if necessary, an umpire mutually agreed to by the appraisers or appointed by the court. The amount of loss in this case was set by one of the appraisers and the umpire mutually agreed to by the appraisers. State Farm timely paid the appraisal award. Payment of the appraisal award resolves and disposes of all claims in this lawsuit. Plaintiff is estopped from maintaining a breach of contract claim as a matter of law based on State Farm's timely payment of the appraisal award. Additionally, Plaintiff has no extra-contractual claims because he has suffered no

independent injury that would otherwise entitle him to damages, and State Farm timely investigated his claim.

## II.
## SUMMARY JUDGMENT EVIDENCE

2.      In support of this motion, State Farm attaches the following summary judgment evidence filed herewith and incorporated by reference as if fully set forth herein:

Exhibit A:      Plaintiff's Homeowners Policy, with Business Records Affidavit

Exhibit B:      Affidavit of Claim Specialist Ashley Taylor.

           Exhibit B-1:    State Farm Claim Activity File Notes Excerpts

           Exhibit B-2:    November 25, 2013, State Farm Letter and Estimate

           Exhibit B-3:    June 8, 2015, State Farm Letter and Estimate

           Exhibit B-4:    July 10, 2015, Appraisal Demand

           Exhibit B-5:    July 27, 2015, Plaintiff's Appraiser Designation

           Exhibit B-6:    June 29, 2016, Plaintiff's Substitute Appraiser Designation

           Exhibit B-7:    Appraisal Award

           Exhibit B-8     November 18, 2016, State Farm Letter Tendering Payment of Appraisal Award

           Exhibit B-9     January 19, 2015, Demand from Plaintiff

           Exhibit B-10    June 19, 2015 and July 2, 2015, Demands from Plaintiff

Exhibit C:      *Stewart v. Geovera Specialty Ins.*, No. H-14-3162 (S.D. Tex., Oct. 21, 2015, Memorandum and Order, Judge Ewing Werlein, Jr.)

# III.
# UNDISPUTED FACTS

3.      At the time of the loss, Plaintiff's house was insured under a State Farm Homeowners Policy for approximately $202,000 (Coverage A, Dwelling Limits).[1]  On or about November 4, 2013, a claim was reported for damage to Plaintiff's house from a storm occurring on October 31, 2013.[2]  On November 6, 2013, State Farm contacted Plaintiff by telephone to acknowledge the claim and get additional information regarding the loss.[3]  State Farm inspected the property on November 13, 2013, with Plaintiff present.[4]  State Farm found interior water damage, caused by the nails backing out of the 29 year old metal roof.[5] State Farm explained to Mr. Jellison that prior to issuing payment it needed to ensure that none of the damage had been paid for under a prior roof leak claim in 2007.[6] After reviewing Plaintiff's 2007 claim, State Farm prepared a letter and estimate advising Mr. Jellison that State Farm found damage to the property in the amount of $10,592.22 replacement cost value.[7]  State Farm's November 25, 2013 letter further advised that with respect to the 2007 claim State Farm had paid $1,862.11 for damages to the kitchen, utility room, dining, and living room, which had not been repaired, and that amount would be subtracted from the current estimate, as the repairs had not been made.[8] After deducting for $4,799.26 in depreciation, the $1,862.11 prior payment, and the $4,040 deductible, no payment was issued.[9]

4.      In August 2014, Plaintiff contacted his State Farm agent requesting additional information on why the prior claim amounts had been subtracted from the November 25 estimate.[10]

---

[1]      *See Exhibit A*, Plaintiff's Homeowners Policy.

[2]      *Exhibit B*, Affidavit of Ashley Taylor at ¶ 5; *Exhibit B-1*, Claim Activity File Notes Excerpts.

[3]      *Ex. B* at ¶ 6; *Exhibit B-1*, Claim Activity File Notes Excerpts.

[4]      *Id.*

[5]      *Id.*

A copy of the 2007 estimate was forwarded to Plaintiff's agent who was to review and discuss with Plaintiff.[11] State Farm heard nothing further from Plaintiff until January 21, 2015, when it received a DTPA demand letter (offering a complete release of all liability in exchange for the total payment of $55,378.37: $34,584.21 in unpaid damages to his structure, $13,833.68 in attorneys' fees, and $6,960 in late payment penalties) requesting a second inspection, and a repair estimate totaling $38,624.21.[12] After multiple communications with Plaintiff's counsel, State Farm conducted a second inspection of the property on March 6, 2015, with Plaintiff present.[13] The inspection revealed that some repairs to the home had been made.[14] At the inspection, Plaintiff indicated that he did not know when the loss occurred, and was unsure about what damage had been repaired.[15] On March 13, 2015, State Farm contacted Plaintiff's counsel and requested photos of the damages that were taken prior to the repairs being completed.[16] On or about April 14, 2015, State Farm received a thumb drive containing photos of the damage.[17]   After reviewing the photographs in comparison to the Plaintiff's contractor's estimate, the November 2013 estimate, the 2007 estimate, and 2007 photos, State Farm revised the original estimate to include damage totaling $15,602.07.[18] On June 8, 2015, State Farm mailed Plaintiff, through his counsel, a copy

---

[6]        *Id.*

[7]        *Id.*; *Exhibit B-2*, November 25, 2013, State Farm Letter and Estimate.

[8]        *Id.*

[9]        *Id.*

[10]        *Ex. B* at ¶ 7; *Exhibit B-1*, Claim Activity File Notes Excerpts.

[11]        *Id*.

[12]        *Id.*; *Ex. B-9*, January 19, 2015, Demand from Plaintiff.

[13]        *Ex. B* at ¶ 7; *Exhibit B-1*, Claim Activity File Notes Excerpts.

[14]        *Id.*

[15]        *Id.*

[16]        *Id.*

[17]        *Id*.

[18]        *Id.*; *Exhibit B-3*, June 8, 2015, State Farm Letter and Estimate

of the revised estimate and a payment of $7,337.57 (actual cash value payment of $5,941.67 and statutory interest of $1,395.90).[19]

5.      On or about June 15, 2015, State Farm received a new, lower demand from Plaintiff's counsel.[20] Plaintiff twice refused to provide a breakdown of the damages that supported the payment demand.[21] On July 10, 2015, State Farm demanded appraisal and designated Brian Scanlan as appraiser.[22]   On July 27, 2015, Plaintiff responded to the appraisal demand and designated Jeff Watson as appraiser.[23] On October 12, 2015, Plaintiff filed this lawsuit against State Farm.[24] On June 29, 2016, Plaintiff withdrew his designation of Mr. Watson and designated Ches Bostick as appraiser.[25] Appraisers Scanlan and Bostick selected Michael Fried to serve as umpire.[26]

6.      On November 11, 2016, State Farm received an appraisal award signed by appraiser Bostick and umpire Fried setting the amount of loss at $32,841.89, on a replacement cost value basis, and $29,592.90 on an actual cash value basis.[27] On November 18, 2016, State Farm timely tendered to Plaintiff, through his counsel, payment of the award (less depreciation, deductible, and prior payment amount) in the amount of $19,611.23.[28] In the payment letter, State Farm extended the period for Plaintiff to claim replacement cost benefits of $3,248.99 until October 27, 2018, if he completes repairs/replacement of the damaged property identified in the appraisal award and

---

[19]     *Id.*

[20]     *Ex. B* at ¶ 8; *Exhibit B-1*, Claim Activity File Notes Excerpts.

[21]     *Ex. B-10*, June 19, 2015 and July 2, 2015, demands from Plaintiff.

[22]     *Ex. B* at ¶ 8; *Exhibit B-4*, State Farm's Letter Invoking Appraisal.

[23]     *Ex. B* at ¶ 8; *Exhibit B-5*, Plaintiff's Response to Appraisal Demand.

[24]     Dkt. No. 1, Exhibit A, Plaintiffs' Original Petition.

[25]     *Ex. B* at ¶ 8; *Exhibit B-6*, Plaintiff's Substitute Appraiser Designation.

[26]     *Ex. B* at ¶ 8.

[27]     *Ex. B* at ¶ 9; *Exhibit B-7*, Appraisal Award.

[28]     *Ex. B.* at ¶ 10; *Exhibit B-8* Letter Tendering Appraisal Payment.

submits appropriate documentation of the completed repairs within (30) days after the work is completed.[29]  To date, Plaintiff has not submitted any repair documentation or requested release of the replacement cost benefits.[30]

## IV.
## ARGUMENT AND AUTHORITIES

**A.**   **State Farm's payment of the appraisal award estops Plaintiff from maintaining a breach of contract claim.**

7.        It is well-settled that "[a]n insurer does not breach the insurance contract where, as here, it pays all damages determined by the appraisal."[31]  That is because "[t]he effect of an appraisal award is to estop one party from contesting the issue of damages in a suit on the insurance contract, leaving only the question of liability for the court."[32]  Here, no question as to liability remains because State Farm has paid the appraisal award.  Under Texas law, a contract claim does not survive the insurer's payment of an appraisal award.  For instance, in *Franco v. Slavonic Mutual Fire Insurance*, the insureds, after invoking appraisal, subsequently alleged that "payment

---

[29]        *Id.*

[30]        *Ex. B* at ¶ 10.

[31]        *Scalise v. Allstate Texas Lloyds*, No. 7:13-CV-178, 2013 U.S. Dist. LEXIS 179692, at *14 (S.D. Tex. Dec. 20, 2013) (citing *Breshears v. State Farm Lloyds*, 155 S.W.3d 340, 344 (Tex. App. – Corpus Christi 2004, pet. denied) (insurer complied with every requirement of contract where it participated in appraisal process and paid amount set by appraisers and umpire)); *see also Devonshire Real Estate & Asset Mgmt., LP v. Am. Ins. Co.*, No. 3:12-CV-2199-B, 2014 U.S. Dist. LEXIS 135939, at *44 (N.D. Tex. Sept. 26, 2014) (quoting *Scalise*); *Caso v. Allstate Tex. Lloyds*, No. 7:12-CV-478, 2014 U.S. Dist. LEXIS 15279, at *14-24 (S.D. Tex. February 7, 2014) (finding insured's payment of appraisal award estopped insured's breach of contract claim); *Waterhill Cos. v. Great Am. Assur. Co.*, No. H-05-4080, 2006 U.S. Dist. LEXIS 15302, at *7 (S.D. Tex. March 16, 2006) (insurer did not breach contract when it paid appraisal award); *Anderson v. Am. Risk Ins. Co., Inc.*, No. 01-15-00252 CV, 2016 Tex. App. LEXIS 6538, at *9-12 (Tex. App.—Houston [1st Dist.] June 21, 2016, no pet.) (affirming summary dismissal on insured's entire lawsuit based on the insurer's timely payment of the appraisal award); *Garcia v. State Farm Lloyds*, No. 04-16-00209-CV, 2016 Tex. App. LEXIS 13194, at *31–32 (Tex. App.—San Antonio December 14, 2016, no pet. h.) (same).

[32]        *Wells v. Am. States Preferred Ins. Co.*, 919 S.W.2d 679, 683 (Tex. App.—Dallas 1996, writ denied); *see also Garcia*, 2016 Tex. App. LEXIS 13194, at *8; *Lundstrom v. USAA*, 192 S.W.3d 79, 87 (Tex. App.—Houston [14th Dist.] 2006, pet. denied) (citing *Franco v. Slavonic Mut. Fire Ins.*, 154 S.W.3d 777, 786 (Tex. App.—Houston [14th Dist.] 2004, no pet.).

of an appraisal award is not dispositive of the Franco Family's entire breach of contract cause of action against Slavonic Mutual."[33]   The appellate court disagreed, holding that because the insurer paid the full amount of the appraisal award, the insureds were estopped from maintaining a breach of contract claim against the insurer.[34]

8.       In *Anderson v. American Risk Insurance Co., Inc.*, the insurer demanded appraisal after suit was filed and paid the insured $33,412.68 under the award.[35]   The First Court of Appeals held that "[b]y payment of the full amount of an appraisal award, the insurer 'complie[s] with every requirement of the contract, [and] it cannot be found to be in breach.'"[36] Similarly, in *Garcia v. State Farm Lloyds*, the Fourth Court of Appeals recently held payment of the appraisal award disposes of the contract claim and further held that any discrepancy between the initial estimate and the appraisal award cannot be used as evidence of a breach of contract.[37]   Simply put, compliance with the contractual appraisal award negates any claim for breach of contract as a matter of law.   Like the insurers in *Franco, Anderson*, and *Garcia*, State Farm fully participated in the appraisal process and timely tendered payment of the appraisal award.   Accordingly, as a matter of law, there is no breach of contract, and State Farm is entitled to summary judgment on Plaintiff's breach of contract claim.[38]

---

[33]      *Franco*, 154 S.W.3d at 787.

[34]      *Id.; see also Burks v. Metropolitan Lloyds Ins. Co.,* No. H-14-591, 2015 U.S. Dist. LEXIS 88729, at * 9-11 (S.D. Tex., July 8, 2015); *Stewart v. Geovera Specialty Ins. Co.*, No. H-14-3162 (S.D. Tex. Oct. 21, 2015, Memorandum and Order, Judge Ewing Werlein, Jr.) (attached as *Exhibit C.*) (timely payment of appraisal award entitled insurer to summary judgment on all claims, including Chapter 542 prompt payment claim); *Gardner v. State Farm Lloyds*, 76 S.W.3d 140, 143-44 (Tex. App.—Houston [1st Dist.] 2002, no pet.) (same).

[35]      *Anderson v. Am. Risk Ins. Co., Inc.*, No. 01-15-00252 CV, 2016 Tex. App. LEXIS 6538, at *4, *6-7 (Tex. App.—Houston [1st Dist.] June 21, 2016, no pet.).

[36]      *Id.* at *10-11 (quoting *Breshears*, 155 S.W.3d at 343).

[37]      *Garcia*, 2016 Tex. App. LEXIS 13194, at *31–32.

[38]      *See Anderson*, 2016 Tex. App. LEXIS 6538; *Franco*, 154 S.W.3d 777; *see also Michels v. Safeco Ins. Co. of Ind.*, 544 Fed. Appx. 535, 542 (5th Cir. 2013) (affirming district court's granting of insurer's motion for summary judgment after payment of the appraisal award); *Richardson E.*

**B.      Without a breach of contact claim, Plaintiff cannot maintain any extra-contractual causes of action.**

9.      Because the amount of loss has been determined by appraisal and timely paid, Plaintiff can no longer maintain any of his extra-contractual causes of action because they are derivative of Plaintiff's defunct breach of contract claim.   Plaintiff's Petition alleges extra-contractual causes of action against Defendant for violation of Chapters 541 and 542 of the Texas Insurance Code, DTPA, breach of the common law duty of good faith and fair dealing, negligence, and negligent misrepresentation.[39]  But the facts giving rise to Plaintiff's extra-contractual causes of action relate solely to State Farm's handling of Plaintiff's insurance claim.   Merely showing a *bona fide* dispute about the insurer's liability on the contract does not rise to the level of bad faith, and Plaintiff has not alleged any facts that would give rise to an independent injury claim.[40]  For these reasons, Defendant is entitled to summary judgment on each of Plaintiff's extra-contractual causes of action.

---

*Baptist Church v. Philadelphia Indem. Ins. Co., et al*., No. 05-14-01491 CV, 2016 Tex. App. LEXIS 3267, at *17 (Tex. App.—Dallas, March 30, 2016, pet. pending) (affirming summary judgment for carrier); *Breshears*, 155 S.W.3d at 345 (holding insurer entitled to summary judgment on insured's breach of contract claim because the insurer participated in the appraisal process and paid the appraisal award); *Toonen v. United Servs. Auto Ass'n*, 935 S.W.2d 937, 940 (Tex. App.—San Antonio 1996, no writ) (holding insurer was entitled to summary judgment on breach of contract claim because it tendered appraisal award pursuant to the contract); *Providence Lloyds Ins. Co. v. Crystal City Indep. Sch. Dist.*, 877 S.W.2d 872, 875 (Tex. App.—San Antonio 1994, no writ) (holding trial court erred by allowing a trial of a breach of contract claim after insurer promptly paid an appraisal award).

[39]   *See* Dkt. No. 1, Exhibit A, Plaintiff's Petition at ¶¶ 7–12.

[40]   *See Charla G. Aldous PC v. Lugo*, No. 3:13-CV-3310-L, 2014 U.S. Dist. LEXIS 159684, at *12–13 (N.D. Tex. Nov. 12, 2014) ("There can be no recovery against an insurer for extra-contractual damages for mishandling claims unless the complained of actions or omissions caused injury independent of that which would have resulted from a wrongful denial of policy benefits") (quoting *Parkans Int'l LLC v. Zurich Ins. Co.*, 299 F.3d 514, 519 (5th Cir. 2002)).

**(i.)**   **No bad faith, Insurance Code, or DTPA absent a breach of contract; no negligence or actionable misrepresentations.**

10.     The general rule in Texas is that an insured cannot prove a bad faith claim absent a breach of contract.[41]   The only recognized exceptions to this rule are if the insurer "commit[s] some act, so extreme, that would cause injury independent of the policy claim" or fails "to timely investigate its insureds' claim."[42]   The principle stems from the fact that the threshold for bad faith can be reached only when a breach of contract is accompanied by an independent tort; evidence that merely shows a *bona fide* dispute about the insurer's liability on the contract (like the coverage dispute here) does not rise to the level of bad faith.[43]   Plaintiff's causes of action under section 541.060 of the Insurance Code and the DTPA relate to Defendant's claims handling.[44]   Liability under Texas Insurance Code Chapter 541 and the DTPA is reviewed under "same standard as a common law bad faith claim," and requires the same predicate for recovery.[45]   Thus, in cases with similar facts to those here, courts have repeatedly held that an insurer's payment of an appraisal award bars recovery of extra-contractual claims.[46] The alleged misrepresentations pled by

---

[41]     *Republic Ins. Co. v. Stoker*, 903 S.W.2d 338, 341 (Tex. 1995); *Toonen*, 935 S.W.2d at 941.

[42]     *Stoker*, 903 S.W.2d at 341; *Toonen*, 935 S.W.2d at 941-42.

[43]     *Transp. Ins. Co. v. Moriel*, 879 S.W.2d 10, 17-18 (Tex. 1994); *Nat'l Union Fire Ins. Co. v. Hudson Energy Co.*, 780 S.W.2d 417, 426 (Tex. App.—Texarkana 1989), *aff'd*, 811 S.W.2d 552 (Tex. 1991).

[44]     *See* Plaintiff's Petition at Paragraph 17.

[45]     *See Higginbotham v. State Farm Mut. Auto. Ins. Co.*, 103 F.3d 456, 460 (5th Cir. 1997) (holding "Texas courts have clearly ruled that these extra-contractual tort claims require the same predicate for recovery as bad faith causes of action in Texas") (citations omitted); *Mag-Dolphus, Inc. v. Ohio Cas. Ins. Co.*, 906 F. Supp. 2d 642, 649 (S.D. Tex. 2012) (citations omitted); *Douglas v. State Farm Lloyds*, 37 F. Supp. 2d 532, 544 (S.D. Tex. 1999); *Tex. Mut. Ins. Co. v. Sara Care Child Care Ctr., Inc.*, 324 S.W.3d 305, 317 (Tex. App. – El Paso 2010, pet. Denied); *Spicewood Summit Office Condominiums Ass'n, Inc. v. Amer. First Lloyd's Inc. Co.*, 287 S.W.3d 461, 648 (Tex. App.—Austin 2009, pet. denied).

[46]     *See, e.g., Garcia*, 2016 Tex. App. LEXIS 13194, at *37-44; *Anderson*, 2016 Tex. App. LEXIS 6538, at *14-18; *Bernstien v. Safeco Ins. Co.*, No. 05-13-01533-CV, 2015 Tex. App. LEXIS 6699,

Plaintiff[47] are not actionable as a matter of law.[48]  Post-loss misrepresentations, like those alleged

by Plaintiff, will not support claims under the Texas Insurance Code or the DTPA.[49]  Plaintiff has

done nothing in reliance of the alleged post-loss misrepresentations, nor has he been harmed other

than the injury which would always occur when an insured is not paid what they contend is due.[50]

Additionally, Plaintiff's negligence claims fail as a matter of law because Texas does not recognize

a cause of action for negligent claims handling.[51]

       11.     Defendant promptly investigated Plaintiff's claim after he reported it.[52]  State Farm

participated in the appraisal process and timely tendered payment of the appraisal award.[53]

Because the facts are undisputed that State Farm timely investigated the claim and then later paid

the amount of loss based on the appraisal award and Plaintiff has not alleged any facts which would

---

[47] at *4-5 (Tex. App.—Dallas, June 30, 2015, no pet.); *Toonen*, 935 S.W.2d at 941-942; *Blum's Furniture Co. v. Certain Underwriters at Lloyds London*, 459 Fed. Appx. 366, 369 (5th Cir. 2012)

[47] Plaintiff's alleged misrepresentations are generally that State Farm "presented and supplied false information for the Plaintiff's guidance." Dkt. No. 1, Exhibit A, Plaintiff's Original Petition at ¶ 12.

[48] *Griggs v. State Farm Lloyds*, 181 F.3d 694, 701 (5th Cir. 1999) (statements about claims being handled professionally "more in the nature of non-actionable puffery than actionable representations of specific material fact"); *Druker v. Fortis Health*, No. 5:06-CV-00052, 2007 U.S. Dist. LEXIS 402, at *13-16 (S.D. Tex. Jan. 4, 2007) (general assurance policy would be honored is not a material misrepresentation that can support a fraud claim); *Avila v. Loya*, No. 07-04-0096-CV, 2005 Tex. App. LEXIS 6324, at *13 (Tex. App.—Amarillo August 10, 2015, no pet.); *Provident Am. Ins. Co. v. Castaneda*, 988 S.W.2d 189, 200 n.55 (Tex. 1998) (citing *Royal Globe Ins. Co. v. Bar Consultants, Inc.*, 577 S.W.2d 688, 694-95 (Tex. 1979)); *Gulf States Underwriters of La., Inc. v. Wilson*, 753 S.W.2d 422, 430-31 (Tex. App.—Beaumont 1988, writ denied) (letter to insured opting not to renew policy did not constitute misrepresentation).

[49] *Id.*

[50] *See Royal Globe Inc. Co.*, 577 S.W.2d at 694; *Walker v. Fed Kemper Life Assurance Co.*, 828 S.W.2d 442, 453 (Tex. App.—San Antonio 1992, no writ) ("As a result, a post-loss denial of liability for a questionable claim is not actionable under the DTPA or the Insurance Code.").

[51] *Bui v. St. Paul Mercury Ins. Co.*, 981 F.2d 209, 210 (5th Cir. 1994); *Rooters v. State Farm Lloyds*, 428 Fed. App'x. 441, 448 (5th Cir. 2011).

[52] *Ex. B* at ¶¶ 5-7; *Ex. B-1*, Claim Activity File Notes Excerpts.

[53] *Ex. B* at ¶¶ 8-10; *Ex. B-6*, State Farm Letter Tendering Payment of Appraisal Award.

give rise to an independent injury claim, Defendant is entitled to summary judgment as a matter

of law on Plaintiff's extra-contractual claims.

 **(ii.)** **Timely payment of an appraisal award precludes prompt payment damages under Chapter 542 of the Texas Insurance Code.**

 12. State Farm received the appraisal award on September 25, 2016, and tendered

payment of the award on September 30, 2016, within five days after receipt of the award.[54]  Under

Texas law, full and timely payment of the appraisal award "precludes an award of penalties under

the Insurance Code's prompt payment provisions as a matter of law."[55]  In *Anderson*, the Houston

Court of Appeals held that "[b]ecause the summary judgment evidence conclusively demonstrates

that [the insurer] fully and timely paid the appraisal award, [the insured] is precluded from

maintaining her prompt payment claim as a matter of law."[56]  As explained in *Mag-Dolphus, Inc.*

*v. Ohio Cas. Ins. Co.*, "when the appraisal clause is invoked, a delay in payment pursuant to the

appraisal process does not constitute a §542.058 violation."[57]  Similarly, as explained in *Scalise v.*

*Allstate Texas Lloyds* "an insurer commits no prompt payment violation when it submits to the

delay inherent in the contractual appraisal process (in this case, invoked by the insured) before

---

[54] *Id.*

[55] *Stewart v. Geovera Specialty Ins. Co.*, No. H-14-3162 (S.D. Tex. Oct. 21, 2015, Memorandum and Order, Judge Ewing Werlein, Jr.) (attached hereto as *Exhibit C*); *In re Slavonic Mut. Fire Ins. Ass'n*, 308 S.W.3d 556, at 563-64 (Tex. App.—Houston [14th Dist.] 2010, orig. proceeding); *Garcia*, 2016 Tex. App. LEXIS 13194, at *35; *see also Blum's Furniture Co.*, 459 Fed. Appx. at 369 (affirming district court's entire summary judgment for insurer, including prompt payment claim, based on timely payment of appraisal award); *Breshears*, 155 S.W.3d at 344; *Bernstien*, 2015 Tex. App. LEXIS 6699, at *3; *Amine v. Liberty Lloyds of Tex. Ins. Co.*, No. 01-06-00396-CV, 2007 Tex. App. LEXIS 6280, at *4-7 (Tex. App.—Houston [1st Dist.] Aug. 9, 2007, no pet.); *Dizdar v. State Farm Lloyds, et al.*, No. 7:14-CV-00102, 2016 U.S. Dist. LEXIS 13355, at *18-19 (S.D. Tex., Feb. 4, 2016) (Alvarez, J.) ("In Texas, courts have constantly held that 'full and timely payment of the appraisal award under the policy precludes an award of penalties under the Insurance Code's prompt payment provisions as a matter of law'").

[56] *Anderson*, 2016 Tex. App. LEXIS 6538, at *13.

[57] *Mag-Dolphus, Inc. v. Ohio Cas. Ins. Co.*, 906 F. Supp. 2d 642, 652 (S.D. Tex. 2012); *see also Blum's*, 459 Fed. Appx. at 369 (affirming district court's entire summary judgment for insurer, including prompt payment claim, based on timely payment of appraisal award).

paying all covered damages determined by that process."[58] When the insured in *Gabriel v. Allstate Texas Lloyds* argued that Allstate breached the prompt-payment requirements of Chapter 542 "by failing to pay the appraisal-determined amount of loss during the initial adjustment of the claim," the court was clear: "these arguments misinterpret the relevant authorities and are vitiated by the policy, statute, and record."[59]

13.     Because State Farm timely paid the award, there is no violation of the Texas Insurance Code's prompt payments deadlines.  Thus, State Farm is entitled, as a matter of law, to summary judgment on Plaintiff's claim for alleged violations of Chapter 542 of the Texas Insurance Code.

**V.**
**PRAYER**

14.     By participating in the appraisal process, the parties agreed the appraisal award would "set the amount of loss."  Appraisal has concluded and a binding appraisal award was issued setting the amount of loss.  State Farm timely paid the award and there are no remaining issues regarding damages or liability; therefore, as a matter of law, Plaintiff cannot maintain a breach of contract action.  Plaintiff's extra-contractual claims, which are derivative of his breach of contract claim, also fail.  Accordingly, Defendant is entitled to summary judgment as a matter of law on all of Plaintiff's claims alleged in this suit.

15.     Defendant respectfully requests that the Court grant summary judgment in favor of Defendant on all of Plaintiff's claims.  Defendant further prays for all other relief the Court finds just and equitable.

---

[58]     *Scalise*, 2013 U.S. Dist. LEXIS 179692, at *18–19.

[59]     *Gabriel v. Allstate Tex. Lloyds*, No. 7:13-CV-181, 2013 U.S. Dist. LEXIS 186032, at *21 (S.D. Tex. Nov. 1, 2013).

Respectfully submitted:


SKELTON & WOODY
248 Addie Roy Road, Suite B-302
Austin, Texas 78746
Telephone:     (512) 651-7000
Facsimile:     (512) 651-7001


By:     /s/ Edward F. Kaye
        J. Hampton Skelton
        State Bar No. 18457700
        hskelton@skeltonwoody.com
        Edward F. Kaye
        State Bar No. 24012942
        ekaye@skeltonwoody.com
        R. Ashley Applewhite
        State Bar No. 24059388
        aapplewhite@skeltonwoody.com
        ATTORNEYS FOR DEFENDANTS


## CERTIFICATE OF SERVICE

I hereby certify that on this 2nd day of March, 2017, I am electronically filing the foregoing with the Clerk of the Court using the Case Management/Electronic Case Files ("CM/ECF") system, which will send notification of such filing to the following CM/ECF participant:

David C. Wenholz
13501 Galleria Circle
Suite W270
Bee Cave, Texas 78738


/s/ Edward F. Kaye
Edward F. Kaye

# EXHIBIT A

# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF TEXAS
# AUSTIN DIVISION

DAVID JELLISON, § §

       Plaintiff, §
 §
v. §   CIVIL ACTION NO. 1:15-cv-1054 LY
 §
 §
STATE FARM LLOYDS, §
       Defendant. §

---

## BUSINESS RECORDS AFFIDAVIT OF DARRYL HARRIS

---

STATE OF TEXAS §
 §
COUNTY OF TRAVIS §

BEFORE ME, the undersigned authority, on this day personally appeared Darryl Harris, who being by me duly sworn upon his oath stated the following:

A.    My name is Darryl Harris. I am over the age of eighteen (18) years, and am fully competent to testify to the matters stated in this Affidavit. I am of sound mind and have never been convicted of a felony or misdemeanor involving moral turpitude. I have personal knowledge of the facts and statements contained in this Affidavit, and each of them is true and correct. Before making this Affidavit, I reviewed and became personally familiar with the Bates Ranges of documents set forth below.

B.    I am a custodian of records for State Farm. I am familiar with the manner in which documents are maintained by State Farm in the normal course of State Farm's business. I am in all respects qualified and competent to make oath of the facts stated herein. I am authorized by State Farm to submit this Affidavit.

C.    The attached documents that comprise Bates labels SF – Jellison – 000770 through SF – Jellison 000818 are records from policy number 83-32-6465-8 issued by State Farm Lloyds to David S. Jellison for the policy period of December 18, 2012 to December 18, 2013.

**D.** The documents attached as SF – Jellison – 000770 through SF – Jellison 000818 are kept by State Farm in the regular course of business. The documents were made by, or from information transmitted by, persons with knowledge of the events or conditions recorded in SF – Jellison – 000770 through SF – Jellison 000818 and were made at the date and time recorded on the documents, which were at or near the time of the events and conditions recorded. It is in the regular course of State Farm's business to make and to retain documents such as the ones attached as SF – Jellison – 000770 through SF – Jellison 000818.

Further, Affiant sayeth not.

_____
Darryl Harris

SWORN TO AND SUBSCRIBED BEFORE ME, THIS ___4___ day of __January__, 2017.

_____
Notary Public

STEPHANIE A. EDINGTON
Notary Public, State of Texas
My Commission Expires
March 18, 2017

**State Farm Lloyds**
*8900 Amberglen Boulevard*
*Austin, TX 78729-1110*



AT2            W-25- 6909-F120     H  W   F
            001325  0001
JELLISON, DAVID S
16330 FM 1826
AUSTIN TX  78737-8809

**RENEWAL CERTIFICATE**

POLICY NUMBER     83-32-6465-3
Homeowners Policy
DEC 18 2012  to  DEC 18 2013

SEE BALANCE DUE FOR RENEWAL OFFER
BILLED THROUGH SFPP

**Coverages and Limits**

**Section I**

| | | |
|---|---|---|
| A Dwelling | | $202,000 |
| Dwelling Extension | Up To | 20,200 |
| B Personal Property | | 151,500 |
| C Loss of Use | | Actual Loss Sustained |

**Deductibles - Section I**

| | |
|---|---|
| Other Losses 2.00% | 4,040 |
| Wind or Hail 1.00% | 2,020 |

**Section II**

| | |
|---|---|
| L Personal Liability | $300,000 |
| Damage to Property of Others | 500 |
| M Medical Payments to Others (Each Person) | 3,000 |

Location:  Same as Mailing Address

SFPP No: 0076485125

**Loss Settlement Provisions (See Policy)**
A1  Replacement Cost - Similar Construction
B1  Limited Replacement Cost - Coverage B

**Forms, Options, and Endorsements**

| | |
|---|---|
| Homeowners Policy | FP-7955.TX |
| Ordinance/Law 10%/ $20,200 | OPT  OL |
| Increase Dwlg up to $40,400 | OPT  ID |
| Fungus (Including Mold) Excl | FE-5398 |
| Special Limits - Money/Jf | FE-5258 |
| Dwelling Foundation | FE-5368.1 |
| Water Damage Endorsement | FE-5369.1 |
| Homeowners Policy Endorsement | FE-3533 |

| | |
|---|---|
| **Annual Premium** | **$1,104.00** |
| Dwelling Foundation | 33.00 |
| Water Damage | 76.00 |
| **Total Amount** | **$1,213.00** |

**Premium Reductions**

| | |
|---|---|
| Renewal Discount | 252.00 |
| Home/Auto Discount | 596.00 |

Inflation Coverage Index:   204.5

Your premium has increased more than 10%. Please see the enclosed insert for additional information.

Please help us update the data used to determine your premium. Contact your agent with the year each of your home's utilities (heating/cooling, plumbing, or electrical) and roof were last updated.

*Thanks for letting us serve you.  We appreciate our long term customers.*
8814    2011   I
C,BB,I,NP,6G,9M,G,D
**Agent** DICK CLAY
**Telephone** (512) 328-2340

REP

*Moving? See your State Farm agent.*
*See reverse for important information.*
Prepared  NOV 01 2012

SF - Jellison - 000770

**DIVIDEND PROVISION - PARTICIPATING COMPANIES**

The Named Insured shall be entitled to participate in a distribution of the surplus of the Company, as determined from time to time by its Board of Directors, subject, however, to regulatory approval as provided by the Texas Insurance Code of 1951, as amended, and subject to other applicable law of the State of Texas which includes the rules and regulations of the State Board of Insurance and the amendments thereto.

o1f308va  Rev. 05-2000

**Your coverage amount....**
It is up to you to choose the coverages and limits that meet your needs. We recommend that you purchase a coverage limit at least equal to the estimated replacement cost of your home. Replacement cost estimates are available from building contractors and replacement cost appraisers, or, your agent can provide an Xactware estimate using information you provide about your home. We can accept the type of estimate you choose as long as it provides a reasonable level of detail about your home. State Farm® does not guarantee that any estimate will be the actual future cost to rebuild your home. Higher limits are available at higher premiums. Lower limits are also available, which if selected may make certain coverages unavailable to you. We encourage you to periodically review your coverages and limits with your agent and to notify us of any changes or additions to your home.

SF - Jellison - 000771

553-3107 TX.1



# IMPORTANT NOTICE . . . about your policy

Thank you for selecting State Farm® insurance.

To complete the renewal of your policy, we may obtain and use credit information on you or another member(s) of your household as a part of the insurance credit scoring process.

This information may be used in determining the price you are being charged. If credit information was used to complete the renewal of your policy, the name of the person whose credit information was obtained will be shown on your Renewal Certificate.

If you have questions about this disclosure, contact your State Farm agent. Your agent's address and phone number are listed on the front of your Renewal Certificate. You may also contact the Texas Consumer Hot Line at:

> 1-800-252-1932
> 17301 Preston Road
> P.O. Box 799100
> Dallas, Texas 75379-9100

For more information or other questions, contact the Texas Department of Insurance at:

> 1-800-252-3439
> P.O. Box 149091
> Austin, Texas 78714

Section 559.053 of the Texas Insurance Code requires an insurer or its agents to disclose to its customers whether credit information will be obtained on the applicant or insured or on any other member(s) of the applicant's or insured's household and used as part of the insurance credit scoring process.

If credit information is obtained or used on the applicant or insured, or on any member of the applicant's or insured's household, the insurer shall disclose to the applicant the name of each person on whom credit information was obtained or used and how each person's credit information was used to underwrite or rate the policy. An insurer may provide this information with this disclosure or in a separate notice.

Adverse effect means an action taken by an insurer in connection with the underwriting of insurance for a consumer that results in the denial of coverage, the cancellation or nonrenewal of coverage, or the offer to and acceptance by a consumer of a policy form, premium rate, or deductible other than the policy form, premium rate, or deductible for which the consumer specifically applied.

Credit information is any credit related information derived from a credit report itself, or provided in an application for personal insurance. The term does not include information that is not credit-related, regardless of whether the information is contained in a credit report or in an application for insurance coverage or is used to compute a credit score.

Credit score or insurance score is a number or rating derived from a mathematical formula, computer application, model, or other process that is based on credit information and used to predict the future insurance loss exposure of a consumer.

SUMMARY OF CONSUMER PROTECTIONS CONTAINED IN CHAPTER 559

PROHIBITED USE OF CREDIT INFORMATION. An insurer may not:

1. use a credit score that is computed using factors that constitute unfair discrimination;

2. deny, cancel, or nonrenew a policy of personal insurance solely on the basis of credit information without consideration of any other applicable underwriting factor independent of credit information; or

3. take an action that results in an adverse effect against a consumer because the consumer does not have a credit card account without consideration of any other applicable factor independent of credit information.

*(Continued)*

**Agent:** DICK CLAY                                        **Telephone:** (512) 328-2340

70    8815

SF - Jellison - 000772

An insurer may not consider an absence of credit information or an inability to determine credit information for an applicant for insurance coverage or insured as a factor in underwriting or rating an insurance policy unless the insurer:

1. has statistical, actuarial, or reasonable underwriting information that:

   (A) is reasonably related to actual or anticipated loss experience; and

   (B) shows that the absence of credit information could result in actual or anticipated loss differences;

2. treats the consumer as if the applicant for insurance coverage or insured had neutral credit information, as defined by the insurer; or

3. excludes the use of credit information as a factor in underwriting and uses only other underwriting criteria.

**NEGATIVE FACTORS.** An insurer may not use any of the following as a negative factor in any credit scoring methodology or in reviewing credit information to underwrite or rate a policy of personal insurance:

1. a credit inquiry that is not initiated by the consumer;

2. an inquiry relating to insurance coverage, if so identified on a consumer's credit report; or

3. a collection account with a medical industry code, if so identified on the consumer's credit report.

Multiple lender inquiries made within 30 days of a prior inquiry, if coded by the consumer reporting agency on the consumer's credit report as from the home mortgage or motor vehicle lending industry, shall be considered by an insurer as only one inquiry.

**EFFECT OF EXTRAORDINARY EVENTS.** An insurer shall, on written request from an applicant for insurance coverage or an insured, provide reasonable exceptions to the insurer's rates, rating classifications, or underwriting rules for a consumer whose credit information has been directly influenced by a catastrophic illness or injury, by the death of a spouse, child, or parent, by temporary loss of employment, by divorce, by military deployment overseas or by identity theft. In such a case, the insurer may consider only credit information not affected by the event or shall assign a neutral credit score.

An insurer may require reasonable written and independently verifiable documentation of the event and the effect of the event on the person's credit before granting an exception. An insurer is not required to consider repeated events or events the insurer reconsidered previously as an extraordinary event.

An insurer may also consider granting an exception to an applicant for insurance coverage or an insured for an extraordinary event not listed in this section. An insurer is not out of compliance with any law or rule relating to underwriting, rating, or rate filing as a result of granting an exception under this article.

**NOTICE OF ACTION RESULTING IN ADVERSE EFFECT.** If an insurer takes an action resulting in an adverse effect with respect to an applicant for insurance coverage or insured based in whole or in part on information contained in a credit report, the insurer must provide to the applicant or insured within 30 days certain information regarding how an applicant or insured may verify and dispute information contained in a credit report.

**DISPUTE RESOLUTION; ERROR CORRECTION.** If it is determined through the dispute resolution process established under Section 611(a)(5), Fair Credit Reporting Act (15 U.S.C. Section 1681i), as amended, that the credit information of a current insured was inaccurate or incomplete or could not be verified and the insurer receives notice of that determination from the consumer reporting agency or from the insured, the insurer shall re-underwrite and re-rate the insured not later than the 30th day after the date of receipt of the notice.

After re-underwriting or re-rating the insured, the insurer shall make any adjustments necessary within 30 days, consistent with the insurer's underwriting and rating guidelines. If an insurer determines that the insured has overpaid premium, the insurer shall credit the amount of overpayment. The insurer shall compute the overpayment back to the shorter of the last 12 months of coverage; or the actual policy period.

553-3107 TX.1 (C)

**Agent:** DICK CLAY          (CONTINUED)          **Telephone:** (512) 328-2340
71

SF - Jellison - 000773

State Farm Lloyds

553-1588 TX.2

# IMPORTANT INFORMATION . . . about your policy



### Homeowners 369 Discount

If you have insured your home with State Farm® continuously for 3 years, a discount has been applied to your Homeowners premium. A higher discount has been applied if you've been with us continuously for 6 years, or 9 or more years. This discount is our way of showing appreciation for your continued confidence in State Farm.

Your Renewal Certificate indicates if a discount has been applied. If no discount is shown and you think you qualify, please contact your agent.

### Impact Resistant Roofing

Did you know that by replacing your roof with qualified impact resistant roofing materials, you might qualify for a discount of up to 25% on your State Farm Homeowners policy.*

Discounts are based on the type of hail resistant roof you install and the rating territory in which your property is located.

Did you know:

- There are over 500 impact resistant roofing products eligible for discount in Texas.

- The increase in cost for many of these products is typically less than your wind/hail deductible. That means if you prevent just one future roof loss, you could save your wind/hail deductible and make up for the difference in cost. After that, the annual premium discount continues to save you money on your Homeowner's premium.

- Impact resistant roofs are typically warranted against winds of up to 110 MPH.

*Certain restrictions apply. Contact your agent for more information.

### Home/Auto Discount

If you currently have a Homeowners AND qualifying auto policy with us, the enclosed Renewal Certificate shows the Home/Auto Discount has been applied, and your premium has been reduced accordingly.

Remember, State Farm also offers a Multiple Line Discount on your private passenger auto policy for having your Homeowners policy with us.

*If you qualify for the Multiple Line Discount, it will be described on your private passenger auto renewal premium notice.

If your auto is not currently insured with State Farm, contact your State Farm agent to discuss insuring your auto and how these discounts may benefit you.

You now have two ways to save on your insurance premiums when you insure your home and auto with us. For more information, please contact your State Farm agent.

*Discounts mentioned are only available if you have a Homeowners policy from State Farm Lloyds or a private passenger auto policy written as voluntary business by State Farm.

### Home Alert Discount

State Farm Lloyds also offers a 10% discount if your home is equipped with dead bolt locks, a fire extinguisher and a fire or burglary detection system that is connected directly to a central station, fire department, or police station.

If you have questions about discounts that apply to your policy, please contact your agent.

**Like a good neighbor, State Farm is there®**

553-1588 TX.2 (C)

**Agent:** DICK CLAY                    (CONTINUED)          **Telephone:** (512) 328-2340
70   8816

SF - Jellison - 000774

553-3653 TX

## IMPORTANT NOTICE

To obtain information or make a complaint:

You may call the State Farm® toll-free telephone number for information or to make a complaint at:

**1-800-252-7645**

You may contact the Texas Department of Insurance to obtain information on companies, coverages, rights or complaints at:

**1-800-252-3439**

You may write the Texas Department of Insurance:

P.O. Box 149104
Austin, TX 78714-9104
Fax: (512) 475-1771
Web: http://www.tdi.state.tx.us
E-mail: ConsumerProtection@tdi.state.tx.us

To obtain price and policy form comparisons and other information relating to residential property insurance and personal automobile insurance, you may visit the Texas Department of Insurance/ Office of Public Insurance Counsel website:

**www.helpinsure.com**

**PREMIUM OR CLAIM DISPUTES:**
Should you have a dispute concerning your premium or about a claim you should contact the agent first. If the dispute is not resolved, you may contact the Texas Department of Insurance.

**ATTACH THIS NOTICE TO YOUR POLICY:**
This notice is for information only and does not become a part or condition of the attached document.

553-3653 TX (C)

## AVISO IMPORTANTE

Para obtener informacion o para someter una queja:

Usted puede llamar al numero de telefono gratis de State Farm® para informacion o para someter una queja al:

**1-800-252-7645**

Puede comunicarse con el Departamento de Seguros de Texas para obtener informacion acerca de companias, coberturas, derechos o quejas al:

**1-800-252-3439**

Puede escribir al Departamento de Seguros de Texas:

P.O. Box 149104
Austin, TX 78714-9104
Fax: (512) 475-1771
Web: http://www.tdi.state.tx.us
E-mail: ConsumerProtection@tdi.state.tx.us

Para obtener formas de comparacion de precios y poliza y otra informacion acerca del seguro de propiedad residencial y del seguro de automóvil, visite el sitio web del Departamento de Seguros de Texas y la Oficina del Asesor Publico de Seguros:

**www.helpinsure.com**

**DISPUTAS SOBRE PRIMAS O RECLAMOS:**
Si tiene una disputa concerniente a su prima o a un reclamo, debe comunicarse con el agente primero. Si no se resuelve la disputa, puede entonces comunicarse con el departamento (TDI).

**UNA ESTE AVISO A SU POLIZA:**
Este aviso es solo para proposito de informacion y no se convierte en parte o condicion del documento adjunto.

**Agent:** DICK CLAY

(CONTINUED)    **Telephone:** (512) 328-2340

71

SF - Jellison - 000775

State Farm Lloyds

553-3675 TX

## IMPORTANT NOTICE – Renewal Offer to Reduce Premium by Removing Up to Three Optional Endorsements

Your Homeowners policy may include one or all of the following endorsements:

Dwelling Foundation Endorsement – FE-5368.1
Fungus (Including Mold) Limited Coverage Endorsement – FE-5410
Water Damage Endorsement – FE-5369.1

If your policy includes any of these endorsements, they will be listed on your Renewal Certificate under **Forms, Options, and Endorsements.**

These endorsements provide additional coverage that some of our customers select. However, other customers have made the personal choice not to select these additional coverages.

The enclosed Balance Due Notice includes a Renewal Offer that shows what your premium would be if you chose to remove all of those endorsements to the extent they apply to your policy. This will help you determine whether or not these optional coverages meet your insurance needs.

It is important that you review your coverage needs and select the coverages appropriate for your situation.

For a premium and coverage reduction, please follow the instructions at the bottom of your Balance Due Notice.

**Please be advised that if the Dwelling Foundation Endorsement – FE-5368.1 or the Water Damage Endorsement – FE-5369.1, are removed, they cannot be added back to your policy. This is in accordance with Commissioner Order No. 02-0208.**

If you have any questions about the information in this notice, or if you would like additional information about your policy, please contact your State Farm® agent.

553-3675 TX

553-2048 TX.1

## IMPORTANT INFORMATION . . . about your policy

### PREMIUM ADJUSTMENT

Insurance premiums for Homeowner policies have been adjusted to reflect expected claims costs. The actual premium change in individual policies will vary as a result of rating factors such as the rating territory for your property location and the amount and type of coverage you have selected. This would also include coverage options and endorsements selected as well as the amount of the policy deductible.

Should you wish to discuss these option/coverage selections and deductibles, please contact your State Farm® agent.

State Farm works hard to offer you the best combination of cost, protection, and service available. We will continue doing our best to make the most effective use of your premium dollars and give you fast, friendly service when you need it.

553-2048 TX.1 (C)

**Agent:** DICK CLAY
70   8817

(CONTINUED)

**Telephone:** (512) 328-2340

SF – Jellison - 000776

553-3595 TX

# IMPORTANT NOTICE ... Roof Surfaces Charge

Due to the higher loss costs we experience from homes with wood shingles, wood shakes, and composition shingles installed over wood shingles or shakes, an additional premium charge applies for homes with these types of roofing materials. The additional charge also applies to homes with a metal roof if endorsement FE-8706.1, EXCLUSION OF COSMETIC LOSS TO METAL ROOF COVERINGS CAUSED BY HAIL is not part of your policy.

The premium charge does not apply to policies that include endorsement FE-5315, WINDSTORM OR HAIL EXCLUSION AGREEMENT ENDORSEMENT. A dwelling that uses more than one roofing material shall be classified by the predominant type of roofing construction.

Please contact your State Farm® agent if you have any questions about your policy or premium.

553-3595 TX

---

553-2948

# NOTICE TO POLICYHOLDER

For a comprehensive description of coverages and forms, please refer to your policy.

Policy changes that you requested before the "Date Prepared" on your Renewal Certificate are effective on the renewal date of this policy unless indicated otherwise by a separate endorsement, binder or Amended Declarations Page. Any coverage forms or endorsements included with your Renewal Certificate are effective on the renewal date of this policy.

Policy changes that you requested after the "Date Prepared" on your Renewal Certificate will be sent to you as an Amended Declarations Page or as an endorsement to your policy. You will be billed for any resulting premium increase later.

If you have acquired any valuable property items, made any improvements to your home, or have questions about your insurance coverage, please contact your State Farm® agent.

553-2948 (C)          (10/08)

---

553-3141

# IMPORTANT NOTICE . . . Information Regarding Your Premium

Consumer reports may be used to determine the price you are charged. We may also obtain and use a credit-based insurance score developed from information contained in these reports. We may use a third party in connection with the development of your insurance score.

553-3141 (C)          (10/09)

---

**Agent:** DICK CLAY

71

**Telephone:** (512) 328-2340

SF - Jellison - 000777



This policy is one of the broadest forms avail-
able today, and provides you with outstanding
value for your insurance dollars.  However, we
want to point out that every policy contains limi-
tations and exclusions.  Please read your policy
carefully, especially "Losses Not Insured" and all
exclusions.

## State Farm®
## Homeowners
## Policy

FP-7955 TX

SF - Jellison - 000778

# TABLE OF CONTENTS

## DECLARATIONS
Your Name
Location of Your Residence
Policy Period
Coverages
Limits of Liability
Deductibles

**Begins on Page**

DECLARATIONS CONTINUED . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

DEFINITIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

SECTION I - YOUR PROPERTY
  COVERAGES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
    Coverage A – Dwelling . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
    Coverage B – Personal Property . . . . . . . . . . . . . . . . . . . . . . . 3
    Coverage C – Loss of Use . . . . . . . . . . . . . . . . . . . . . . . . . . . 4
    Additional Coverages . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
    Inflation Coverage . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7
  LOSSES INSURED . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7
  LOSSES NOT INSURED . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9
  LOSS SETTLEMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11
  CONDITIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

SECTION II - YOUR LIABILITY
  COVERAGES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15
    Coverage L – Personal Liability . . . . . . . . . . . . . . . . . . . . . . . 15
    Coverage M – Medical Payments to Others . . . . . . . . . . . . . . . . 16
    Additional Coverages . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16
  EXCLUSIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17
  CONDITIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

SECTION I AND SECTION II - CONDITIONS . . . . . . . . . . . . . . . . . . 20

OPTIONAL POLICY PROVISIONS . . . . . . . . . . . . . . . . . . . . . . . . . 22

Includes copyrighted material of State Farm Fire and Casualty Company.
Copyright, State Farm Fire and Casualty Company, 1983.

FP-7955 TX

Printed in U.S.A.

SF - Jellison - 000779

# HOMEOWNERS POLICY

## DECLARATIONS CONTINUED

We agree to provide the insurance described in this policy:

1. based on your payment of premium for the coverages you chose;

2. based on your compliance with all applicable provisions of this policy; and

3. in reliance on your statements in these **Declarations**.

You agree, by acceptance of this policy, that:

1. you will pay premiums when due and comply with the provisions of the policy;

2. the statements in these **Declarations** are your statements and are true;

3. we insure you on the basis your statements are true; and

4. this policy contains all of the agreements between you and us and any of our agents.

Unless otherwise indicated in the application, you state that during the three years preceding the time of your application for this insurance your Loss History and Insurance History are as follows:

1. Loss History: you and the members of your household have not had any losses which were paid under prior policies; and

2. Insurance History: you have not had any insurer or agency cancel or refuse to issue or renew similar insurance to you or any household member.

## DEFINITIONS

"You" and "your" mean the "named insured" shown in the **Declarations**. Your spouse is included if a resident of your household. "We", "us" and "our" mean the Company shown in the **Declarations**.

Certain words and phrases are defined as follows:

1. "**bodily injury**" means physical harm to a person, including any resulting sickness or disease. This includes the required care, loss of services and death resulting therefrom.

   **Bodily injury** does not include:

   a. the transmission of a **communicable disease** by any **insured** to any other person;

   b. the exposure to any **communicable disease** by any **insured** to any other person; or

   c. emotional distress, mental anguish, humiliation, mental injury, or similar injury unless it arises out of actual physical injury to some person.

2. "**business**" means a trade, profession or occupation. This includes farming.

3. "**business day**" means a day other than a Saturday, Sunday or holiday recognized by the state of Texas.

4. "**communicable disease**" means bacteria, parasite, virus or other organism transmissible from person to person due to direct contact with an affected person or that person's discharges.

5. "**Declarations**" means the policy **Declarations**, any amended **Declarations**, the most recent renewal notice or certificate, an Evidence of Insurance form or any endorsement changing any of these.

6. "**insured**" means you and, if residents of your household:

   a. your relatives; and

   b. any other person under the age of 21 who is in the care of a person described above.

   Under Section II, "**insured**" also means:

   c. with respect to animals or watercraft to which this policy applies, the person or organization legally responsible for them. However, the animal or watercraft must be owned by you or a person

1

FP-7955 TX

SF - Jellison - 000780

6.a. or 6.b. A person or organization using or having custody of these animals or watercraft in the course of a business, or without permission of the owner, is not an **insured**; and

d. with respect to any vehicle to which this policy applies, any person while engaged in your employment or the employment of a person included in 6.a. or 6.b.

7. "**insured location**" means:

a. the **residence premises**;

b. the part of any other premises, other structures and grounds used by you as a residence. This includes premises, structures and grounds you acquire while this policy is in effect for your use as a residence;

c. any premises used by you in connection with the premises included in 7.a. or 7.b.;

d. any part of a premises not owned by an **insured** but where an **insured** is temporarily residing;

e. land owned by or rented to an **insured** on which a one or two family dwelling is being constructed as a residence for an **insured**;

f. individual or family cemetery plots or burial vaults owned by an **insured**;

g. any part of a premises occasionally rented to an **insured** for other than **business** purposes;

h. vacant land owned by or rented to an **insured**. This does not include farm land; and

i. farm land (without buildings), rented or held for rental to others, but not to exceed a total of 500 acres, regardless of the number of locations.

8. "**motor vehicle**", when used in Section II of this policy, means:

a. a motorized land vehicle designed for travel on public roads or subject to motor vehicle registration. A motorized land vehicle in dead storage on an **insured location** is not a **motor vehicle**;

b. a trailer or semi-trailer designed for travel on public roads and subject to motor vehicle registration. A boat, camp, home or utility trailer not being towed by or carried on a vehicle included in 8.a. is not a **motor vehicle**;

c. a motorized golf cart, snowmobile, motorized bicycle, motorized tricycle, all-terrain vehicle or any other similar type equipment owned by an **insured** and designed or used for recreational or utility purposes off public roads, while off an **insured location**. A motorized golf cart while used for golfing purposes is not a **motor vehicle**; and

d. any vehicle while being towed by or carried on a vehicle included in 8.a., 8.b. or 8.c.

9. "**occurrence**", when used in Section II of this policy, means an accident, including exposure to conditions, which results in:

a. **bodily injury**; or

b. **property damage**;

during the policy period. Repeated or continuous exposure to the same general conditions is considered to be one **occurrence**.

10. "**property damage**" means physical damage to or destruction of tangible property, including loss of use of this property. Theft or conversion of property by any **insured** is not **property damage**.

11. "**residence employee**" means an employee of an **insured** who performs duties, including household or domestic services, in connection with the maintenance or use of the **residence premises**. This includes employees who perform similar duties elsewhere for you. This does not include employees while performing duties in connection with the **business** of an **insured**.

12. "**residence premises**" means:

a. the one, two, three or four-family dwelling, other structures and grounds; or

b. that part of any other building;

where you reside and which is shown in the Declarations.

2

FP-7955 TX

SF - Jellison - 000781

# SECTION I - COVERAGES

## COVERAGE A - DWELLING

1. **Dwelling.** We cover the dwelling used principally as a private residence on the **residence premises** shown in the **Declarations.**

   **Dwelling** includes:

   a. structures attached to the dwelling;

   b. materials and supplies located on or adjacent to the **residence premises** for use in the construction, alteration or repair of the dwelling or other structures on the **residence premises;**

   c. foundation, floor slab and footings supporting the dwelling; and

   d. wall-to-wall carpeting attached to the dwelling.

2. **Dwelling Extension.** We cover other structures on the **residence premises,** separated from the dwelling by clear space. Structures connected to the dwelling by only a fence, utility line, or similar connection are considered to be other structures.

   We do not cover other structures:

   a. not permanently attached to or otherwise forming a part of the realty;

   b. used in whole or in part for **business** purposes; or

   c. rented or held for rental to a person not a tenant of the dwelling, unless used solely as a private garage.

3. **Property Not Covered.** We do not cover:

   a. land, including the land necessary to support any Coverage A property;

   b. any costs required to replace, rebuild, stabilize, or otherwise restore the land; or,

   c. the costs of repair techniques designed to compensate for or prevent land instability to any property, whether or not insured under Coverage A.

## COVERAGE B - PERSONAL PROPERTY

1. **Property Covered.** We cover personal property owned or used by an **insured** while it is anywhere in the world. This includes structures not permanently attached to or otherwise forming a part of the realty. At your request, we will cover personal property owned by others while the property is on the part of the **residence premises** occupied exclusively by an **insured.** At your request, we will also cover personal property owned by a guest or a **residence employee,** while the property is in any other residence occupied by an **insured.**

   We cover personal property usually situated at an **insured's** residence, other than the **residence premises,** for up to $1,000 or 10% of the Coverage B limit, whichever is greater. This limitation does not apply to personal property in a newly acquired principal residence for the first 30 days after you start moving the property there. If the **residence premises** is a newly acquired principal residence, personal property in your immediate past principal residence is not subject to this limitation for the first 30 days after the inception of this policy.

   **Special Limits of Liability.** These limits do not increase the Coverage B limit. The special limit for each of the following categories is the total limit for each loss for all property in that category:

   a. $200 on money, coins and medals, including any of these that are a part of a collection, and bank notes;

   b. $1,000 on property used or intended for use in a **business,** including merchandise held as samples or for sale or for delivery after sale, while on the **residence premises.** This coverage is limited to $250 on such property away from the **residence premises.**

   Electronic data processing system equipment or the recording or storage media used with that equipment is not included under this coverage;

   c. $1,000 on securities, checks, cashier's checks, traveler's checks, money orders and other negotiable instruments, accounts, deeds, evidences of debt, letters of credit, notes other than bank notes, manuscripts, passports and tickets;

3

FP-7955 TX

SF - Jellison - 000782

d. $1,000 on watercraft of all types and outboard motors, including their trailers, furnishings and equipment;

e. $1,000 on trailers not used with watercraft;

f. $2,500 on stamps, trading cards and comic books, including any of these that are a part of a collection;

g. $2,500 for loss by theft of firearms;

h. $2,500 for loss by theft of silverware and goldware;

i. $5,000 on electronic data processing system equipment and the recording or storage media used with that equipment. There is no coverage for said equipment or media while located away from the **residence premises** except when said equipment or media are removed from the **residence premises** for the purpose of repair, servicing or temporary use. An **Insured** student's equipment and media are covered while at a residence away from home; and

j. $5,000 on any one article and $10,000 in the aggregate for loss by theft of any rug, carpet (except wall-to-wall carpet), tapestry, wall-hanging or other similar article.

2. **Property Not Covered.** We do not cover:

a. articles separately described and specifically insured in this or any other insurance;

b. animals, birds or fish;

c. any engine or motor propelled vehicle or machine, including the parts, designed for movement on land. We do cover those not licensed for use on public highways which are:

(1) used solely to service the **insured location;** or

(2) designed for assisting the handicapped;

d. devices or instruments for the recording or reproduction of sound permanently attached to an engine or motor propelled vehicle. We do not cover tapes, wires, records or other mediums that may be used with these devices or instruments while in the vehicle;

e. aircraft and parts, except model or hobby aircraft not used or designed to carry people or cargo;

f. property of roomers, boarders, tenants and other residents not related to an **insured.** We do cover property of roomers, boarders and other residents related to an **insured;**

g. property regularly rented or held for rental to others by an **insured.** This exclusion does not apply to property of an **insured** in a sleeping room rented to others by an **insured;**

h. property rented or held for rental to others away from the **residence premises;**

i. any citizens band radios, radio telephones, radio transceivers, radio transmitters, radar or laser detectors, antennas and other similar equipment permanently attached to an engine or motor propelled vehicle;

j. books of account, abstracts, drawings, card index systems and other records. This exclusion does not apply to any recording or storage media for electronic data processing. We will cover the cost of blank books, cards or other blank material plus the cost of labor you incur for transcribing or copying such records; or

k. recording or storage media for electronic data processing that cannot be replaced with other of like kind and quality on the current retail market.

**COVERAGE C - LOSS OF USE**

1. **Additional Living Expense.** When a Loss Insured causes the **residence premises** to become uninhabitable, we will cover the necessary increase in cost you incur to maintain your standard of living for up to 24 months. Our payment is limited to incurred costs for the shortest of: (a) the time required to repair or replace the premises; (b) the time required for your household to settle elsewhere; or (c) 24 months. This coverage is not reduced by the expiration of this policy.

2. **Fair Rental Value.** When a Loss Insured causes that part of the **residence premises** rented to others or held for rental by you to become uninhabitable, we will cover its fair rental value. Payment shall be for the shortest time required to repair or replace the part of

4

FP-7955 TX

SF - Jellison - 000783

the premises rented or held for rental, but not to exceed 12 months. This period of time is not limited by expiration of this policy. Fair rental value shall not include any expense that does not continue while that part of the residence premises rented or held for rental is uninhabitable.

3. **Prohibited Use.** When a civil authority prohibits your use of the residence premises because of direct damage to a neighboring premises by a Loss Insured, we will cover any resulting Additional Living Expense and Fair Rental Value. Coverage is for a period not exceeding two weeks while use is prohibited.

We do not cover loss or expense due to cancellation of a lease or agreement.

## SECTION I - ADDITIONAL COVERAGES

The following Additional Coverages are subject to all the terms, provisions, exclusions and conditions of this policy.

1. **Debris Removal.** We will pay the reasonable expenses you incur in the removal of debris of covered property damaged by a Loss Insured. This expense is included in the limit applying to the damaged property.

When the amount payable for the property damage plus the debris removal exceeds the limit for the damaged property, an additional 5% of that limit is available for debris removal expense. This additional amount of insurance does not apply to Additional Coverage, item 3. Trees, Shrubs and Other Plants.

We will also pay up to $500 in the aggregate for each loss to cover the reasonable expenses you incur in the removal of tree debris from the residence premises when the tree has caused a Loss Insured to Coverage A property.

2. **Temporary Repairs.** If damage is caused by a Loss Insured, we will pay the reasonable and necessary cost you incur for temporary repairs to covered property to protect the property from further immediate damage or loss. This coverage does not increase the limit applying to the property being repaired.

3. **Trees, Shrubs and Other Plants.** We cover outdoor trees, shrubs, plants or lawns, on the residence premises, for direct loss caused by the following: Fire or lightning, Explosion, Riot or civil commotion, Aircraft,

Vehicles (not owned or operated by a resident of the residence premises), Vandalism or malicious mischief or Theft.

The limit for this coverage, including the removal of debris, shall not exceed 5% of the amount shown in the Declarations for COVERAGE A - DWELLING. We will not pay more than $500 for any one outdoor tree, shrub or plant, including debris removal expense. This coverage may increase the limit otherwise applicable. We do not cover property grown for business purposes.

4. **Property Removed.** Covered property, while being removed from a premises endangered by a Loss Insured, is covered for any accidental direct physical loss. This coverage also applies to the property for up to 30 days while removed. We will also pay for reasonable expenses incurred by you for the removal and return of the covered property. This coverage does not increase the limit applying to the property being removed.

5. **Credit Card, Bank Fund Transfer Card, Forgery and Counterfeit Money.**

a. We will pay up to $1,000 for:

(1) the legal obligation of an **Insured** to pay because of the theft or unauthorized use of credit cards and bank fund transfer cards issued to or registered in an **Insured**'s name. If an **Insured** has not complied with all terms and conditions under which the cards are issued, we do not cover use by an **Insured** or anyone else;

(2) loss to an **Insured** caused by forgery or alteration of any check or negotiable instrument; and

(3) loss to an **Insured** through acceptance in good faith of counterfeit United States or Canadian paper currency.

No deductible applies to this coverage.

We will not pay more than the limit stated above for forgery or alteration committed by any one person. This limit applies when the forgery or alteration involves one or more instruments in the same loss.

b. We do not cover loss arising out of business pursuits or dishonesty of an **Insured**.

5

FP-7955 TX

SF - Jellison - 000784

c. Defense:

(1) We may make any investigation and settle any claim or suit that we decide is appropriate. Our obligation to defend claims or suits ends when the amount we pay for the loss equals our limit of liability.

(2) If claim is made or a suit is brought against an **insured** for liability under the Credit Card or Bank Fund Transfer Card coverage, we will provide a defense. This defense is at our expense by counsel of our choice.

(3) We have the option to defend at our expense an **insured** or an **insured's** bank against any suit for the enforcement of payment under the Forgery coverage.

6. **Power Interruption.** We cover accidental direct physical loss caused directly or indirectly by a change of temperature which results from power interruption that takes place on the **residence premises**. The power interruption must be caused by a Loss Insured occurring on the **residence premises**. The power lines off the **residence premises** must remain energized. This coverage does not increase the limit applying to the damaged property.

7. **Refrigerated Products.** Coverage B is extended to cover the contents of deep freeze or refrigerated units on the **residence premises** for loss due to power failure or mechanical failure. If mechanical failure or power failure is known to you, all reasonable means must be used to protect the property insured from further damage or this coverage is void. Power failure or mechanical failure shall not include:

a. removal of a plug from an electrical outlet; or

b. turning off an electrical switch unless caused by a Loss Insured.

This coverage does not increase the limit applying to the damaged property.

8. **Arson Reward.** We will pay $1,000 for information which leads to an arson conviction in connection with a fire loss to property covered by this policy. This coverage may increase the limit otherwise applicable. How-

ever, the $1,000 limit shall not be increased regardless of the number of persons providing information.

9. **Volcanic Action.** We cover direct physical loss to a covered building or covered property contained in a building resulting from the eruption of a volcano when the loss is directly and immediately caused by:

a. volcanic blast or airborne shock waves;

b. ash, dust or particulate matter; or

c. lava flow.

We will also pay for the removal of that ash, dust or particulate matter which has caused direct physical loss to a covered building or covered property contained in a building.

One or more volcanic eruptions that occur within a 72-hour period shall be considered one volcanic eruption.

This coverage does not increase the limit applying to the damaged property.

10. **Collapse.** We insure only for direct physical loss to covered property involving the sudden, entire collapse of a building or any part of a building.

Collapse means actually fallen down or fallen into pieces. It does not include settling, cracking, shrinking, bulging, expansion, sagging or bowing.

The collapse must be directly and immediately caused only by one or more of the following:

a. perils described in **SECTION I - LOSSES INSURED, COVERAGE B - PERSONAL PROPERTY.** These perils apply to covered building and personal property for loss insured by this Additional Coverage;

b. hidden decay of a supporting or weight-bearing structural member of the building;

c. hidden insect or vermin damage to a structural member of the building;

d. weight of contents, equipment, animals or people;

e. weight of ice, snow, sleet or rain which collects on a roof; or

·6·

FP-7955 TX

SF - Jellison - 000785

f.  use of defective material or methods in the con-
struction (includes remodeling or renovation) of the
building, if the collapse occurs during the course of
the construction of the building.

Loss to an awning, fence, patio, pavement, swimming
pool, underground pipe, flue, drain, cesspool, septic
tank, foundation, retaining wall, bulkhead, pier, wharf
or dock is not included under items b., c., d., e. and f.
unless the loss is the direct and immediate cause of
the collapse of the building.

This coverage does not increase the limit applying to
the damaged property.

11.  **Locks.** We will pay the reasonable expenses you incur
to re-key locks on exterior doors of the dwelling located
on the **residence premises,** when the keys to those
locks are a part of a covered theft loss.

No deductible applies to this coverage.

## INFLATION COVERAGE

The limits of liability shown in the **Declarations** for
Coverage A, Coverage B and, when applicable, Option ID
will be increased at the same rate as the increase in the
Inflation Coverage Index shown in the **Declarations.**

To find the limits on a given date:

1.  divide the Index on that date by the Index as of the
effective date of this Inflation Coverage provision; then

2.  multiply the resulting factor by the limits of liability for
Coverage A, Coverage B and Option ID separately.

The limits of liability will not be reduced to less than the
amounts shown in the **Declarations.**

If during the term of this policy the Coverage A limit of lia-
bility is changed at your request, the effective date of this
Inflation Coverage provision is changed to coincide with
the effective date of such change.

# SECTION I - LOSSES INSURED

## COVERAGE A - DWELLING

We insure for accidental direct physical loss to the property
described in Coverage A, except as provided in **SECTION
I - LOSSES NOT INSURED.**

## COVERAGE B - PERSONAL PROPERTY

We insure for accidental direct physical loss to property
described in Coverage B caused by the following perils,
except as provided in **SECTION I - LOSSES NOT
INSURED:**

1.  **Fire or lightning.**

2.  **Windstorm or hail.** This peril does not include loss to
property contained in a building caused by rain, snow,
sleet, sand or dust. This limitation does not apply when
the direct force of wind or hail damages the building
causing an opening in a roof or wall and the rain, snow,
sleet, sand or dust enters through this opening.

This peril includes loss to watercraft of all types and
their trailers, furnishings, equipment, and outboard
motors, only while inside a fully enclosed building.

3.  **Explosion.**

4.  **Riot or civil commotion.**

5.  **Aircraft,** including self-propelled missiles and space-
craft.

6.  **Vehicles,** meaning impact by a vehicle.

7.  **Smoke,** meaning sudden and accidental damage from
smoke.

This peril does not include loss caused by smoke from
agricultural smudging or industrial operations.

8.  **Vandalism or malicious mischief,** meaning only will-
ful and malicious damage to or destruction of property.

9.  **Theft,** including attempted theft and loss of property
from a known location when it is probable that the
property has been stolen.

This peril does not include:

a.  loss of a precious or semi-precious stone from its
setting;

b.  loss caused by theft:

(1) committed by an **insured** or by any other per-
son regularly residing on the **insured location.**

7

SF - Jellison - 000786

Property of a student who is an **insured** is covered while located at a residence away from home, if the theft is committed by a person who is not an **insured**;

(2) in or to a dwelling under construction or of materials and supplies for use in the construction until the dwelling is completed and occupied; or

(3) from the part of a **residence premises** rented to others:

(a) caused by a tenant, members of the tenant's household, or the tenant's employees;

(b) of money, bank notes, bullion, gold, goldware, silver, silverware, pewterware, platinium, coins and medals;

(c) of securities, checks, cashier's checks, traveler's checks, money orders and other negotiable instruments, accounts, deeds, evidences of debt, letters of credit, notes other than bank notes, manuscripts, passports, tickets and stamps; or

(d) of jewelry, watches, fur garments and garments trimmed with fur, precious and semiprecious stones;

c. loss caused by theft that occurs away from the **residence premises** of:

(1) property while at any other residence owned, rented to, or occupied by an **insured**, except while an **insured** is temporarily residing there. Property of a student who is an **insured** is covered while at a residence away from home;

(2) watercraft of all types, including their furnishings, equipment and outboard motors; or

(3) trailers and campers designed to be pulled by or carried on a vehicle.

If the **residence premises** is a newly acquired principal residence, property in the immediate past principal residence shall not be considered property away from the **residence premises** for the first 30 days after the inception of this policy.

10. **Falling objects.** This peril does not include loss to property contained in a building unless the roof or an exterior wall of the building is first damaged by a falling object. Damage to the falling object itself is not included.

11. **Weight of ice, snow or sleet** which causes damage to property contained in a building.

12. **Sudden and accidental discharge or overflow** of water or steam from within a plumbing, heating, air conditioning or automatic fire protective sprinkler system, or from within a household appliance.

This peril does not include loss:

a. to the system or appliance from which the water or steam escaped;

b. caused by or resulting from freezing;

c. caused by or resulting from water or sewage from outside the **residence premises** plumbing system that enters through sewers or drains, or water which enters into and overflows from within a sump pump, sump pump well or any other system designed to remove subsurface water which is drained from the foundation area; or

d. caused by or resulting from continuous or repeated seepage or leakage of water or steam which occurs over a period of time and results in deterioration, corrosion, rust, mold, or wet or dry rot.

13. **Sudden and accidental tearing asunder, cracking, burning or bulging** of a steam or hot water heating system, an air conditioning or automatic fire protective sprinkler system, or an appliance for heating water.

This peril does not include loss:

a. caused by or resulting from freezing; or

b. caused by or resulting from continuous or repeated seepage or leakage of water or steam which occurs over a period of time and results in deterioration, corrosion, rust, mold, or wet or dry rot.

14. **Freezing** of a plumbing, heating, air conditioning or automatic fire protective sprinkler system, or of a household appliance.

8

FP-7955 TX

SF - Jellison - 000787

This peril does not include loss on the **residence premises** while the dwelling is vacant, unoccupied or being constructed, unless you have used reasonable care to:

a. maintain heat in the building; or

b. shut off the water supply and drain the system and appliances of water.

15. **Sudden and accidental damage** to electrical appliances, devices, fixtures and wiring from an increase or decrease of artificially generated electrical current. We will pay up to $1,000 under this peril for each damaged item described above.

16. **Breakage of glass**, meaning damage to personal property caused by breakage of glass which is a part of a building on the **residence premises**. There is no coverage for loss or damage to the glass.

## SECTION I - LOSSES NOT INSURED

1. We do not insure for any loss to the property described in Coverage A which consists of, or is directly and immediately caused by, one or more of the perils listed in items a. through n. below, regardless of whether the loss occurs suddenly or gradually, involves isolated or widespread damage, arises from natural or external forces, or occurs as a result of any combination of these:

   a. collapse, except as specifically provided in **SECTION I - ADDITIONAL COVERAGES, Collapse**;

   b. freezing of a plumbing, heating, air conditioning or automatic fire protective sprinkler system; or of a household appliance, or by discharge, leakage or overflow from within the system or appliance caused by freezing. This exclusion only applies while the dwelling is vacant, unoccupied or being constructed. This exclusion does not apply if you have used reasonable care to:

      (1) maintain heat in the building; or

      (2) shut off the water supply and drain the system and appliances of water;

   c. freezing, thawing, pressure or weight of water or ice, whether driven by wind or not, to a swimming pool, hot tub or spa, including their filtration and circulation systems, fence, pavement, patio, foundation, retaining wall, bulkhead, pier, wharf or dock;

   d. theft in or to a dwelling under construction, or of materials and supplies for use in the construction, until the dwelling is completed and occupied;

   e. vandalism or malicious mischief or breakage of glass and safety glazing materials if the dwelling has been vacant for more than 30 consecutive days immediately before the loss. A dwelling being constructed is not considered vacant;

   f. continuous or repeated seepage or leakage of water or steam from a:

      (1) heating, air conditioning or automatic fire protective sprinkler system;

      (2) household appliance; or

      (3) plumbing system, including from, within or around any shower stall, shower bath, tub installation, or other plumbing fixture, including their walls, ceilings or floors;

      which occurs over a period of time. If loss to covered property is caused by water or steam not otherwise excluded, we will cover the cost of tearing out and replacing any part of the building necessary to repair the system or appliance. We do not cover loss to the system or appliance from which the water or steam escaped;

   g. wear, tear, marring, scratching, deterioration, inherent vice, latent defect or mechanical breakdown;

   h. corrosion, electrolysis or rust;

   i. mold, fungus or wet or dry rot;

   j. contamination;

   k. smog, smoke from agricultural smudging or industrial operations;

9

FP-7955 TX

SF - Jellison - 000788

l.  settling, cracking, shrinking, bulging, or expansion of pavements, patios, foundation, walls, floors, roofs or ceilings;

m.  birds, vermin, rodents, insects, or domestic animals. We do cover the breakage of glass or safety glazing material which is a part of a building, when caused by birds, vermin, rodents, insects or domestic animals; or

n.  pressure from or presence of tree, shrub or plant roots.

However, we do insure for any resulting loss from items a. through m. unless the resulting loss is itself a Loss Not Insured by this Section.

2.  We do not insure under any coverage for any loss which would not have occurred in the absence of one or more of the following excluded events. We do not insure for such loss regardless of: (a) the cause of the excluded event; or (b) other causes of the loss; or (c) whether other causes acted concurrently or in any sequence with the excluded event to produce the loss; or (d) whether the event occurs suddenly or gradually, involves isolated or widespread damage, arises from natural or external forces, or occurs as a result of any combination of these:

a.  **Ordinance or Law,** meaning enforcement of any ordinance or law regulating the construction, repair or demolition of a building or other structure.

b.  **Earth Movement,** meaning the sinking, rising, shifting, expanding or contracting of earth, all whether combined with water or not. Earth movement includes but is not limited to earthquake, landslide, mudflow, mudslide, sinkhole, subsidence, erosion or movement resulting from improper compaction, site selection or any other external forces. Earth movement also includes volcanic explosion or lava flow, except as specifically provided in **SECTION I - ADDITIONAL COVERAGES, Volcanic Action.**

However, we do insure for any direct loss by fire resulting from earth movement, provided the resulting fire loss is itself a Loss Insured.

c.  **Water Damage,** meaning:

(1) flood, surface water, waves, tidal water, tsunami, seiche, overflow of a body of water, or spray from any of these, all whether driven by wind or not;

(2) water or sewage from outside the **residence premises** plumbing system that enters through sewers or drains, or water which enters into and overflows from within a sump pump, sump pump well or any other system designed to remove subsurface water which is drained from the foundation area; or

(3) water below the surface of the ground, including water which exerts pressure on, or seeps or leaks through a building, sidewalk, driveway, foundation, swimming pool or other structure.

However, we do insure for any direct loss by fire, explosion or theft resulting from water damage, provided the resulting loss is itself a Loss Insured.

d.  **Neglect,** meaning neglect of the **insured** to use all reasonable means to save and preserve property at and after the time of a loss, or when property is endangered.

e.  **War,** including any undeclared war, civil war, insurrection, rebellion, revolution, warlike act by a military force or military personnel, destruction or seizure or use for a military purpose, and including any consequence of any of these. Discharge of a nuclear weapon shall be deemed a warlike act even if accidental.

f.  **Nuclear Hazard,** meaning any nuclear reaction, radiation, or radioactive contamination, all whether controlled or uncontrolled or however caused, or any consequence of any of these. Loss caused by the nuclear hazard shall not be considered loss caused by fire, explosion or smoke.

However, we do insure for any direct loss by fire resulting from the nuclear hazard, provided the resulting fire loss is itself a Loss Insured.

3.  We do not insure under any coverage for any loss consisting of one or more of the items below. Further, we do not insure for loss described in paragraphs 1. and 2. immediately above regardless of whether one or more of the following: (a) directly or indirectly cause,

FP-7955 TX

SF - Jellison - 000789

contribute to or aggravate the loss; or (b) occur before, at the same time, or after the loss or any other cause of the loss;

a. conduct, act, failure to act, or decision of any person, group, organization or governmental body whether intentional, wrongful, negligent, or without fault;

b. defect, weakness, inadequacy, fault or unsoundness in:

(1) planning, zoning, development, surveying, siting;

(2) design, specifications, workmanship, construction, grading, compaction;

(3) materials used in construction or repair; or

(4) maintenance;

of any property (including land, structures, or improvements of any kind) whether on or off the **residence premises**; or

c. weather conditions.

However, we do insure for any resulting loss from items a., b. and c. unless the resulting loss is itself a Loss Not Insured by this Section.

## SECTION I - LOSS SETTLEMENT

Only the Loss Settlement provisions shown in the **Declarations** apply. We will settle covered property losses according to the following.

### COVERAGE A - DWELLING

1. **A1 - Replacement Cost Loss Settlement - Similar Construction.**

   a. We will pay up to the applicable limit of liability shown in the **Declarations**, the reasonable and necessary cost to repair or replace with similar construction and for the same use on the premises shown in the **Declarations**, the damaged part of the property covered under **SECTION I - COVERAGES, COVERAGE A - DWELLING**, except for wood fences.

      We will not pay for increased costs resulting from enforcement of any ordinance or law regulating the construction, repair or demolition of a building or other structure, except as provided under **Option OL - Building Ordinance or Law Coverage.**

   b. Wood Fences: We will pay the actual cash value at the time of loss for loss or damage to wood fences, not to exceed the limit of liability shown in the **Declarations** for COVERAGE A - DWELLING EXTENSION.

2. **A2 - Replacement Cost Loss Settlement - Common Construction.**

   a. We will pay up to the applicable limit of liability shown in the **Declarations**, the reasonable and necessary cost to repair or replace with common construction and for the same use on the premises shown in the **Declarations**, the damaged part of the property covered under **SECTION I - COVERAGES, COVERAGE A - DWELLING**, except for wood fences, subject to the following:

      (1) we will pay only for repair or replacement of the damaged part of the property with common construction techniques and materials commonly used by the building trades in standard new construction. We will not pay the cost to repair or replace obsolete, antique or custom construction with like kind and quality;

      (2) we will not pay for increased costs resulting from enforcement of any ordinance or law regulating the construction, repair or demolition of a building or other structure, except as provided under **Option OL - Building Ordinance or Law Coverage.**

   b. Wood Fences: We will pay the actual cash value at the time of loss for loss or damage to wood fences, not to exceed the limit of liability shown in the **Declarations** for COVERAGE A - DWELLING EXTENSION.

11

FP-7955 TX

SF - Jellison - 000790

## COVERAGE B - PERSONAL PROPERTY

1. **B1 - Limited Replacement Cost Loss Settlement.**

   a. We will pay the cost to repair or replace property covered under **SECTION I - COVERAGES, COVERAGE B - PERSONAL PROPERTY**, except for property listed in item b. below, subject to the following:

      (1) until repair or replacement is completed, we will pay only the cost to repair or replace less depreciation;

      (2) after repair or replacement is completed, we will pay the difference between the cost to repair or replace less depreciation and the cost you have actually and necessarily spent to repair or replace the property; and

      (3) if property is not repaired or replaced within two years after the date of loss, we will pay only the cost to repair or replace less depreciation.

   b. We will pay market value at the time of loss for:

      (1) antiques, fine arts, paintings, statuary and similar articles which by their inherent nature cannot be replaced with new articles;

      (2) articles whose age or history contribute substantially to their value including, but not limited to, memorabilia, souvenirs and collectors items; and

      (3) property not useful for its intended purpose.

   However, we will not pay an amount exceeding the smallest of the following for items a. and b. above:

      (1) our cost to replace at the time of loss;

      (2) the full cost of repair;

      (3) any special limit of liability described in the policy; or

      (4) any applicable Coverage B limit of liability.

2. **B2 - Depreciated Loss Settlement.**

   a. We will pay the cost to repair or replace less depreciation at the time of loss for property covered under **SECTION I - COVERAGES, COVERAGE B - PERSONAL PROPERTY**, except for property listed in item b. below.

   b. We will pay market value at the time of loss for:

      (1) antiques, fine arts, paintings, statuary and similar articles which by their inherent nature cannot be replaced with new articles;

      (2) articles whose age or history contribute substantially to their value including, but not limited to, memorabilia, souvenirs and collectors items; and

      (3) property not useful for its intended purpose.

   However, we will not pay an amount exceeding the smallest of the following for items a. and b. above:

      (1) our cost to replace at the time of loss;

      (2) the full cost of repair;

      (3) any special limit of liability described in the policy; or

      (4) any applicable Coverage B limit of liability.

# SECTION I - CONDITIONS

1. **Insurable Interest and Limit of Liability.** Even if more than one person has an insurable interest in the property covered, we shall not be liable:

   a. to the **Insured** for an amount greater than the **Insured's** interest; or

   b. for more than the applicable limit of liability.

Article 6.13. Policy A Liquidated Demand. A fire insurance policy, in case of a total loss by fire of property insured, shall be held and considered to be, a liquidated demand against the company for the full amount of such policy. The provisions of this article shall not apply to personal property.

2. **Your Duties After Loss.** After a loss to which this insurance may apply, you shall see that the following duties are performed:

12

FP-7955 TX

SF - Jellison - 000791

a. give immediate notice to us or our agent. Also notify the police if the loss is caused by theft. Also notify the credit card company or bank if the loss involves a credit card or bank fund transfer card;

b. protect the property from further damage or loss, make reasonable and necessary temporary repairs required to protect the property, keep an accurate record of repair expenditures;

c. prepare an inventory of damaged or stolen personal property. Show in detail the quantity, description, age, replacement cost and amount of loss. Attach to the inventory all bills, receipts and related documents that substantiate the figures in the inventory;

d. as often as we reasonably require;

  (1) exhibit the damaged property;

  (2) provide us with records and documents we request and permit us to make copies;

  (3) submit to and subscribe, while not in the presence of any other insured:

    (a) statements; and

    (b) examinations under oath; and

  (4) produce employees, members of the **insured's** household or others for examination under oath to the extent it is within the **insured's** power to do so; and

e. submit to us, within 91 days after the loss, your signed, sworn proof of loss which sets forth, to the best of your knowledge and belief:

  (1) the time and cause of loss;

  (2) interest of the **insured** and all others in the property involved and all encumbrances on the property;

  (3) other insurance which may cover the loss;

  (4) changes in title or occupancy of the property during the term of this policy;

  (5) specifications of any damaged building and detailed estimates for repair of the damage;

  (6) an inventory of damaged or stolen personal property described in 2.c.;

  (7) receipts for additional living expenses incurred and records supporting the fair rental value loss; and

  (8) evidence or affidavit supporting a claim under the Credit Card, Bank Fund Transfer Card, Forgery and Counterfeit Money coverage, stating the amount and cause of loss.

3. **Loss to a Pair or Set.** In case of loss to a pair or set, we may elect to:

a. repair or replace any part to restore the pair or set to its value before the loss; or

b. pay the difference between the depreciated value of the property before and after the loss.

4. **Appraisal.** If you and we fail to agree on the amount of loss, either one can demand that the amount of the loss be set by appraisal. If either makes a written demand for appraisal, each shall select a competent, disinterested appraiser. Each shall notify the other of the appraiser's identity within 20 days of receipt of the written demand. The two appraisers shall then select a competent, impartial umpire. If the two appraisers are unable to agree upon an umpire within 15 days, you or we can ask a judge of a court of record in the state where the **residence premises** is located to select an umpire. The appraisers shall then set the amount of the loss. If the appraisers submit a written report of an agreement to us, the amount agreed upon shall be the amount of the loss. If the appraisers fail to agree within a reasonable time, they shall submit their differences to the umpire. Written agreement signed by any two of these three shall set the amount of the loss. Each appraiser shall be paid by the party selecting that appraiser. Other expenses of the appraisal and the compensation of the umpire shall be paid equally by you and us.

5. **Other Insurance.** If a loss covered by this policy is also covered by other insurance, we will pay only our share of the loss. Our share is the proportion of the loss that the applicable limit under this policy bears to the total amount of insurance covering the loss.

FP-7955 TX

SF - Jellison - 000792

6. **Suit Against Us.** No action shall be brought unless there has been compliance with the policy provisions and the action is started within two years and one day after the date of loss or damage.

7. **Our Option.** We may repair or replace any part of the property damaged or stolen with similar property. Any property we pay for or replace becomes our property.

8. **Loss Payment.** We will adjust all losses with you. We will pay you unless some other person is named in the policy or is legally entitled to receive payment.

   If we notify you that we will pay your claim, or part of your claim, we must pay within 5 **business days** after we notify you. If payment of your claim or part of your claim requires the performance of an act by you, we must pay within 5 **business days** after the date you perform the act.

9. **Abandonment of Property.** We need not accept any property abandoned by an **insured**.

10. **Mortgage Clause** (without contribution).

    a. The word "mortgagee" includes trustee.

    b. We will pay for any covered loss of or damage to buildings or structures to the mortgagee shown in the **Declarations** as interests appear.

    c. The mortgagee has the right to receive loss payment even if the mortgagee has started foreclosure or similar action on the building or structure.

    d. If we deny your claim because of your acts or because you have failed to comply with the terms of this policy, the mortgagee has the right to receive loss payment if the mortgagee:

       (1) at our request, pays any premiums due under this policy, if you have failed to do so;

       (2) submits a signed, sworn statement of loss within 91 days after receiving notice from us of your failure to do so; and

       (3) has notified us of any change in ownership, occupancy or substantial change in risk known to the mortgagee.

       All of the terms of this policy will then apply directly to the mortgagee.

    Failure of the mortgagee to comply with d.(1), d.(2) or d.(3) above shall void this policy as to the interest of the mortgagee.

    e. If we pay the mortgagee for any loss or damage and deny payment to you because of your acts or because you have failed to comply with the terms of this policy:

       (1) the mortgagee's rights under the mortgage will be transferred to us to the extent of the amount we pay; and

       (2) the mortgagee's right to recover the full amount of the mortgagee's claim will not be impaired.

       At our option, we may pay to the mortgagee the whole principal on the mortgage plus any accrued interest. In this event, your mortgage and note will be transferred to us and you will pay your remaining mortgage debt to us.

    f. If this policy is cancelled, we will give the mortgagee specifically named in the **Declarations** written notice of cancellation.

       If we cancel the policy, we will give the mortgagee the same number of days notice of cancellation we give to you.

       If you cancel the policy, we will give the mortgagee notice of cancellation to be effective on the date stated in the notice. The date of cancellation cannot be before the 10th day after the date we mail the notice.

       We will not give notice of cancellation to any successor or assignee of the mortgagee named in this policy.

    g. If the property described under Coverage A (Dwelling) is foreclosed upon under the deed of trust, the mortgagee may cancel this policy of insurance and will be entitled to any unearned premiums from this policy.

       The mortgagee must credit any unearned premium against any deficiency owed by the borrower and return any unearned premium not so credited to the borrower. The unearned premium will be figured using the customary pro rata procedures.

14

FP-7955 TX

SF - Jellison - 000793

h. If we elect not to renew this policy, the mortgagee specifically named in the **Declarations** will be given 30 days written notice of the nonrenewal.

11. **No Benefit to Bailee.** We will not recognize an assignment or grant coverage for the benefit of a person or organization holding, storing or transporting property for a fee. This applies regardless of any other provision of this policy.

12. **Intentional Acts.** If you or any person insured under this policy causes or procures a loss to property covered under this policy for the purpose of obtaining insurance benefits, then this policy is void as to you and any other **insured** that caused or contributed to the loss or its procurement.

13. **Residential Community Property Clause.** This policy, subject to all other terms and conditions, when covering residential community property, as defined by state law, shall remain in full force and effect as to the interest of each spouse covered, irrespective of divorce or change of ownership between the spouses unless excluded by endorsement attached to this policy until the expiration of the policy or until cancelled in accordance with the terms and conditions of this policy.

14. **Our Duties After Loss.**

   a. Within 15 days after we receive your written notice of claim, we must:

   (1) acknowledge receipt of the claim.

   If our acknowledgment of the claim is not in writing, we will keep a record of the date, method and content of our acknowledgment;

   (2) begin any investigation of the claim;

   (3) specify the information you must provide in accordance with "Your Duties After Loss" (item 2. above).

   We may request more information, if during the investigation of the claim such additional information is necessary.

   b. After we receive the information we request, we must notify you in writing whether the claim will be paid or has been denied or whether more information is needed:

   (1) within 15 **business days**; or

   (2) within 30 days if we have reason to believe the loss resulted from arson.

   c. If we do not approve payment of your claim or require more time for processing your claim, we must:

   (1) give the reasons for denying your claim; or

   (2) give the reasons we require more time to process your claim. But, we must either approve or deny your claim within 45 days after requesting more time.

15. **Catastrophe Claims.** If a claim results from a weather related catastrophe or major natural disaster, each claim handling deadline shown under the Duties After Loss and Loss Payment provisions is extended for an additional 15 days.

   Catastrophe or Major Natural Disaster means a weather related event which:

   a. is declared a disaster under the Texas Disaster Act of 1975; or

   b. is determined to be a catastrophe by the State Board of Insurance.

## SECTION II - LIABILITY COVERAGES

### COVERAGE L - PERSONAL LIABILITY.

If a claim is made or a suit is brought against an **insured** for damages because of **bodily injury** or **property damage** to which this coverage applies, caused by an **occurrence**, we will:

1. pay up to our limit of liability for the damages for which the **insured** is legally liable; and

2. provide a defense at our expense by counsel of our choice. We may make any investigation and settle any claim or suit that we decide is appropriate. Our obliga-

15

FP-7955 TX

SF - Jellison - 000794

tion to defend any claim or suit ends when the amount we pay for damages, to effect settlement or satisfy a judgment resulting from the **occurrence**, equals our limit of liability.

**COVERAGE M – MEDICAL PAYMENTS TO OTHERS**

We will pay the necessary medical expenses incurred or medically ascertained within three years from the date of an accident causing **bodily injury**. Medical expenses means reasonable charges for medical, surgical, x-ray, dental, ambulance, hospital, professional nursing, prosthetic devices and funeral services. This coverage applies only:

1. to a person on the **insured location** with the permission of an **insured**;

2. to a person off the **insured location**, if the **bodily injury**:

   a. arises out of a condition on the **insured location** or the ways immediately adjoining;

   b. is caused by the activities of an **insured**;

   c. is caused by a **residence employee** in the course of the **residence employee's** employment by an **insured**; or

   d. is caused by an animal owned by or in the care of an **insured**; or

3. to a **residence employee** if the **occurrence** causing **bodily injury** occurs off the **insured location** and arises out of or in the course of the **residence employee's** employment by an **insured**.

**SECTION II – ADDITIONAL COVERAGES**

We cover the following in addition to the limits of liability:

1. **Claim Expenses.** We pay:

   a. expenses we incur and costs taxed against an **insured** in suits we defend;

   b. premiums on bonds required in suits we defend, but not for bond amounts greater than the Coverage L limit. We are not obligated to apply for or furnish any bond;

   c. reasonable expenses an **insured** incurs at our request. This includes actual loss of earnings (but

not loss of other income) up to $100 per day for aiding us in the investigation or defense of claims or suits;

   d. prejudgment interest awarded against the **insured** on that part of the judgment we pay; and

   e. interest on the entire judgment which accrues after entry of the judgment and before we pay or tender, or deposit in court that part of the judgment which does not exceed the limit of liability that applies.

2. **First Aid Expenses.** We will pay expenses for first aid to others incurred by an **insured** for **bodily injury** covered under this policy. We will not pay for first aid to you or any other **insured**.

3. **Damage to Property of Others.**

   a. We will pay for **property damage** to property of others caused by an **insured**.

   b. We will not pay more than the smallest of the following amounts:

      (1) replacement cost at the time of loss;

      (2) full cost of repair; or

      (3) $500 in any one **occurrence**.

   c. We will not pay for **property damage**:

      (1) if insurance is otherwise provided in this policy;

      (2) caused intentionally by an **insured** who is 13 years of age or older;

      (3) to property, other than a rented golf cart, owned by or rented to an **insured**, a tenant of an **insured**, or a resident in your household; or

      (4) arising out of:

         (a) **business** pursuits;

         (b) any act or omission in connection with a premises an **insured** owns, rents or controls, other than the **insured location**; or

         (c) the ownership, maintenance or use of a **motor vehicle**, aircraft, or watercraft, including airboat, air cushion, personal watercraft, sail board or similar type watercraft.

16

FP-7955 TX

SF - Jellison - 000795

## SECTION II - EXCLUSIONS

1. Coverage L and Coverage M do not apply to:

   a. **bodily injury** or **property damage:**

      (1) which is either expected or intended by the **insured;** or

      (2) which is the result of willful and malicious acts of the **insured;**

   b. **bodily injury** or **property damage** arising out of **business** pursuits of any **insured** or the rental or holding for rental of any part of any premises by any **insured.** This exclusion does not apply:

      (1) to activities which are ordinarily incident to non-**business** pursuits;

      (2) with respect to Coverage L to the occasional or part-time **business** pursuits of an **insured** who is under 19 years of age;

      (3) to the rental or holding for rental of a residence of yours:

         (a) on an occasional basis for the exclusive use as a residence;

         (b) in part, unless intended for use as a residence by more than two roomers or boarders; or

         (c) in part, as an office, school, studio or private garage;

      (4) when the dwelling on the **residence premises** is a two, three or four-family dwelling and you occupy one part and rent or hold for rental the other part; or

      (5) to farm land (without buildings), rented or held for rental to others, but not to exceed a total of 500 acres, regardless of the number of locations;

   c. **bodily injury** or **property damage** arising out of the rendering or failing to render professional services;

   d. **bodily injury** or **property damage** arising out of any premises currently owned or rented to any **insured** which is not an **insured location.** This exclusion does not apply to **bodily injury** to a **residence employee** arising out of and in the course of the **residence employee's** employment by an **insured;**

   e. **bodily injury** or **property damage** arising out of the ownership, maintenance, use, loading or unloading of:

      (1) an aircraft, except model or hobby aircraft not used or designed to carry people or cargo;

      (2) a **motor vehicle** owned or operated by or rented or loaned to any **insured;** or

      (3) a watercraft:

         (a) owned by or rented to any **insured** if it has inboard or inboard-outdrive motor power of more than 50 horsepower;

         (b) owned by or rented to any **insured** if it is a sailing vessel, with or without auxiliary power, 26 feet or more in overall length;

         (c) powered by one or more outboard motors with more than 25 total horsepower owned by any **insured;**

         (d) designated as an airboat, air cushion, or similar type of craft; or

         (e) owned by any **insured** which is a personal watercraft using a water jet pump powered by an internal combustion engine as the primary source of propulsion.

      This exclusion does not apply to **bodily injury** to a **residence employee** arising out of and in the course of the **residence employee's** employment by an **insured.** Exclusion e.(3) does not apply while the watercraft is on the **residence premises;**

   f. **bodily injury** or **property damage** arising out of:

      (1) the entrustment by any **insured** to any person;

      (2) the supervision by any **insured** of any person;

17

FP-7955 TX

SF - Jellison - 000796

(3) any liability statutorily imposed on any **insured**; or

(4) any liability assumed through an unwritten or written agreement by any **insured**;

with regard to the ownership, maintenance or use of any aircraft, watercraft, or **motor vehicle** which is not covered under Section II of this policy;

g. **bodily injury or property damage** caused directly or indirectly by war, including undeclared war, or any warlike act including destruction or seizure or use for a military purpose, or any consequence of these. Discharge of a nuclear weapon shall be deemed a warlike act even if accidental;

h. **bodily injury** to **you** or any **insured** within the meaning of part a. or b. of the definition of **insured**.

This exclusion also applies to any claim made or suit brought against **you** or any **insured** to share damages with or repay someone else who may be obligated to pay damages because of the **bodily injury** sustained by **you** or any **insured** within the meaning of part a. or b. of the definition of **insured**;

i. any claim made or suit brought against any **insured** by:

(1) any person who is in the care of any **insured** because of child care services provided by or at the direction of:

(a) any **insured**;

(b) any employee of any **insured**; or

(c) any other person actually or apparently acting on behalf of any **insured**; or

(2) any person who makes a claim because of **bodily injury** to any person who is in the care of any **insured** because of child care services provided by or at the direction of:

(a) any **insured**;

(b) any employee of any **insured**; or

(c) any other person actually or apparently acting on behalf of any **insured**.

This exclusion does not apply to the occasional child care services provided by any **insured**, or to the part-time child care services provided by any **insured** who is under 19 years of age; or

j. **bodily injury** or **property damage** arising out of an **insured's** participation in, or preparation or practice for any prearranged or organized race, speed or demolition contest, or similar competition involving a motorized land vehicle or motorized watercraft. This exclusion does not apply to a sailing vessel less than 26 feet in overall length with or without auxiliary power.

2. Coverage L does not apply to:

a. liability:

(1) for **your** share of any loss assessment charged against all members of an association of property owners; or

(2) assumed under any unwritten contract or agreement, or by contract or agreement in connection with a **business** of the **insured**;

b. **property damage** to property currently owned by any **insured**;

c. **property damage** to property rented to, occupied or used by or in the care of any **insured**. This exclusion does not apply to **property damage** caused by fire, smoke or explosion;

d. **bodily injury** to a person eligible to receive any benefits required to be provided or voluntarily provided by an **insured** under a workers' compensation, non-occupational disability, or occupational disease law;

e. **bodily injury** or **property damage** for which an **insured** under this policy is also an insured under a nuclear energy liability policy, or would be an insured but for its termination upon exhaustion of its limit of liability. A nuclear energy liability policy is a policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters, Nuclear Insurance Association of Canada, or any of their successors.

18

FP-7955 TX

SF - Jellison - 000797

3. Coverage M does not apply to bodily injury:

   a. to a **residence employee** if it occurs off the **insured location** and does not arise out of or in the course of the **residence employee's** employment by an **insured**;

   b. to a person eligible to receive any benefits required to be provided or voluntarily provided under any workers' compensation, non-occupational disability or occupational disease law;

   c. from nuclear reaction, radiation or radioactive contamination, all whether controlled or uncontrolled or however caused, or any consequence of any of these;

   d. to a person other than a **residence employee** of an **insured**, regularly residing on any part of the **insured location**.

## SECTION II - CONDITIONS

1. **Limit of Liability.** The Coverage L limit is shown in the **Declarations.** This is our limit for all damages from each **occurrence** regardless of the number of **insureds**, claims made or persons injured.

   The Coverage M limit is shown in the **Declarations.** This is our limit for all medical expense for **bodily injury** to one person as the result of one accident.

2. **Severability of Insurance.** This insurance applies separately to each **insured.** This condition shall not increase our limit of liability for any one **occurrence.**

3. **Duties After Loss.** In case of an accident or **occurrence**, the **insured** shall perform the following duties that apply. You shall cooperate with us in seeing that these duties are performed:

   a. give written notice to us or our agent as soon as practicable, which sets forth:

      (1) the identity of this policy and **insured**;

      (2) reasonably available information on the time, place and circumstances of the accident or occurrence; and

      (3) names and addresses of any claimants and available witnesses;

   b. immediately forward to us every notice, demand, summons or other process relating to the accident or occurrence;

   c. at our request, assist in:

      (1) making settlement;

      (2) the enforcement of any right of contribution or indemnity against a person or organization who may be liable to an **insured**;

      (3) the conduct of suits and attend hearings and trials; and

      (4) securing and giving evidence and obtaining the attendance of witnesses;

   d. under the coverage - **Damage to Property of Others**, exhibit the damaged property if within the **insured's** control; and

   e. the **insured** shall not, except at the **insured's** own cost, voluntarily make payments, assume obligations or incur expenses. This does not apply to expense for first aid to others at the time of the **bodily injury**.

4. **Duties of an Injured Person - Coverage M.** The injured person, or, when appropriate, someone acting on behalf of that person, shall:

   a. give us written proof of claim, under oath if required, as soon as practicable;

   b. execute authorization to allow us to obtain copies of medical reports and records; and

   c. submit to physical examination by a physician selected by us when and as often as we reasonably require.

5. **Payment of Claim - Coverage M.** Payment under this coverage is not an admission of liability by an **insured** or us.

19

FP-7955 TX

SF - Jellison - 000798

6. **Suit Against Us.** No action shall be brought against us unless there has been compliance with the policy provisions.

No one shall have the right to join us as a party to an action against an **insured.** Further, no action with respect to Coverage L shall be brought against us until the obligation of the **insured** has been determined by final judgment or agreement signed by us.

7. **Bankruptcy of an Insured.** Bankruptcy or insolvency of an **insured** shall not relieve us of our obligation under this policy.

8. **Other Insurance - Coverage L.** This insurance is excess over any other valid and collectible insurance except insurance written specifically to cover as excess over the limits of liability that apply in this policy.

9. **Notice of Settlement of Liability Claim.**

a. We will notify the insured in writing of any initial offer to compromise or settle a claim against the **insured.** We will give the **insured** notice within 10 days after the date the offer is made.

b. We will notify the **insured** in writing of any settle-ment of a claim against the **insured.** We will give the insured notice within 30 days after the date of the settlement.

## SECTION I AND SECTION II - CONDITIONS

1. **Policy Period.** This policy applies only to loss under Section I or **bodily injury** or **property damage** under Section II which occurs during the period this policy is in effect.

2. **Concealment or Fraud.** This policy is void as to you and any other **insured,** if you or any other **insured** under this policy has intentionally concealed or misrep-resented any material fact or circumstance relating to this insurance, whether before or after a loss.

3. **Liberalization Clause.** If we adopt any revision which would broaden coverage under this policy without additional premium, within 60 days prior to or during the period this policy is in effect, the broadened cover-age will immediately apply to this policy.

4. **Waiver or Change of Policy Provisions.** A waiver or change of any provision of this policy must be in writing by us to be valid. Our request for an appraisal or exam-ination shall not waive any of our rights.

5. **Cancellation.**

a. You may cancel this policy at any time by notifying us of the date cancellation is to take effect. We will send you any refund due when the policy is returned to us.

b. We may cancel this policy for the reasons stated in this condition by mailing you notice in writing of the date cancellation takes effect.

(1) If this policy has been in effect for less than 90 days and is not a renewal policy, we may cancel for any reason.

The effective date of cancellation cannot be before:

(a) the 10th day after we mail notice if we cancel for nonpayment of premium;

(b) the 30th day after we mail notice if we cancel for any other reason.

(2) If this policy has been in effect 90 days or more, we may not cancel this policy unless:

(a) you do not pay the premium or any portion of the premium when due;

(b) the State Board of Insurance determines that continuation of the policy would violate the Texas Insurance Code or any other laws governing the business of insurance in this state;

(c) you submit a fraudulent claim;

(d) there is an increase in the hazard covered by this policy that is within your control and that would produce an increase in the pre-mium/rate of this policy.

20

FP-7955 TX

SF - Jellison - 000799

The effective date of cancellation cannot be before the 10th day after we mail the notice. Our notice of cancellation must state the reason for cancellation.

c. If we cancel, our notice to you will state that if the refund is not included with the notice, it will be returned on demand.

d. We may not cancel this policy solely because you are an elected official.

6. **Nonrenewal.**

a. We may not refuse to renew this policy because of claims for losses resulting from natural causes.

b. We may not refuse to renew this policy solely because you are an elected official.

c. We may refuse to renew this policy if you have filed three or more claims under the policy in any three year period that do not result from natural causes.

If you have filed two claims in a period of less than three years, we may notify you in writing, that if you file a third claim during the three-year period, we may refuse to renew this policy by providing you proper notice of our refusal to renew as provided in d. below. If we do not notify you after the second claim, we may not refuse to renew this policy because of losses.

A claim does not include a claim that is filed but is not paid or payable under the policy.

d. If we refuse to renew this policy, we must deliver to you, or mail to you at your mailing address shown in the **Declarations** and any mortgagee named in the **Declarations**, written notice of our refusal to renew not later than the 30th day before the date on which this policy expires. Proof of mailing will be sufficient proof of notice. If we fail to give you proper notice of our decision not to renew, you may require us to renew the policy.

7. **Assignment.** Assignment of this policy shall not be valid unless we give our written consent.

8. **Subrogation.** An **insured** may waive in writing before a loss all rights of recovery against any person. If not waived, we may require an assignment of rights of recovery for a loss to the extent that payment is made by us.

If an assignment is sought, an **insured** shall:

a. sign and deliver all related papers;

b. cooperate with us in a reasonable manner; and

c. do nothing after a loss to prejudice such rights.

Subrogation does not apply under Section II to Medical Payments to Others or Damage to Property of Others.

9. **Death.** If any person shown in the **Declarations** or the spouse, if a resident of the same household, dies:

a. we insure the legal representative of the deceased. This condition applies only with respect to the premises and property of the deceased covered under this policy at the time of death;

b. **insured** includes:

(1) any member of your household who is an **insured** at the time of your death, but only while a resident of the **residence premises**; and

(2) with respect to your property, the person having proper temporary custody of the property until appointment and qualification of a legal representative.

10. **Conformity to State Law.** When a policy provision is in conflict with the applicable law of the State in which this policy is issued, the law of the State will apply.

11. **Right to Inspect.** We have the right but are not obligated to make inspections and surveys at any time, give you reports on conditions we find and recommend changes. Any inspections, surveys, reports or recommendations relate only to insurability and the premiums to be charged.

We do not:

a. make safety inspections;

b. undertake to perform the duty of any person or organization to provide for the health or safety of workers or the public;

c. warrant that conditions are safe or healthful; or

21

FP-7955 TX

SF - Jellison - 000800

d. warrant that conditions comply with laws, regulations, codes or standards.

This condition applies not only to us but also to any rating, advisory, rate service or similar organization which makes insurance inspections, surveys, reports or recommendations.

## OPTIONAL POLICY PROVISIONS

Each Optional Policy Provision applies only as shown in the **Declarations** and is subject to all the terms, provisions, exclusions and conditions of this policy.

**Option AI - Additional Insured.** The definition of **Insured** is extended to include the person or organization shown in the **Declarations** as an Additional Insured or whose name is on file with us. Coverage is with respect to:

1. Section I - Coverage A; or

2. Section II - Coverages L and M but only with respect to the **residence premises.** This coverage does not apply to **bodily injury** to an employee arising out of or in the course of the employee's employment by the person or organization.

This option applies only with respect to the location shown in the **Declarations.**

**Option BP - Business Property.** The **COVERAGE B - PERSONAL PROPERTY, Special Limits of Liability,** item b., for property used or intended for use in a **business,** including merchandise held as samples or for sale or for delivery after sale, is changed as follows:

The $1,000 limit is replaced with the amount shown in the **Declarations** for this option.

**Option BU - Business Pursuits. SECTION II - EXCLUSIONS,** item 1.b. is modified as follows:

1. Section II coverage applies to the **business** pursuits of an **Insured** who is a:

   a. clerical office employee, salesperson, collector, messenger; or

   b. teacher (except college, university and professional athletic coaches), school principal or school administrator;

while acting within the scope of the above listed occupations.

2. However, no coverage is provided:

   a. for **bodily injury** or **property damage** arising out of a **business** owned or financially controlled by the **insured** or by a partnership of which the **insured** is a partner or member;

   b. for **bodily injury** or **property damage** arising out of the rendering of or failure to render professional services of any nature (other than teaching or school administration). This exclusion includes but is not limited to:

      (1) computer programming, architectural, engineering or industrial design services;

      (2) medical, surgical, dental or other services or treatment conducive to the health of persons or animals; and

      (3) beauty or barber services or treatment;

   c. for **bodily injury** to a fellow employee of the **insured** injured in the course of employment; or

   d. when the **insured** is a member of the faculty or teaching staff of a school or college:

      (1) for **bodily injury** or **property damage** arising out of the maintenance, use, loading or unloading of:

         (a) draft or saddle animals, including vehicles for use with them; or

         (b) aircraft, **motor vehicles,** recreational motor vehicles or watercraft, airboats, air cushions or personal watercraft which use a water jet pump powered by an

22

FP-7955 TX

SF - Jellison - 000801

internal combustion engine as the primary source of propulsion;

owned or operated, or hired by or for the **insured** or employer of the **insured** or used by the **insured** for the purpose of instruction in the use thereof; or

(2) under Coverage M for **bodily injury** to a pupil arising out of corporal punishment administered by or at the direction of the **insured**.

**Option FA - Firearms.** Firearms are insured for accidental direct physical loss or damage.

The limits for this option are shown in the **Declarations.** The first amount is the limit for any one article; the second amount is the aggregate limit for each loss.

The following additional provisions apply:

1. we do not insure for any loss to the property described in this option either consisting of, or directly and immediately caused by, one or more of the following:

    a. mechanical breakdown, wear and tear, gradual deterioration;

    b. insects or vermin;

    c. any process of refinishing, renovating, or repairing;

    d. dampness of atmosphere or extremes of temperatures;

    e. inherent defect or faulty manufacture;

    f. rust, fouling or explosion of firearms;

    g. breakage, marring, scratching, tearing or denting unless caused by fire, thieves or accidents to conveyances; or

    h. infidelity of an **insured's** employees or persons to whom the insured property may be entrusted or rented;

2. our limit for loss by any Coverage B peril except theft is the limit shown in the **Declarations** for Coverage B, plus the aggregate limit;

3. our limits for loss by theft are those shown in the **Declarations** for this option. These limits apply in lieu of the Coverage B theft limit; and

4. our limits for loss by any covered peril except those in items 2. and 3. are shown in the **Declarations.**

**Option HC - Home Computer.** The **COVERAGE B - PERSONAL PROPERTY, Special Limits of Liability,** item i., for electronic data processing system equipment and the recording or storage media used with that equipment is increased to be the amount shown in the **Declarations** for this option.

**Option ID - Increased Dwelling Limit.** We will settle losses to damaged building structures covered under **COVERAGE A - DWELLING** according to the **SECTION I - LOSS SETTLEMENT** provision shown in the **Declarations.**

If the reasonable and necessary cost to repair or replace damaged building structures exceeds the applicable limit of liability shown in the **Declarations,** we will pay the additional amounts not to exceed:

1. the Option ID limit of liability shown in the **Declarations** to repair or replace the Dwelling; or

2. 10% of the Option ID limit of liability to repair or replace building structures covered under **COVERAGE A - DWELLING, Dwelling Extension.**

**Report Increased Values.** You must notify us within 90 days of the start of any new building structure costing $5,000 or more; or any additions to or remodeling of building structures which increase their values by $5,000 or more. You must pay any additional premium due for the increased value. We will not pay more than the applicable limit of liability shown in the **Declarations,** if you fail to notify us of the increased value within 90 days.

**Option IO - Incidental Business.** The coverage provided by this option applies only to that incidental **business** occupancy on file with us.

1. **COVERAGE A - DWELLING, Dwelling Extension** item 2.b. is deleted.

2. **COVERAGE B - PERSONAL PROPERTY** is extended to include equipment, supplies and furnishings usua and incidental to this **business** occupancy. This Optional Policy Provision does not include electroni

23

FP-7955 T

SF - Jellison - 000802

data processing system equipment or the recording or storage media used with that equipment or merchandise held as samples or for sale or for delivery after sale.

The Option IO limits are shown in the **Declarations**. The first limit applies to property on the **residence premises**. The second limit applies to property while off the **residence premises**. These limits are in addition to the **COVERAGE B - PERSONAL PROPERTY, Special Limits of Liability** on property used or intended for use in a **business**.

3. Under Section II, the **residence premises** is not considered **business** property because an **insured** occupies a part of it as an incidental **business**.

4. **SECTION II - EXCLUSIONS**, item 1.b. of Coverage L and Coverage M is replaced with the following:

   b. **bodily injury** or **property damage** arising out of **business** pursuits of an **insured** or the rental or holding for rental of any part of any premises by an **insured**. This exclusion does not apply:

      (1) to activities which are ordinarily incident to non-**business** pursuits or to **business** pursuits of an **insured** which are necessary or incidental to the use of the **residence premises** as an incidental **business**;

      (2) with respect to Coverage L to the occasional or part-time **business** pursuits of an **insured** who is under 19 years of age;

      (3) to the rental or holding for rental of a residence of yours:

         (a) on an occasional basis for exclusive use as a residence;

         (b) in part, unless intended for use as a residence by more than two roomers or boarders; or

         (c) in part, as an incidental **business** or private garage;

      (4) when the dwelling on the **residence premises** is a two family dwelling and you occupy one part and rent or hold for rental the other part; or

      (5) to farm land (without buildings), rented or held for rental to others, but not to exceed a total of 500 acres, regardless of the number of locations.

5. This insurance does not apply to:

   a. **bodily injury** to an employee of an **insured** arising out of the **residence premises** as an incidental **business** other than to a **residence employee** while engaged in the employee's employment by an **insured**;

   b. **bodily injury** to a pupil arising out of corporal punishment administered by or at the direction of the **insured**;

   c. liability arising out of any acts, errors or omissions of an **insured**, or any other person for whose acts an **insured** is liable, resulting from the preparation or approval of data, plans, designs, opinions, reports, programs, specifications, supervisory inspections or engineering services in the conduct of an **insured's** incidental **business** involving data processing, computer consulting or computer programming; or

   d. any claim made or suit brought against any **insured** by:

      (1) any person who is in the care of any **insured** because of child care services provided by or at the direction of:

         (a) any **insured**;

         (b) any employee of any **insured**; or

         (c) any other person actually or apparently acting on behalf of any **insured**; or

      (2) any person who makes a claim because of **bodily injury** to any person who is in the care of any **insured** because of child care services provided by or at the direction of:

         (a) any **insured**;

         (b) any employee of any **insured**; or

         (c) any other person actually or apparently acting on behalf of any **insured**.

24

FP-7955 TX

SF - Jellison - 000803

Coverage M does not apply to any person indicated in (1) and (2) above.

This exclusion does not apply to the occasional child care services provided by any **insured**, or to the part-time child care services provided by any **insured** who is under 19 years of age.

**Option JF - Jewelry and Furs.** Jewelry, watches, fur garments and garments trimmed with fur, precious and semi-precious stones, gold other than goldware, silver other than silverware and platinum are insured for accidental direct physical loss or damage.

The limits for this option are shown in the **Declarations**. The first amount is the limit for any one article; the second amount is the aggregate limit for each loss.

The following additional provisions apply:

1. we do not insure for any loss to the property described in this option either consisting of, or directly and immediately caused by, one or more of the following:

   a. mechanical breakdown, wear and tear, gradual deterioration;

   b. insects or vermin;

   c. inherent vice; or

   d. seizure or destruction under quarantine or customs regulations;

2. our limit for loss by any Coverage B peril except theft is the limit shown in the **Declarations** for Coverage B, plus the aggregate limit;

3. our limits for loss by theft are those shown in the **Declarations** for this option; and

4. our limits for loss by any covered peril except those in items 2. and 3. are those shown in the **Declarations** for this option.

**Option OL - Building Ordinance or Law.**

1. **Coverage Provided.**

   The total limit of insurance provided by this Building Ordinance or Law provision will not exceed an amount equal to the Option OL percentage shown in the **Declarations** of the Coverage A limit shown in the **Declarations** at the time of the loss, as adjusted by the inflation

coverage provisions of the policy. This is an additional amount of insurance and applies only to the dwelling.

2. **Damaged Portions of Dwelling.**

   When the dwelling covered under **COVERAGE A - DWELLING** is damaged by a Loss Insured we will pay for the increased cost to repair or rebuild the physically damaged portion of the dwelling caused by the enforcement of a building, zoning or land use ordinance or law if the enforcement is directly caused by the same Loss Insured and the requirement is in effect at the time the Loss Insured occurs.

3. **Undamaged Portions of Damaged Dwelling.**

   When the dwelling covered under **COVERAGE A - DWELLING** is damaged by a Loss Insured we will also pay for:

   a. the cost to demolish and clear the site of the undamaged portions of the dwelling caused by the enforcement of a building, zoning or land use ordinance or law if the enforcement is directly caused by the same Loss Insured and the requirement is in effect at the time the Loss Insured occurs; and

   b. loss to the undamaged portion of the dwelling caused by enforcement of any ordinance or law if:

      (1) the enforcement is directly caused by the same Loss Insured;

      (2) the enforcement requires the demolition of portions of the same dwelling not damaged by the same Loss Insured;

      (3) the ordinance or law regulates the construction or repair of the dwelling, or establishes zoning or land use requirements at the described premises; and

      (4) the ordinance or law is in force at the time of the occurrence of the same Loss Insured; or

   c. the legally required changes to the undamaged portion of the dwelling caused by the enforcement of a building, zoning or land use ordinance or law if the enforcement is directly caused by the same Loss Insured and the requirement is in effect at the time the Loss Insured occurs,

25

FP-7955 T

SF - Jellison - 000804

**4. Building Ordinance or Law Coverage Limitations.**

We will not pay more under this coverage than:

a. the reasonable and necessary increased cost to repair or rebuild the dwelling at the same premises, or if relocation is required by ordinance or law, at another premises in the same general vicinity; and

b. the reasonable and necessary cost to demolish and clear the site of the undamaged portions of the dwelling caused by enforcement of building, zoning or land use ordinance or law.

We will never pay for more than a dwelling of the same height, floor area and style on the same or similar pre-

mises as the dwelling, subject to the limit provided in paragraph 1. **Coverage Provided** of this option.

If the dwelling is located in an area which is eligible for coverage through the Texas Windstorm Insurance Association, the coverage described above, also applies to the increased cost you incur due to repair, replacement or demolition required for the dwelling to comply with the building specifications contained in the Texas Windstorm Insurance Association's plan of operation.

**Option SG - Silverware and Goldware Theft.** The **COVERAGE B - PERSONAL PROPERTY, Special Limits of Liability,** item h., for theft of silverware and goldware is increased to be the amount shown in the **Declarations** for this option.

**SERVICE OF PROCESS** - Service of Process may be had upon the State Official duly designated for such purpose in the state in which the property insured hereunder is located if State Farm Lloyds, Inc. is licensed in such state; or upon the duly appointed Attorney-in-Fact for State Farm Lloyds, Inc. at Dallas, Texas. Underwriters at State Farm Lloyds, Inc. have complied with the laws of the State of Texas regulating Lloyds plan insurance and said statutes are hereby made a part of the policy. The entire assets of State Farm Lloyds, Inc. supports its policies, but each individual underwriter's liability is several and not joint and is limited by law to the amount fixed by his/her underwriter's contract and subscription and no underwriter is liable as a partner. This policy is made and accepted subject to the foregoing stipulations and conditions together with such other provisions, agreements or conditions as may be endorsed hereon or added hereto, and no agent or other representative of State Farm Lloyds, Inc. shall have the power to waive any provision or condition of this policy. This policy is non-assessable and no contingent liability of any kind and character attaches to the insured named herein.

IN WITNESS WHEREOF, the Company has executed and attested these presents.

State Farm Lloyds

By:

*Michael P. Wiss*

Secretary
State Farm Lloyds, Inc.
Attorney-in-Fact

*Phillip H. Hawkins*

President
State Farm Lloyds, Inc.
Attorney-in-Fact

26

FP-7955 TX

SF - Jellison - 000805

FE-5398

# FUNGUS (INCLUDING MOLD) EXCLUSION ENDORSEMENT

**DEFINITIONS**

The following definition is added:

"**fungus**" means any type or form of **fungus**, including mold, mildew, mycotoxins, spores, scents or byproducts produced or released by fungi.

**SECTION I - LOSSES INSURED**

Item 12.d. is replaced with the following:

d. caused by or resulting from continuous or repeated seepage or leakage of water or steam which occurs over a period of time and results in deterioration, corrosion, rust, or wet or dry rot.

Item 13.b. is replaced with the following:

b. caused by or resulting from continuous or repeated seepage or leakage of water or steam which occurs over a period of time and results in deterioration, corrosion, rust, or wet or dry rot.

**SECTION I - LOSSES NOT INSURED**

Item 1.i. is replaced with the following:

i. wet or dry rot;

FE-5398

In item 2., the following is added as item g.:

g. **Fungus**. We also do not cover:

(1) any loss of use or delay in rebuilding, repairing or replacing covered property, including any associated cost or expense, due to interference at the **residence premises** or location of the rebuilding, repair or replacement, by **fungus**;

(2) any remediation of **fungus**, including the cost to:

(a) remove the **fungus** from covered property or to repair, restore or replace that property; or

(b) tear out and replace any part of the building or other property as needed to gain access to the **fungus**; or

(3) the cost of any testing or monitoring of air or property to confirm the type, absence, presence or level of **fungus**, whether performed prior to, during or after removal, repair, restoration or replacement of covered property.

All other policy provisions apply.

SF - Jellison - 000806

FE-5258
(8/96)

## SPECIAL LIMITS ENDORSEMENT

**SECTION I - COVERAGES, COVERAGE B - PERSONAL PROPERTY**

**Special Limits of Liability**

1. Item a. is changed to read:

   a. $200 on money, coins and medals, including any of these that are a part of a collection, bank notes, bullion, gold other than goldware, silver other than silverware, and platinum.

2. The following item is added:

   $1,000 for loss by theft of jewelry, watches, fur garments and garments trimmed with fur, precious and semi-precious stones.

All other policy provisions apply.

FE-5258
(8/96)

SF - Jellison - 000807

FE-5368.1
Page 1 of 1

# DWELLING FOUNDATION ENDORSEMENT

## SECTION I - ADDITIONAL COVERAGES

The following is added:

**Dwelling Foundation Coverage.** We cover loss caused by and consisting of settling, cracking, shrinking, bulging, or expansion of the foundation, floor slab or footings that support the dwelling caused by seepage or leakage of water or steam from within a plumbing, heating, air conditioning or automatic fire protective sprinkler system.

This coverage includes the cost of tearing out and replacing any part of the building necessary to repair the system from which the leakage or seepage occurred.

We do not cover loss to the system from which the water or steam escaped.

**Limit of Liability.** Our limit of liability for this coverage will not exceed an amount equal to 15% of the COVERAGE A - DWELLING limit applicable on the date of the loss.

## SECTION I - LOSSES NOT INSURED

The following revisions are made for the purposes of this endorsement only.

Item 1.f. is replaced with the following:

f.  except as specifically provided by this endorsement, continuous or repeated seepage or leakage of water or steam from a:

FE-5368.1

(1)  heating, air conditioning or automatic fire protective sprinkler system;

(2)  household appliance; or

(3)  plumbing system, including from, within or around any shower stall, shower bath, tub installation, or other plumbing fixture, including their walls, ceilings or floors;

which occurs over a period of time. If loss to covered property is caused by water or steam not otherwise excluded, we will cover the cost of tearing out and replacing any part of the building necessary to repair the system or appliance. We do not cover loss to the system or appliance from which the water or steam escaped;

Item 1.l. is replaced with the following:

l.  except as specifically provided by this endorsement, settling, cracking, shrinking, bulging, or expansion of pavements, patios, walls, floors, roofs or ceilings;

Except as stated in this endorsement we do not provide coverage for any loss described in SECTION I - LOSSES NOT INSURED.

All other policy provisions apply.

SF - Jellison - 000808

FE-5369.1

# WATER DAMAGE ENDORSEMENT

## DEFINITIONS

The following definition is added:

"**fungus**" means any type or form of **fungus**, including mold, mildew, mycotoxins, spores, scents or byproducts produced or released by fungi.

## SECTION I - ADDITIONAL COVERAGES

The following is added:

**Water Damage Coverage.**

1. We cover the deterioration, wet rot or dry rot of property described in Coverage A and Coverage B caused by the continuous or repeated seepage or leakage of water or steam from a:

   a. heating, air conditioning or automatic fire protective sprinkler system;

   b. household appliance; or

   c. plumbing system, including from, within or around any shower stall, shower bath, tub installation, or other plumbing fixture, including their walls, ceilings or floors.

   This coverage includes the cost of tearing out and replacing any part of the building necessary to repair the system or appliance from which seepage or leakage occurred.

2. We do not cover:

   a. loss to the system or appliance from which the water or steam escaped;

   b. loss caused by, consisting of, or resulting from **fungus**; or

   c. **fungus** which is the result of continuous or repeated seepage or leakage of water or steam from a:

      (1) heating, air conditioning or automatic fire protective sprinkler system;

      (2) household appliance; or

      (3) plumbing system, including from, within, or around any shower stall, shower bath, tub installation, or other plumbing fixture, including their walls, ceilings or floors.

## SECTION I - LOSSES INSURED

## COVERAGE B - PERSONAL PROPERTY

The following revisions are made for the purpose of this endorsement only.

Item 12. is replaced with the following:

12. **Sudden and accidental discharge or overflow** of water or steam from within a plumbing, heating, air conditioning or automatic fire protective sprinkler system, or from within a household appliance.

   Except as specifically provided by this endorsement, this peril does not include loss:

   a. to the system or appliance from which the water or steam escaped;

   b. caused by or resulting from freezing;

   c. caused by or resulting from water or sewage from outside the **residence premises** plumbing system that enters through sewers or drains, or water which enters into and overflows from within a sump pump, sump pump well or any other system designed to remove subsurface water which is drained from the foundation area; or

   d. caused by or resulting from continuous or repeated seepage or leakage of water or steam which occurs over a period of time and results in deterioration, corrosion, rust, or wet or dry rot.

Item 13. is replaced with the following:

13. **Sudden and accidental tearing asunder, cracking, burning or bulging** of a steam or hot water heating system, an air conditioning or automatic fire protective sprinkler system, or an appliance for heating water.

   Except as specifically provided by this endorsement, this peril does not include loss:

   a. caused by or resulting from freezing; or

   b. caused by or resulting from continuous or repeated seepage or leakage of water or steam which occurs over a period of time and results in deterioration, corrosion, rust, or wet or dry rot.

## SECTION I - LOSSES NOT INSURED

The following revisions are made for the purposes of this endorsement only.

Item 1.f. is replaced with the following:

f. except as specifically provided by this endorsement, continuous or repeated seepage or leakage of water or steam from a:

   (1) heating, air conditioning or automatic fire protective sprinkler system;

   (2) household appliance; or

   (3) plumbing system, including from, within or around any shower stall, shower bath, tub installation, or

(CONTINUED)

SF - Jellison - 000809

other plumbing fixture, including their walls, ceilings or floors;

which occurs over a period of time. If loss to covered property is caused by water or steam not otherwise excluded, we will cover the cost of tearing out and replacing any part of the building necessary to repair the system or appliance. We do not cover loss to the system or appliance from which the water or steam escaped;

Item 1.g. is replaced with the following:

FE-5369.1

g. wear, tear, marring, scratching, inherent vice, latent defect or mechanical breakdown;

Item 1.i. is deleted.

Item 1.l. is replaced with the following:

l. settling, cracking, shrinking, bulging, or expansion of pavements, patios or foundations;

Except as stated in this endorsement we do not provide coverage for any loss described in **SECTION I - LOSSES NOT INSURED.**

All other policy provisions apply.

SF - Jellison - 000810

# FE-3533 HOMEOWNERS POLICY ENDORSEMENT (Texas)

## DEFINITIONS

Definitions 8. and 9. are replaced by the following:

8. **"motor vehicle"**, when used in Section II of this policy, means:

   a. a land motor vehicle designed for travel on public roads or subject to motor vehicle registration;

   b. a trailer or semi-trailer designed for travel on public roads and subject to motor vehicle registration;

   c. a "recreational vehicle" while off an **insured location**. "Recreational vehicle" means a motorized vehicle designed for recreation principally off public roads that is owned or leased by an **insured**. This includes, but is not limited to, a motorized all terrain vehicle, amphibious vehicle, dune buggy, go-cart, golf cart, snowmobile, trailbike, minibike and personal assistive mobility device. "Leased" does not include temporary rental;

   d. a "locomotive" while off an **insured location**. "Locomotive" means a self-propelled vehicle for pulling or pushing freight or passenger cars on tracks that is large enough to carry a person and is owned or leased by an **insured**. "Leased" does not include temporary rental;

   e. a bulldozer, track loader, backhoe, high-hoe, trencher, grader, crane, self-propelled scraper, excavator, pipe-layer, cherry picker, telehandler, logging vehicle, mining vehicle or road building vehicle that is owned or leased by an **insured** while off an **insured location**. "Leased" does not include temporary rental; and

   f. any vehicle while being towed or pushed by or carried on a vehicle included in a., b., c., d. or e.

   The following are not **motor vehicles**:

   a. a boat, camp, home or utility trailer not being towed or pushed by or carried on a vehicle included in a., b., c., d. or e. above;

   b. a motorized land vehicle in dead storage on an **insured location**;

   c. a motorized golf cart while used for golfing purposes;

   d. a motorized vehicle or trailer designed to assist the handicapped that is not designed for travel on public roads or subject to motor vehicle registration; or

   e. a commercially manufactured 2, 3 or 4 wheeled personal conveyance powered only by or assisted by an unmodified motor or engine with a manufacturer's power rating of no more than 1 horsepower and capable of a top speed of no more than 20 miles per hour.

9. **"occurrence"**, when used in Section II of this policy, means an accident, including exposure to conditions, which first results in:

   a. **bodily injury**; or

   b. **property damage**;

   during the policy period. All **bodily injury** and **property damage** resulting from one accident, series of related accidents or from continuous and repeated exposure to the same general conditions is considered to be one **occurrence**.

Definition 13. is added:

13. **"State Farm Companies"** means one or more of the following:

   a. State Farm Mutual Automobile Insurance Company;

   b. State Farm Fire and Casualty Company; and

   c. subsidiaries or affiliates of either a. or b. above.

## SECTION I – COVERAGES

## COVERAGE A – DWELLING

Item 2., **Dwelling Extension**, is replaced by the following:

2. **Dwelling Extension.** We cover other structures on the **residence premises**, separated from the dwelling by clear space. Structures connected to the dwelling by only a fence, utility line, or similar connection are considered to be other structures.

   We do not cover other structures:

   a. not permanently attached to or otherwise forming a part of the realty;

   b. used in whole or in part for **business** purposes unless such use consists solely of use of office space for paperwork, computer work or use of a telephone, and consists solely of activities that are:

      (1) duties of the **insured's** employment by another; and

      (2) performed solely by the **insured**; or

   c. rented or held for rental to a person not a tenant of the dwelling, unless used solely as a private garage.

©, Copyright, State Farm Mutual Automobile Insurance Company, 2012
CONTINUED

SF - Jellison - 000811

The following item is added to item 3. **Property Not Covered:**

d.   lawns or artificial grass, except as provided in SECTION I – ADDITIONAL COVERAGES.

**COVERAGE B – PERSONAL PROPERTY**

**Special Limits of Liability** is replaced by the following:

**Special Limits of Liability.** These limits do not increase the Coverage B limit. The special limit for each of the following categories is the total limit for each loss for all property in that category:

a.   $200 on money, coins and medals, including any of these that are a part of a collection, and bank notes;

b.   $1,500 on property used or intended for use in a **business**, including merchandise held as samples or for sale or for delivery after sale, while on the **residence premises**. This coverage is limited to $750 on such property away from the **residence premises**.

Electronic data processing system equipment or the recording or storage media used with that equipment is not included under this coverage;

c.   $1,000 on securities, checks, cashiers checks, travelers checks, money orders, gift certificates, gift cards, rechargeable debit cards, phone cards and other negotiable instruments, accounts, deeds, evidences of debt, letters of credit, notes other than bank notes, manuscripts, passports and tickets;

d.   $1,500 on watercraft of all types and outboard motors, including their trailers, furnishings and equipment;

e.   $1,500 on trailers not used with watercraft;

f.   $2,500 on stamps, trading cards and comic books, including any of these that are a part of a collection;

g.   $2,500 for loss by theft of firearms;

h.   $2,500 for loss by theft of silverware and goldware;

i.   $5,000 on electronic data processing system equipment, including but not limited to mobile personal communication equipment, global positioning systems, mobile personal electronic devices used for the reproduction of sound, and standard media or non-media equipment for use with the above devices;

j.   $5,000 on any one article and $10,000 in the aggregate for loss by theft of any rug, carpet (except wall-to-wall carpet), tapestry, wall-hanging or other similar article; and

k.   $500 on commercially manufactured 2, 3 or 4 wheeled personal conveyances powered only by or assisted by an unmodified motor or engine with a manufacturer's power rating of no more than 1 horsepower and capable of a top speed of no more

than 20 miles per hour. This does not include those not licensed for use on public highways which are designed for assisting the handicapped.

Item 2., **Property Not Covered**, is replaced by the following:

2.   **Property Not Covered. We** do not cover:

a.   articles separately described and specifically insured in this or any other insurance;

b.   animals, birds or fish;

c.   any engine or motor-propelled vehicle or machine, including the parts, designed for movement on land, except as provided in **Special Limits of Liability**, item k. We do cover those not licensed for use on public highways which are:

(1)   used solely to service the **insured location**; or

(2)   designed for assisting the handicapped;

d.   devices or instruments for the recording or reproduction of video or sound permanently attached to an engine or motor-propelled vehicle. We do not cover tapes, discs, wires, videos or other media that may be used with these devices or instruments while in the vehicle;

e.   aircraft and parts, except model or hobby aircraft not used or designed to carry people or cargo;

f.   property of roomers, boarders, tenants and other residents not related to an **insured**. We do cover property of roomers, boarders and other residents related to an **insured**;

g.   property regularly rented or held for rental to others by an **insured**. This exclusion does not apply to property of an **insured** in a sleeping room rented to others by an **insured**;

h.   property rented or held for rental to others away from the **residence premises**;

i.   any radio devices or transmitters, global positioning systems, radar or laser detectors, antennas and all other similar equipment permanently attached to an engine or motor-propelled vehicle;

j.   books or records of accounts receivable, abstracts or other journals, architectural or technical drawings, card index systems or other records. This exclusion does not apply to any recording or storage media for electronic data processing. We will cover the cost of blank books, cards or other blank material plus the cost of labor you incur for transcribing or copying such records;

©, Copyright, State Farm Mutual Automobile Insurance Company, 2012
CONTINUED

SF - Jellison - 000812

k.   recording or storage media for electronic data processing that cannot be replaced with other of like kind and quality on the current retail market;

l.   purchased or created data, sound or video that cannot be replaced with like kind and quality on the current retail market which is transferred or downloaded onto mobile communication equipment, global positioning systems or electronic devices used for the reproduction of video or sound;

m.   contraband, or any property used in the course of illegal consumption, possession, import, export or trade; or

n.   outdoor hardscape property used for aesthetic purposes except as provided in SECTION I – ADDITIONAL COVERAGES.

## COVERAGE C – LOSS OF USE

Item 3., **Prohibited Use**, is replaced by the following:

3.   **Prohibited Use.**   We cover Additional Living Expense and Fair Rental Value, for a continuous period not to exceed two weeks, beginning when a civil authority issues an order of evacuation or prohibits your use of the **residence premises**, provided that:

a.   direct physical damage occurs to any property, other than covered property located on the **residence premises**, arising from a cause of loss that would be a Loss Insured under this policy if the damage had occurred to property on the **residence premises**;

b.   the **residence premises** is within one mile of property damaged by a cause of loss identified in 3.a. above; and

c.   the action of the civil authority is taken in response to:

(1)   dangerous physical conditions resulting from the continuation of the cause of loss identified in 3.a. above;

(2)   dangerous physical conditions resulting from the damage caused by the cause of loss identified in 3.a. above; or

(3)   the need to gain free access to property damaged by the cause of loss identified in 3.a. above.

We do not cover loss or expense due to cancellation of a lease or agreement.

## SECTION I – ADDITIONAL COVERAGES

Items 1., 3. and 10. are replaced by the following:

1.   **Debris Removal.**   We will pay the reasonable expenses you incur in the removal of debris of covered property damaged by a Loss Insured. This expense is included in the limit applying to the damaged property. The following coverages and limits also apply:

a.   When the amount payable for the property damage plus the debris removal exceeds the limit for damaged property, an additional 5% of that limit is available for debris removal expense.   This additional amount of insurance does not apply to Additional Coverage, item 3. **Trees, Shrubs and Landscaping.**

b.   We will also pay up to $500 in the aggregate for each loss to cover the reasonable expenses you incur in the removal of tree debris from the **residence premises**, unless otherwise excluded. This coverage applies when:

(1)   the tree has caused a Loss Insured to Coverage A property;  or

(2)   the tree debris felled by windstorm, hail, or weight of snow or ice blocks:

(a)   the driveway, on the **residence premises**, and prevents land motor vehicle access to or from the dwelling; or

(b)   a ramp designed to assist the handicapped, on the **residence premises** and prevents access to or from the dwelling.

3.   **Trees, Shrubs and Landscaping.** We cover outdoor:

a.   trees, shrubs, live or artificial plants, and lawns;

b.   artificial grass; and

c.   hardscape property used for aesthetic purposes not permanently affixed to realty;

on the **residence premises**, for direct loss caused by the following: Fire or lightning, Explosion, Riot or civil commotion, Aircraft, Vehicles (not owned or operated by a resident of the **residence premises**), Vandalism or malicious mischief or Theft.

The limit for this coverage, including the removal of debris, shall not exceed 5% of the amount shown in the **Declarations** for COVERAGE A – DWELLING. We will not pay more than $750 for any one outdoor tree, shrub, plant or hardscape item, including debris removal expense. This coverage may increase the limit otherwise applicable. We do not cover property grown for **business** purposes.

10.   **Collapse.** We insure only for direct physical loss to covered property involving the sudden, entire collapse of a building or any part of a building.

Collapse means actually fallen down or fallen into pieces. It does not include settling, cracking, shrinking, bulging, expansion, sagging or bowing.

©, Copyright, State Farm Mutual Automobile Insurance Company, 2012
CONTINUED

SF - Jellison - 000813

The collapse must be directly and immediately caused only by one or more of the following:

a. perils described in SECTION I – LOSSES IN-SURED, COVERAGE B – PERSONAL PROPERTY. These perils apply to covered building and personal property for loss insured by this Additional Coverage;

b. decay, deterioration, insect damage or vermin damage, all that are hidden from view, of a:

(1) connector; or

(2) structural member of a building;

unless the presence of such damage is known to an insured prior to collapse;

c. weight of contents, equipment, animals or people;

d. weight of ice, snow, sleet or rain which collects on a roof, porch or deck; or

e. use of defective material or methods in the construction (includes remodeling or renovation) of the building, if the collapse occurs during the course of the construction of the building.

Loss to an awning, fence, patio, pavement, swimming pool, underground pipe, flue, drain, cesspool, septic tank, foundation, retaining wall, bulkhead, pier, wharf, dock, trellis or antenna or its supporting structure is not included under items b., c., d. and e. unless the loss is the direct and immediate cause of the collapse of the building.

This coverage does not increase the limit applying to the damaged property.

## SECTION I – LOSSES INSURED

## COVERAGE B – PERSONAL PROPERTY

Items 9.b.(3)(c), and 15. are replaced by the following:

9. b. (3) (c) of securities, checks, cashiers checks, travelers checks, money orders, gift certificates, gift cards, rechargeable debit cards, phone cards and other negotiable instruments, accounts, deeds, evidences of debt, letters of credit, notes other than bank notes, manuscripts, passports and tickets;

15. **Sudden and accidental damage** to electrical appliances, devices, fixtures and wiring from an increase or decrease of artificially generated electrical current. We will pay up to $1,500 under this peril for each damaged item described above.

## SECTION I – LOSSES NOT INSURED

Item 2.c. is replaced by the following:

2. c. **Water**, meaning:

(1) flood, surface water, waves (including tidal wave, tsunami, and seiche), tides, tidal water, overflow of any body of water, or spray or surge from any of these, all whether driven by wind or not;

(2) water or sewage from outside the **residence premises** plumbing system that enters through sewers or drains, or water which enters into and overflows from within a sump pump, sump pump well or any other system designed to remove subsurface water which is drained from the foundation area;

(3) water below the surface of the ground, including water which exerts pressure on, or seeps or leaks through a building, sidewalk, driveway, foundation, swimming pool or other structure; or

(4) material carried or otherwise moved by any of the water, as described in paragraphs (1) through (3) above.

However, we do insure for any direct loss by fire, explosion or theft resulting from water, provided the resulting loss is itself a Loss Insured.

## SECTION I – LOSS SETTLEMENT

## COVERAGE A – DWELLING

Items 1. and 2. are replaced by the following:

1. **A1 – Replacement Cost Loss Settlement – Similar Construction.**

a. We will pay the cost to repair or replace with similar construction and for the same use on the premises shown in the **Declarations**, the damaged part of the property covered under SECTION I – COVERAGES, COVERAGE A – DWELLING, except for wood fences, subject to the following:

(1) until actual repair or replacement is completed, we will pay only the actual cash value at the time of the loss of the damaged part of the property, up to the applicable limit of liability shown in the **Declarations**, not to exceed the cost to repair or replace the damaged part of the property;

(2) when the repair or replacement is actually completed, we will pay the covered additional amount you actually and necessarily spend to repair or replace the damaged part of the property, or an amount up to the applicable limit of liability shown in the **Declarations**, whichever is less;

©, Copyright, State Farm Mutual Automobile Insurance Company, 2012
CONTINUED

(3) to receive any additional payments on a replacement cost basis, you must complete the actual repair or replacement of the damaged part of the property within two years after the date of loss, and notify us within 30 days after the work has been completed; and

(4) we will not pay for increased costs resulting from enforcement of any ordinance or law regulating the construction, repair or demolition of a building or other structure, except as provided under **Option OL – Building Ordinance or Law Coverage**.

b. Wood Fences: We will pay the actual cash value at the time of loss for loss or damage to wood fences, not to exceed the limit of liability shown in the **Declarations** for COVERAGE A – DWELLING EXTENSION.

2. **A2 – Replacement Cost Loss Settlement – Common Construction.**

a. We will pay the cost to repair or replace with common construction and for the same use on the premises shown in the **Declarations**, the damaged part of the property covered under SECTION I – COVERAGES, COVERAGE A – DWELLING, except for wood fences, subject to the following:

(1) we will pay only for repair or replacement of the damaged part of the property with common construction techniques and materials commonly used by the building trades in standard new construction. We will not pay the cost to repair or replace obsolete, antique or custom construction with like kind and quality;

(2) until actual repair or replacement is completed, we will pay only the actual cash value at the time of the loss of the damaged part of the property, up to the applicable limit of liability shown in the **Declarations**, not to exceed the cost to repair or replace the damaged part of the property as described in a.(1) above;

(3) when the repair or replacement is actually completed as described in a.(1) above, we will pay the covered additional amount you actually and necessarily spend to repair or replace the damaged part of the property, or an amount up to the applicable limit of liability shown in the **Declarations**, whichever is less;

(4) to receive any additional payments on a replacement cost basis, you must complete

the actual repair or replacement of the damaged part of the property within two years after the date of loss, and notify us within 30 days after the work has been completed; and

(5) we will not pay for increased costs resulting from enforcement of any ordinance or law regulating the construction, repair or demolition of a building or other structure, except as provided under **Option OL – Building Ordinance or Law Coverage**.

b. Wood Fences: We will pay the actual cash value at the time of loss for loss or damage to wood fences, not to exceed the limit of liability shown in the **Declarations** for COVERAGE A – DWELLING EXTENSION.

**SECTION I – CONDITIONS**

Item 1., **Insurable Interest and Limit of Liability**, is replaced by the following:

1. **Insurable Interest and Limit of Liability.** Even if more than one person has an insurable interest in the property covered, we will not be liable:

a. to the **insured** for an amount greater than the **insured's** interest; or

b. for more than the applicable limit of liability.

**Fire Insurance: Total Loss Of Real Property.** A fire insurance policy, in case of a total loss by fire of property insured, shall be held and considered to be a liquidated demand against the company for the full amount of such policy. This subsection does not apply to personal property.

The following is added to item 2., **Your Duties After Loss:**

f. if the loss is caused by windstorm or hail in the catastrophe area as defined under Texas law, you must file a claim with us not later than one year after the date of the loss that is the subject of the claim unless you show good cause for not filing the claim within this time period.

Item 6., **Suit Against Us**, is replaced by the following:

6. **Suit Against Us.** No suit or action can be brought unless:

a. there has been compliance with the policy provisions; and

b. except as provided in item c. below, suit or action brought against us is started within two years and one day after the cause of action accrues;

c. with respect to a loss caused by windstorm or hail in the catastrophe area as defined under Texas law, suit or action brought against us is started within the earlier of:

©, Copyright, State Farm Mutual Automobile Insurance Company, 2012
CONTINUED

(1) two years from the date we accept or reject the claim; or

(2) three years from the date of the loss that is the subject of the claim.

## SECTION II – LIABILITY COVERAGES

## SECTION II – ADDITIONAL COVERAGES

Items 1.a., 1.c. and 1.d. are replaced by the following:

1. **Claim Expenses.** We pay:

   a. expenses we incur and costs taxed against an **insured** we defend. Taxed costs do not include attorney fees;

   c. reasonable expenses an **insured** incurs at our request. This includes actual loss of earnings (but not loss of other income) up to $200 per day for aiding us in the investigation or defense of claims or suits;

   d. interest the **insured** is legally liable to pay on damages payable under Coverage L above before a judgment, but only the interest on the lesser of:

      (1) that part of the damages we pay; or

      (2) the Coverage L limit; and

## SECTION II – CONDITIONS

Item 1., Limit of Liability, is replaced by the following:

1. **Limit of Liability.** The Coverage L limit is shown in the **Declarations**. This is the limit for all damages from each **occurrence** for the policy period in which the **bodily injury** or **property damage** first occurs, regardless of the number of **insureds**, claims made or persons injured. No additional limits or coverage will be available for the **occurrence** under any additional policy periods while this policy remains in force.

   The Coverage M limit is shown in the **Declarations**. This is our limit for all medical expense for **bodily injury** to one person as the result of one accident.

The following condition is added to item 4., **Duties of an Injured Person – Coverage M:**

   d. the injured person, or, when appropriate, someone acting on behalf of that person, shall:

      (1) provide us with any required authorizations we need to obtain information reasonably related to the injury(ies) listed in the claim; and

      (2) submit to us all information reasonably related to the injury(ies) listed in the claim that we need to comply with state or federal law.

## SECTION I AND SECTION II – CONDITIONS

Item 11., **Right to Inspect**, is replaced by the following:

11. **Right to Inspect.** We have the right but are not obligated to perform the following:

    a. make inspections and surveys of the **insured location** at any time;

    b. provide you with reports on conditions we find; or

    c. recommend changes.

    Any inspections, surveys, reports or recommendations relate only to insurability and the premiums to be charged.

    We do not:

    a. make safety inspections;

    b. undertake to perform the duty of any person or organization to provide for the health or safety of workers or the public;

    c. warrant that conditions are safe or healthful; or

    d. warrant that conditions comply with laws, regulations, codes or standards.

    This condition applies not only to us but also to any rating, advisory, rate service or similar organization which makes insurance inspections, surveys, reports or recommendations on our behalf.

The following conditions are added:

12. **Premium.**

    a. Unless as otherwise provided by an alternative payment plan in effect with the **State Farm Companies** with respect to the premium for this policy, the premium is due and payable in full on or before the first day of the policy period shown in the most recently issued **Declarations**.

    b. The renewal premium for this policy will be based upon the rates in effect, the coverages carried, the applicable limits, deductibles and other elements that affect the premium applicable at the time of renewal.

    c. The premium for this policy may vary based upon:

       (1) the purchase of other products or services from the **State Farm Companies**;

       (2) the purchase of products or services from an organization that has entered into an agreement or contract with the **State Farm Companies**. The **State Farm Companies** do not warrant the merchantability, fitness, or quality of any product or service offered or provided by that organization; or

       (3) an agreement, concerning the insurance provided by this policy, that the **State**

©, Copyright, State Farm Mutual Automobile Insurance Company, 2012
CONTINUED

Farm Companies has with an organization of which you are a member, employee, subscriber, licensee, or franchisee.

d. Your purchase of this policy may allow:

(1) you to purchase or obtain certain coverages, coverage options, coverage deductibles, coverage limits, or coverage terms on other products from the State Farm Companies, subject to their applicable eligibility rules; or

(2) the premium or price for other products or services purchased by you, including non-insurance products or services, to vary. Such other products or services must be provided by the State Farm Companies or by an organization that has entered into an agreement or contract with the State Farm Companies. The State Farm Companies do not warrant the merchantability, fitness or quality of any product or service offered or provided by that organization.

13. **Change of Policy Address.** We may change the named insured's policy address as shown in the Declarations and in our records to the most recent address provided to us by:

a. you; or

b. the United States Postal Service.

## OPTIONAL POLICY PROVISIONS

**Option BP – Business Property** is replaced by the following:

**Option BP – Business Property. The COVERAGE B – PERSONAL PROPERTY, Special Limits of Liability,** item b., for property used or intended for use in a **business,** including merchandise held as samples or for sale or for delivery after sale, is changed as follows:

The $1,500 limit is replaced with the amount shown in the **Declarations** for this option.

**Option HC – Home Computer** is replaced by the following:

**Option HC – Home Computer. The COVERAGE B – PERSONAL PROPERTY, Special Limits of Liability,** item i., is increased to be the amount shown in the **Declarations** for this option.

**Option ID – Increased Dwelling Limit** is replaced by the following:

**Option ID – Increased Dwelling Limit.** We will settle losses to damaged building structures covered under **COVERAGE A - DWELLING** according to the **SECTION I - LOSS SETTLEMENT** provision shown in the **Declarations.**

If the amount you actually and necessarily spend to repair or replace damaged building structures exceeds the applicable limit of liability shown in the **Declarations,** we will pay the additional amounts not to exceed:

1. the Option ID limit of liability shown in the **Declarations** to repair or replace the Dwelling; or

2. 10% of the Option ID limit of liability to repair or replace building structures covered under **COVERAGE A - DWELLING, Dwelling Extension.**

**Report Increased Values.** You must notify us within 90 days of the start of any new building structure costing $5,000 or more; or any additions to or remodeling of building structures which increase their values by $5,000 or more. You must pay any additional premium due for the increased value. We will not pay more than the applicable limit of liability shown in the **Declarations,** if you fail to notify us of the increased value within 90 days.

**Option OL – Building Ordinance or Law.**

Item 3.c. is replaced by the following:

c. legally required changes to the undamaged portions of any specific dwelling features, dwelling systems or dwelling components caused by the enforcement of a building, zoning or land use ordinance or law, if:

(1) the enforcement is directly caused by the same Loss Insured; and

(2) the requirement is in effect at the time the Loss Insured occurs.

We will not pay for legally required changes to specific dwelling features, dwelling systems or dwelling components that have not been physically damaged by the Loss Insured.

Item 4. is replaced by the following:

4. **Building Ordinance or Law Coverage Limitations.**

a. We will not pay for any increased cost of construction under this coverage:

(1) until the dwelling is actually repaired or replaced at the same or another premises in the same general vicinity; and

(2) unless the repairs or replacement are made as soon as reasonably possible after the loss, not to exceed two years.

b. We will not pay more for loss to the undamaged portion of the dwelling caused by the enforcement of any ordinance or law than:

(1) the depreciated value of the undamaged portion of the dwelling, if the dwelling is not repaired or replaced;

(2) the amount you actually spend to replace the undamaged portion of the dwelling if the dwelling is repaired or replaced.

©, Copyright, State Farm Mutual Automobile Insurance Company, 2012
CONTINUED

SF - Jellison - 000817

c.  We will not pay more under this coverage than the amount you actually spend:

   (1) for the increased cost to repair or rebuild the dwelling at the same or another premises in the same general vicinity if relocation is required by ordinance or law; and

   (2) to demolish and clear the site of the undamaged portions of the dwelling caused by enforcement of building, zoning or land use ordinance or law.

We will never pay for more than a dwelling of the same height, floor area and style on the same or similar premises as the dwelling, subject to the limit provided in paragraph 1. **Coverage Provided** of this option.

If the dwelling is located in an area which is eligible for coverage through the Texas Windstorm Insurance Association, the coverage described above, also applies to the increased cost you incur due to repair, replacement or demolition required for the dwelling to comply with the building specifications contained in the Texas Windstorm Insurance Association's plan of operation.

The SERVICE OF PROCESS provision, which follows the **OPTIONAL POLICY PROVISIONS** section of the policy, is replaced by the following:

SERVICE OF PROCESS - Service of Process may be had upon the State Official duly designated for such purpose in the state in which the property insured hereunder is located if State Farm Lloyds is licensed in such state; or upon the Commissioner of Insurance of the State of Texas; or upon the duly appointed Attorney-in-Fact for State Farm Lloyds at Dallas, Texas. Underwriters at State Farm Lloyds have complied with the laws of the State of Texas regulating Lloyds plan insurance and said statutes are hereby made a part of the policy. The entire assets of State Farm Lloyds supports its policies, but each individual underwriter's liability is several and not joint and is limited by law to the amount fixed by his/her underwriter's contract and subscription and no underwriter is liable as a partner. This policy is made and accepted subject to the foregoing stipulations and conditions together with such other provisions, agreements or conditions as may be endorsed hereon or added hereto, and no agent or other representative of State Farm Lloyds shall have the power to waive any provision or condition of this policy. This policy is non-assessable and no contingent liability of any kind and character attaches to the insured named herein.

All other policy provisions apply.

FE-3533

©, Copyright, State Farm Mutual Automobile Insurance Company, 2012

SF - Jellison - 000818

# EXHIBIT B

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

DAVID JELLISON,  §
    Plaintiff,  §
      §
v.  §      CIVIL ACTION NO. 1:15-cv-1054 LY
      §
STATE FARM LLOYDS,  §
    Defendant.  §

## AFFIDAVIT OF ASHLEY TAYLOR

STATE OF TEXAS  §
      §
COUNTY OF DALLAS  §

Before me, the undersigned authority, on this day personally appeared Ashley Taylor, who, upon her oath, stated the following:

1.    "My name is Ashley Taylor. I am over the age of eighteen, am of sound mind, and capable of making this Affidavit. The information contained herein is based on my personal knowledge and/or my review of files and records maintained by State Farm in the ordinary course of business. I certify that the facts and statements contained in this Affidavit are true and correct.

2.    I am a Claim Specialist authorized to handle, on behalf of State Farm Lloyds, claims that have been placed into appraisal. I am familiar with the claim that is the basis of this case and with the appraisal provisions in the policy issued to David Jellison by State Farm Lloyds. I am authorized to make the statements in this Affidavit.

3.    It is the ordinary course of business for State Farm to maintain records regarding the claims of its insureds, which records are made at the time of the acts, transactions, occurrences, and/or events reflected in the records, or within a reasonable time thereafter, by or from information transmitted by someone with personal knowledge of such acts, transactions, occurrences, and/or events.

4.    As a result of my position, I have personal knowledge of the files and records maintained by State Farm relating to the claim submitted by David Jellison (the named insured on Policy No. 83-32-6465-8). My personal knowledge from my involvement with the claim of Mr. Jellison and the files and records maintained by State Farm in the ordinary course of business form the basis of this Affidavit.

5.    On or about November 4, 2013, a claim was reported for damage to Mr. Jellison's property arising from a weather event which occurred on or about October 31, 2013. State Farm opened Claim No. 53-364F-184. Non-privileged excerpted portions of the claim activity file notes from Claim No. 53-364F-184 are attached to this Affidavit as *Exhibit B-1.*

6.     On November 6, 2013, State Farm contacted Mr. Jellison by phone to acknowledge the claim and get additional information regarding the loss. State Farm inspected the property on November 13, 2013, with Mr. Jellison present. State Farm found interior water damage, caused by the nails backing out of the 29 year old metal roof. State Farm explained to Mr. Jellison that prior to issuing payment it needed to ensure that none of the damage had been paid for under a prior roof leak claim in 2007. After reviewing Mr. Jellison's prior claim, State Farm prepared a letter and estimate advising Mr. Jellison that State Farm found damage to the property in the amount of $10,592.22, replacement cost value. State Farm's November 25, 2013 letter further advised that the 2007 claim had paid $1,862.11 for damages to the kitchen, utility room, dining, and living room, which had not been repaired, and that amount would be subtracted from the current estimate, as the repairs had not been made. After deducting for $4,799.26 in depreciation, the $1,862.11 prior payment, and the $4,040 deductible, no payment was owed to Mr. Jellison at that time. Copies of State Farm's letter and estimate are attached to this Affidavit as *Exhibit B-2.*

7.     In August 2014, Mr. Jellison contacted his State Farm agent requesting additional information on why the prior claim amounts had been subtracted from the November 25 estimate. A copy of the 2007 estimate was forwarded to Mr. Jellison's agent who was to review and discuss with Mr. Jellison. State Farm heard nothing further from Mr. Jellison until January 21, 2015, when State Farm received a DTPA demand letter, request for second inspection, and repair estimate totaling $38,624.21. After multiple communications with Mr. Jellison's counsel, State Farm conducted a second inspection of the property on March 6, 2015 with Mr. Jellison present. The inspection revealed that repairs to the home had been made. Mr. Jellison indicated that he did not know when the loss occurred, and was unsure about what damage had been repaired. On March 13, 2015, State Farm contacted Mr. Jellison's counsel and requested photos of the damages that were taken prior to the repairs being completed. On or about April 14, 2015, State Farm received a thumb drive containing photos of the damage. After conducting a review of the photographs in comparison to the Mr. Jellison's contractor's estimate, the November 2013 estimate, the 2007 estimate, and 2007 photos, State Farm revised the original estimate to include damage totaling $15,602.07. On June 8, 2015, State Farm mailed Mr. Jellison, through his counsel, a copy of the revised estimate and a payment of $7,337.57 (actual cash value payment of $5,941.67 and statutory interest of $1,395.90). Copies of State Farm's letter and estimate are attached to this Affidavit as *Exhibit B-3.*

8.     On or about June 15, 2015, State Farm received a new demand from Mr. Jellison's counsel. Additional demand letters were received on June 19, 2015 and July 15, 2015. On or about July 10, 2015, State Farm demanded appraisal to set the amount of loss and designated Brian Scanlan as appraiser. A copy of the appraisal demand letter is attached to this Affidavit as *Exhibit B-4.* On July 27, 2015, Mr. Jellison responded and designated Jeff Watson as appraiser. A copy of the appraisal response letter is attached to this Affidavit as *Exhibit B-5.* On June 29, 2016, Mr. Jellison withdrew his designation of Mr. Watson and designated Ches Bostick as appraiser. A copy of the appraiser designation is attached to the Affidavit as *Exhibit B-6.* The appraisers agreed that Michael Fried would serve as umpire.

9.     On or about November 11, 2016, State Farm received a copy of the appraisal award signed by appraiser Bostick and umpire Fried setting the amount of loss at $32,841.89, on a replacement cost value basis, and $29,592.90 on an actual cash value basis. A copy of the appraisal award received by State Farm is attached to this Affidavit as *Exhibit B-7.*

10.     On November 18, 2016, State Farm tendered Mr. Jellison, through his counsel, payment of the appraisal award (less depreciation, deductible, and prior payment) in the amount of $19,611.23. A copy of State Farm's letter tendering the appraisal payment is attached to this Affidavit as *Exhibit B-8.* Replacement cost benefits of $3,248.99 are available to Mr. Jellison if he completes repairs/replacement of the damaged property identified in the appraisal award by October 27, 2018, and submits appropriate documentation of the completed repairs/replacement within thirty (30) days after the work is completed. To date, Mr. Jellison has not submitted any repair documentation or requested release of the replacement cost benefits.

11.     Attached as *Exhibits B-9* and *B-10* are demand letters received from Plaintiff's counsel on or about the dates reflected in the letters. These demand letters are referenced in paragraphs 7 and 8 above.

12.     Exhibits B-1, B-2, B-3, B-7, B-8, B-9 and B-10 attached to this Affidavit are true and correct copies of State Farm business records which were either made by, or from information transmitted by persons with knowledge of the events or conditions recorded therein, and the entries were made at or near the time of the events and conditions recorded. It is in the regular course of State Farm's business to make and to retain these types of documents."

_____
Ashley Taylor

| STATE OF TEXAS | § |
| | § |
| COUNTY OF DALLAS | § |

BEFORE ME, the undersigned authority, on this day personally appeared Ashley Taylor known to me to be the person whose name is subscribed to the foregoing instrument, and acknowledged to me that he executed the same for the purposes and consideration therein expressed.

GIVEN UNDER MY HAND AND SEAL OF OFFICE on this 28th day of February, 2017.

CALVIN COOLIDGE FLUKER, III.
Notary Public, State of Texas
Comm. Expires 09-07-2020
Notary ID 130811167

_____
Notary Public, in and for the State of Texas

Calvin C. Fluker III
_____
Printed Name of Notary

# EXHIBIT B-1

 **State Farm**

**RBZ000I5**
State Farm Lloyds

# Fire Claim File Print

# File History Information

Route To:



## FILE HISTORY

**File History - File Notes**

File Note:



Date: 11-03-2015

Page 1

FOR INTERNAL STATE FARM USE ONLY
Contains CONFIDENTIAL information which may not be disclosed without express written authorization.

SF-Jellison - 000020

FIRE                           Claim Number:  53-364F-184                          RBZ000I5



Date:  11-03-2015                                                                  Page 2

FOR INTERNAL STATE FARM USE ONLY
Contains CONFIDENTIAL information which may not be disclosed without express written authorization.

SF-Jellison - 000021

FIRE                Claim Number:  53-364F-184                 RBZ000I5

---

**07-13-2015 - 8:11:31 AM CDT**    Performer:  Perez, Ernest          Office:  HPROX
     File Note:  RE:investigation
Participant:  DAVID S JELLISON          COL / Line (Participant):
     Category:  Investigation               Sub Category:

**07-10-2015 - 5:10:38 PM CDT**    Performer:  Vath, Jay          Office:  HPROX
     File Note:  investigation
Participant:  DAVID S JELLISON          COL / Line (Participant):
     Category:  Investigation               Sub Category:

**07-10-2015 - 12:51:57 PM CDT**    Performer:  Perez, Ernest          Office:  HPROX
     File Note:
Participant:          COL / Line (Participant):
     Category:  Management               Sub Category:

**07-08-2015 - 4:02:59 PM CDT**    Performer:  Vath, Jay          Office:  HPROX
     File Note:  Investigation
Participant:  DAVID S JELLISON          COL / Line (Participant):
     Category:  Investigation               Sub Category:
Received voice message from Matt Rider with Wenholz, 512-478-2211 requesting status / decision of their $40,000 demand.

**07-06-2015 - 10:47:26 AM CDT**    Performer:  Vath, Jay          Office:  HPROX
     File Note:  investigation
Participant:  DAVID S JELLISON, THE WENHOLZ LAW          COL / Line (Participant):
              FIRM
     Category:  Investigation               Sub Category:
Accepted image from Wenholz law firm dated 7/02 and added to SF file 7/06 requesting contact / status of their $40,000 demand. I called Matt Rider with Wenholz, 512-478-2211 and left message with the receptionist with contact info advising a response later this week.

**07-01-2015 - 2:28:30 PM CDT**    Performer:  Vath, Jay          Office:  HPROX
     File Note:  investigation
Participant:  DAVID S JELLISON          COL / Line (Participant):
     Category:  Investigation               Sub Category:

**07-01-2015 - 10:10:44 AM CDT**    Performer:  Perez, Ernest          Office:  HPROX
     File Note:
Participant:          COL / Line (Participant):
     Category:  Management               Sub Category:
OAR/pending attny Burgess file review and prepare appraisal letter

---

Date:  11-03-2015                                                     Page 3

FOR INTERNAL STATE FARM USE ONLY
Contains CONFIDENTIAL information which may not be disclosed without express written authorization.

SF-Jellison - 000022

FIRE                                    Claim Number:  53-364F-184                                    RBZ00OI5

---

06-26-2015 - 4:43:41 PM CDT        Performer:   Vath, Jay                        Office:  HPROX
    File Note:  investigation
    Participant:  DAVID S JELLISON                      COL / Line (Participant):
    Category:  Investigation                                    Sub Category:
    ██████████████████████████████████████████

06-24-2015 - 3:40:22 PM CDT        Performer:   Vath, Jay                        Office:  HPROX
    File Note:  investigation
    Participant:  DAVID S JELLISON                      COL / Line (Participant):
    Category:  Investigation                                    Sub Category:
    ████████████████████████████████████

06-24-2015 - 8:24:11 AM CDT        Performer:   Perez, Ernest                    Office:  HPROX
    File Note:  ████████████████████████
    Participant:                               ████  / Line (Participant):
    Category:  ████████        ████████████████████████████

06-22-2015 - 2:37:13 PM CDT        Performer:   Vath, Jay                        Office:  HPROX
    File Note:  investigation
    Participant:  DAVID S JELLISON, THE WENHOLZ LAW         COL / Line (Participant):
                  FIRM
    Category:  ██████████████████           ████████████

06-19-2015 - 4:55:58 PM CDT        Performer:   Perez, Ernest                    Office:  HPROX
    File Note:  Rvwd recent FOL w/ SM Blue.At this point, we will
    Participant:                                         COL / Line (Participant):
    Category:  ████████████████           ██████████

    ████████████████████████

    ████████████████████████

06-19-2015 - 3:23:37 PM CDT        Performer:   Vath, Jay                        Office:  HPROX
    File Note:  investigation, litigation
    Participant:       ██████████████████████           COL / Line (Participant):

    Category:   ████████████████████                 Sub Category:   ████████████████
    Accepted response letter from the ph attorney without a breakdown of the $40,000 demand,  ████

06-17-2015 - 3:53:40 PM CDT        Performer:   Vath, Jay                        Office:  HPROX
    File Note:  pending
    Participant:                                         COL / Line (Participant):
    Category:  Pending                                      Sub Category:
    ████████

06-17-2015 - 3:52:32 PM CDT        Performer:   Vath, Jay                        Office:  HPROX
    File Note:  investigation
    Participant:  THE WENHOLZ LAW FIRM                   COL / Line (Participant):
    Category:  Investigation                                  Sub Category:
    Reviewed file, called Matt with Weinholz law firm, 512-478-2211, advised receipt of their new demand and SF request to
    breakdown their demand for review. Matt stated this amount reflects what they feel is appropriate to resolve the claim, I
    requested he submit something similar to the original demand to document how they arrived at this number, Matt stated he
    would discuss with the atty and contact me soon.

---

Date:  11-03-2015                                                                          Page 4

FOR INTERNAL STATE FARM USE ONLY
Contains CONFIDENTIAL information which may not be disclosed without express written authorization.

**FIRE**                              **Claim Number:  53-364F-184**                              **RBZ000I5**

---

06-17-2015 - 9:54:15 AM CDT      **Performer:**  Perez, Ernest                    **Office:** HPROX
    **File Note:** Rvwd recent Attny counter demand of $40,000.00.con
    **Participant:**                              **COL / Line (Participant):**
    **Category:**  Management                    **Sub Category:**
Rvwd recent Attny counter demand of $40,000.00.

contact Attny and ask them to break down the demand for our consideration.

06-16-2015 - 3:13:08 PM CDT      **Performer:**  Vath, Jay                        **Office:** HPROX
    **File Note:**  investigation, litigation
    **Participant:** DAVID S JELLISON, THE WENHOLZ LAW    **COL / Line (Participant):**
    FIRM
    **Category:**  Litigation, Investigation         **Sub Category:**
Accepted new image from Wenholz law firm acknowledging the payment and reducing their demand to $40, 000, ███████
███████████████████

06-08-2015 - 4:25:20 PM CDT      **Performer:**  Vath, Jay                        **Office:** HPROX
    **File Note:**  investigation
    **Participant:** DAVID S JELLISON, THE WENHOLZ LAW    **COL / Line (Participant):**
    FIRM
    **Category:**  Investigation                    **Sub Category:**
Received voice message from Matt with ph attorneys office requesting return call, called Matt at 512-478-2211, he would like
to negotiate a counter offer and I suggested he forward their documents for review but stated the settlement would be issued
today as per the June 1 correspondence. Issued payment with letter and estimate to the attorney and insured, ppoc and
estimate uploaded to file, ok to close pending receipt of attorney documents, new mail will reopen.

06-01-2015 - 5:21:49 PM CDT      **Performer:**  Vath, Jay                        **Office:** HPROX
    **File Note:**  pending
    **Participant:** DAVID S JELLISON, THE WENHOLZ LAW    **COL / Line (Participant):**
    FIRM
    **Category:** ████████████                       **Sub Category:**
████████████████████████████████

06-01-2015 - 5:20:38 PM CDT      **Performer:**  Vath, Jay                        **Office:** HPROX
    **File Note:**  investigation
    **Participant:** DAVID S JELLISON, THE WENHOLZ LAW    **COL / Line (Participant):**
    FIRM
    **Category:** ████████              ███████████████
████████████████████████████████████████████████████████

05-27-2015 - 8:43:44 PM CDT      **Performer:**  Teufel, Randy                   **Office:** HPROX
    **File Note:**  OAR--reviewed response letter--ok to send.
    **Participant:**                              **COL / Line (Participant):**
    **Category:** ████████              █████████████
██████████████████████████

05-27-2015 - 2:06:23 PM CDT      **Performer:**  Vath, Jay                        **Office:** HPROX
    **File Note:**  pending
    **Participant:**                              **COL / Line (Participant):**
    **Category:**  Pending                        **Sub Category:**
████████████████

05-27-2015 - 2:03:57 PM CDT      **Performer:**  Vath, Jay                        **Office:** HPROX
    **File Note:**  investigation

---

Date:  11-03-2015                                                                  Page 5

FOR INTERNAL STATE FARM USE ONLY
Contains CONFIDENTIAL information which may not be disclosed without express written authorization.

SF-Jellison - 000024

FIRE                                 Claim Number:  53-364F-184                                 RBZ000I5

| Participant: | DAVID S JELLISON, THE WENHOLZ LAW FIRM | COL / Line (Participant): |
| --- | --- | --- |
| Category: | Investigation | Sub Category: |

Reviewed claim status and file notes:
The current repair estimate estimate was prepared after the 3/06/15 inspection of the property, as per the file notes only the insured was present for the reinspection and was uncomfortable discussing the claim without the attorney or the contractor being present. The insured did not discuss any temporary repairs or delays in reporting additional damages.

As part of the reinspection the repair estimate and photos from the 1/13/2007 loss were reviewed, this settlement amount was abated from the repair estimate prepared 11/25/2013 resulting in no AVC payment. The revised repair estimate prepared from the 3/06/2015 reinspection reflects only additions/corrections to the 11/25/2013 repair estimate:

Addition of Drywall material cost that was omitted from the kitchen area.
Addition of FCC and FCC-PAD material costs that were omitted and addition of the FCC and FCC-PAD in the bedroom that was omitted and vis bly affected by the water per the original photos.
Revision of base trim to reflect the stain grade material quality per original photos and remaining trim.
Revision of Painting trade to reflect repairs to existing crown trim.
Revision of WPR to reflect the correct quality/grade in the bedroom.

These revisions reflect actual damages or omissions to the original estimate/settlement, none of the damages were hidden and all appear to have been existing.

The contractor repair estimate includes replacement of windows, window stools, not affected by this loss, the SF repair estimate of 1/13/2007 also included replacement of the water heater.

The repair estimate revised after the recent reinspection includes revised/corrected line items, the settlement includes the RC benefits for the structure items that were repaired at the time of the reinspection, the FCC/PAD had not been replaced at the time of the reinspection.

| 05-12-2015 -10:56:47 AM CDT | Performer: Zander, Aaron | Office: HPROX |
| --- | --- | --- |
| File Note: OAR | | |
| Participant: ▮▮▮▮ | COL / Line (Participant): | 37 / 001 (Named Insured(s)) |
| Category: ▮▮▮▮ | ▮▮▮▮ | |

| 05-08-2015 - 6:28:04 PM CDT | Performer: Rieger, Tim | Office: HPROX |
| --- | --- | --- |
| File Note: Returned PH's atty call and disc. I would review f | | |
| Participant: THE WENHOLZ LAW FIRM | COL / Line (Participant): | 37 / 001 (Named Insured(s)) |
| Category: Contact | Sub Category: | |

Returned PH's atty call and disc. I would review file and get back to him with status.

| 05-05-2015 - 2:51:26 PM CDT | Performer: Perez, Ernest | Office: HPROX |
| --- | --- | --- |
| File Note: ▮▮▮▮ | | |
| Participant: ▮▮▮▮ | ▮▮ / Line (Participant): ▮▮▮▮ | |
| Category: ▮▮▮▮ | | |

Date:  11-03-2015                                                                                     Page 6

FOR INTERNAL STATE FARM USE ONLY
Contains CONFIDENTIAL information which may not be disclosed without express written authorization.

FIRE                                    Claim Number:  53-364F-184                                    RBZ000I5

█████████████████

██████████████████████████████████████████████

█████████████████

05-04-2015 - 1:04:45 PM CDT          **Performer:** Vath, Jay                          **Office:** HPROX
   **File Note:** investigation
   **Participant:** DAVID S JELLISON, THE WENHOLZ LAW          **COL / Line (Participant):**
                 FIRM
   **Category:** Investigation                                          **Sub Category:**
Uploaded revised structure estimate to the server, the original estimate omitted drywall in the kitchen/breakfast area, material cost for the carpet and pad, will forward the estimate with PPOC and response letter for review.

██████████████████████████  █████████        ██████  ████

██████████████████            █████████████

04-24-2015 -11:13:45 AM CDT          **Performer:** Vath, Jay                          **Office:** HPROX
   **File Note:** investigation
   **Participant:** DAVID S JELLISON, THE WENHOLZ LAW          **COL / Line (Participant):**
                 FIRM
   **Category:** Investigation                                          **Sub Category:**
Reviewed photos received from the atty, the drive was sent to CDP to add photos to the file and scan for virus per CAPS:

Attn: CIOS
State Farm Insurance Companies
ISC West
424 South 56th Street
Phoenix, AZ 85034-2108

Reviewed the ph contractor estimate, includes replacement of windows, window stools, mitigation, replacement of all carpeting including undamaged rooms, replacement of all panel ceilings, reset of washer / dryer, WPR quality. Will review SF estimate and compare photos at initial inspection.

04-16-2015 -10:59:32 AM CDT          **Performer:** Vath, Jay                          **Office:** HPROX
   **File Note:** investigation
   **Participant:** THE WENHOLZ LAW FIRM          **COL / Line (Participant):**
   **Category:** Investigation                                          **Sub Category:**
Picked up flash drive from the atty office receptionist 4/14 am, will review photos and discuss with TM. Photos from initial inspection of the loss in system, no notice of additional damages or supplemental inspections completed prior to 3/06/15 inspection, repairs were completed prior to 3/06 inspection.

██████████████████████████  █████████        ██████  ████

██████████████████            █████████████

04-13-2015 - 5:17:51 PM CDT          **Performer:** Vath, Jay                          **Office:** HPROX
   **File Note:** investigation

FOR INTERNAL STATE FARM USE ONLY
Contains CONFIDENTIAL information which may not be disclosed without express written authorization.

SF-Jellison - 000026

FIRE                           Claim Number:  53-364F-184                          RBZ000I5

| | |
|---|---|
| **Participant:** | DAVID S JELLISON, THE WENHOLZ LAW   **COL / Line (Participant):** |
| | FIRM |
| **Category:** | Investigation                                        **Sub Category:** |

Received call from Matt with Weinholz law firm, 512-732-9970, I again apologized for the delay regarding the photos offered to pick up photos or meet with him. Agreed to pick up photos at their office 13501 Galleria Circle tomorrow 4/14 am as I have an apt in the area.

**04-13-2015 - 3:08:01 PM CDT**       **Performer:**  Vath, Jay                      **Office:**  HPROX
**File Note:**  investigation
**Participant:** DAVID S JELLISON, THE WENHOLZ LAW       **COL / Line (Participant):**
FIRM
**Category:**  Investigation                                        **Sub Category:**

Spoke with Matt with Weinholz law firm, 512-732-9970, advised no photos received into file as of this morning, he was very upset with the status of the photos and claim process, I reminded him that any additional damages were repaired prior to the 3/06 inspection and SF had no oppotunity to inspect and estimate any covered damages. Matt stated that the original inspection should have been sufficient, I suggested we meet this week and he can provide any photos he has for SF to review, Matt ended the call.

**04-06-2015 - 4:52:48 PM CDT**       **Performer:**  Vath, Jay                      **Office:**  HPROX
**File Note:**  investigation
**Participant:** DAVID S JELLISON, THE WENHOLZ LAW       **COL / Line (Participant):**
FIRM
**Category:**  Investigation                                        **Sub Category:**

Accepted mail from the ph attorney dated 3/24 stating they have included a thumb drive with photos and extended their demand date by one week. Unsure of the status of a thumb drive sent with this letter,

**04-01-2015 - 2:15:34 PM CDT**       **Performer:**  Vath, Jay                      **Office:**  HPROX
**File Note:**  investigation
**Participant:** DAVID S JELLISON                        **COL / Line (Participant):**
**Category:**  Investigation                                        **Sub Category:**

Received call from Matt with the Weinholz law Firm stating he mailed a thumb drive with photos a week ago for me to review. Advised there has been no correspondence received since 3/20 and our last conversation, stated that I would contact him if received.

**04-01-2015 - 1:42:06 PM CDT**
**File Note:**
**Participant:**                                       **COL / Line (Participant):**
**Category:**                                          **Sub Category:**

**03-23-2015 - 5:43:43 PM CDT**       **Performer:**  Vath, Jay                      **Office:**  HPROX
**File Note:**  investigation
**Participant:** THE WENHOLZ LAW FIRM                    **COL / Line (Participant):**
**Category:**  Investigation                                        **Sub Category:**

Accepted document from ph attorney received 3/22 with dropbox address  for photos taken of the risk, www.dropbox.com/sh/gs6caih817px3xt/AABLm2Sh5B6sg5OMnpuoYcKla?dl=0 and demand  acceptance/rejection by today 3/23/15. I was not able to access the photos at this address, as previously documented, my inspection revealed that repairs had already been completed prior to the 3/06/15 inspection, the insured's contractor did not attend the inspection and nothing received from the attorney to document any additional damages as was requested. I called Matt Ryder to advise their

FOR INTERNAL STATE FARM USE ONLY
Contains CONFIDENTIAL information which may not be disclosed without express written authorization.

SF-Jellison - 000027

FIRE                              Claim Number: 53-364F-184                              RBZ000I5

demand had been rejected as we are unable to reconcile additional/new damages. .

03-20-2015 - 2:11:07 PM CDT      Performer:  Vath, Jay                    Office: HPROX
      File Note:  contact, investigation
      Participant: DAVID S JELLISON, THE WENHOLZ LAW       COL / Line (Participant):
                   FIRM
      Category:  Contact, Investigation                   Sub Category:
Returned call to Matt Ryder with The Wenhohz Lawfirm, 512-478-2211, the receptionist stated that he had left for the
weekend, left claim and contact info for return call, requested information regarding the additional damages with Matt on 3/13.

03-13-2015 - 11:42:35 AM CDT     Performer:  Vath, Jay                    Office: HPROX
      File Note:  contact, investigation
      Participant: DAVID S JELLISON                        COL / Line (Participant):
      Category:  Contact, Investigation                   Sub Category:
Working on the estimate review, contacted Matt Ryder with the ph law firm requested additional photos of structure damages
that were taken prior to the repairs being completed, only the finishing of the breakfast ceiling and replacement of the FCC
remain. Matt stated that he would review their file and send for review, gave claim and e-mail contact info for the requested
information.

03-10-2015 - 7:54:41 AM CDT      Performer:  Jay Vath                    Office: System
      File Note:  Claim Offline Upload
      Participant:                                         COL / Line (Participant):
      Category:  Investigation                             Sub Category:

Met with Mr. Jellison per apt 3/06 to reinspect the damage, neither the law firm
representative or their construction expert were present during the inspection.
Mr. Jellison stated the water entered the home through the ceiling in the
breakfast area and adjacent bedroom, he stated the carpet in these rooms
was very wet, he stated the wet carpet continued into the living room and
hallway, he also stated that he does not think there was any damage in the
hall bath. The home has no water damaged drywall or base trim in any room,
repairs appear near completion, the FCT in the kitchen, hall and master baths
appears new, Mr. Jellison stated that he was not home at the time of the loss
and was not really sure what was damaged or has been repaired. The carpet
was removed from all rooms and closets, the kitchen cabinets and beaded vee
ceiling in the living room appear recently refinished, the beaded vee panel
ceiling in the break fast area is unfinished, several entry and closet doors
appear recently refinished, the master bath FCT and shower and enclosure
appear new.

03-06-2015 - 8:23:21 AM CST      Performer:  Vath, Jay                   Office: HPROX
      File Note:  investigation, litigation
      Participant: DAVID S JELLISON, THE WENHOLZ LAW       COL / Line (Participant):
                   FIRM
      Category:  Contact, Litigation, Investigation        Sub Category:
Received voice message from Matt Ryder with the Wenholz Group, 512-478-2211 3/05 stating that neither he or their
construction expert would be at the 10:00 apt on Friday but the attorney wanted to proceed with the inspection without
discussing the claim with the insured.

Date:  11-03-2015                                                                              Page 9

FOR INTERNAL STATE FARM USE ONLY
Contains CONFIDENTIAL information which may not be disclosed without express written authorization.

SF-Jellison - 000028

FIRE                                    Claim Number: 53-364F-184                              RBZ000I5

---

03-03-2015 -11:08:04 AM CST        Performer:  Vath, Jay                           Office: HPROX
   File Note:  contact, investigation
   Participant:  DAVID S JELLISON                        COL / Line (Participant):
   Category:  Contact, Investigation                     Sub Category:
Received voice message from Matt Ryder stating he was not able to schedule an inspection with Mr Jellison last week and
could not confirm an inspection with their construction expert. Offered to inspect anytime this week and offered several
inspection dates/times, Matt has other inspection scheduled and agreed to Friday morning at 10:00, he spoke with the insured
and called to confirm the Friday inspection.

02-27-2015 - 5:08:31 PM CST        Performer:  Vath, Jay                           Office: HPROX
   File Note:  contact, investigation
   Participant:  THE WENHOLZ LAW FIRM                   COL / Line (Participant):
   Category:  Contact, Investigation                     Sub Category:
Left second detailed message for Matt Ryder with the Wenholz Group, 512-478-2211, he was to confirm appt/inspection date
and time with the insured and their estimator, I had offered several time anytime Thursday and 12:00 on Friday.

02-27-2015 - 9:51:27 AM CST        Performer:  Vath, Jay                           Office: HPROX
   File Note:  contact, investigation
   Participant:  DAVID S JELLISON, THE WENHOLZ LAW       COL / Line (Participant):
     FIRM
   Category:  Contact, Investigation                     Sub Category:
Called Matt Ryder with the Wenholz Group, 512-478-2211, left message with the receptionist re: apt confirmation with their
estimator and the insured for today.

02-25-2015 - 5:23:18 PM CST        Performer:  Vath, Jay                           Office: HPROX
   File Note:  contact, investigation
   Participant:  DAVID S JELLISON, THE WENHOLZ LAW       COL / Line (Participant):
     FIRM
   Category:  Contact, Investigation                     Sub Category:
Returned call to Matt Ryder with the Wenholz Group, 512-478-2211, he stated they would like to schedule an inspection of
the damages this week, he also stated the insured has begun repairs of the dwelling to make ready for a tenant and some of
the damage had been already removed. He was to contact Mr Jellison with my available inspection times for Thursday and
Friday this week, sent tentative inspection for Friday 2/27 at 12:00, he will call to confirm the inspection with Mr Jellison and
their estimator.

02-25-2015 -10:11:07 AM CST        Performer:  Vath, Jay                           Office: HPROX
   File Note:  contact, investigation
   Participant:                                         COL / Line (Participant):
   Category:  ████████████████████████████████████████████████████████████████████████████████████.

02-19-2015 -12:13:58 PM CST        Performer:  Zander, Aaron                       Office: HPROX
   File Note:  OAR
   Participant:                                         COL / Line (Participant):  37 / 001 (Named Insured(s))
   Category:  ████████████████████████████          ████████████

02-17-2015 -10:03:51 AM CST        Performer:  Vath, Jay                           Office: HPROX
   File Note:  investigation
   Participant:  ████████████████████████             COL / Line (Participant):

   Category:  ████████████████████████████████       Sub Category:

02-06-2015 -11:08:21 AM CST        ████████  ████████                              ████  ████
   File Note:  ████  ████████████████                 ████████████████████

---

Date:  11-03-2015                                                                           Page 10

FOR INTERNAL STATE FARM USE ONLY
Contains CONFIDENTIAL information which may not be disclosed without express written authorization.

FIRE                              Claim Number:  53-364F-184                        RBZ000I5



01-19-2015 - 3:08:51 PM CST      Performer:  Vath, Jay                  Office:  HPROX
    File Note:  investigation
Participant:  DAVID S JELLISON                        COL / Line (Participant):
    Category:  Investigation                          Sub Category:
Received a call from Matt Rider working for the Law office of Wenhold Law Firm 512-478-2211, he requested status of a
demand letter, reviewed the file and no correspondence has been received. Gave Mr Rider the fax and mail information,
reviewed the file, appears to be a question about roofing damage/repairs, will review and and reassign to correct segment for
handling if documents are received.

01-19-2015 - 2:52:52 PM CST      Performer:  Santos, Gilbert            Office:  WCCSLOCO
    File Note:  ███████████████████
Participant:                                         COL / Line (Participant):
    Category:

08-20-2014 - 5:02:55 PM CDT      Performer:  Santos, Gilbert            Office:  COMPLEX
    File Note:  agent called
Participant:                                         COL / Line (Participant):
    Category:  Claim Note                             Sub Category:
Received agent's call. He advised ph had question on why prior payment was taken out of the estimate. Explained that it is
our understanding that the 2007 claim damages were not repaired by the insured prior to this claim.  Explained to agent that
at the time of my inspection mr ph advised items were original to the house 29 yrs.  I advised Agent that damaged items did
not appear to be 6 yrs old. I had explained at the time to mr ph that prior claim payment would be subtracted and he had
expressed understanding. Agent advised mr ph is stating repairs were completed. Agent requested copy of the 2007 claim
estimate.
sent copy to agent who will review and discuss with mr ph.  Advised of need of receipts or invoices showing work completed
in 2007 could be reviewed for consideration if insured has some to submit.
file remains closed.

08-20-2014 - 1:39:32 PM CDT      Performer:  Moser, Ann                 Office:  LVFTXCSA
    File Note:  Agent called
Participant:                                         COL / Line (Participant):
    Category:  Claim Note                             Sub Category:
Agent called

Date:  11-03-2015                                                        Page 11

FOR INTERNAL STATE FARM USE ONLY
Contains CONFIDENTIAL information which may not be disclosed without express written authorization.

FIRE                               Claim Number:  53-364F-184                               RBZ000I5

---

**08-19-2014 - 2:58:48 PM CDT**     **Performer:** Santos, Gilbert               **Office:** COMPLEX
   **File Note:** call from Agent
   **Participant:**                                       **COL / Line (Participant):**
   **Category:** Claim Note                               **Sub Category:**
received transfered call from Agent yesterday while in the field advised I would call him today.
Called agent's office left voicemail msg for Agent advising I was returning his call to discuss this claim as he had requested.
File remains closed.

**08-18-2014 - 4:49:32 PM CDT**     **Performer:** Williams, Darrell            **Office:** LVFTXCSA
   **File Note:** phone
   **Participant:**                                       **COL / Line (Participant):**
   **Category:** Contact                                  **Sub Category:**
agent to co/ch;

**11-27-2013 - 3:41:19 PM CST**     **Performer:** Michalec, Mike              **Office:** COMPLEX
   **File Note:** MCAR. Next day initial contact achieved. A timely
   **Participant:**                                       **COL / Line (Participant):**
   **Category:** Management                               **Sub Category:**
MCAR. Next day initial contact achieved. A timely diligent investigation was conducted. The damages were documented and
appeared properly evaluated. The coverages and deductible were properly applied. Online customer service entries were
done. Correspondence was timely and proper. Prior damages were reviewed.

**11-25-2013 - 3:34:39 PM CST**     **Performer:** Santos, Gilbert             **Office:** COMPLEX
   **File Note:** CSA Print - Draft
   **Participant:**                                       **COL / Line (Participant):**
   **Category:** CSA Print                                **Sub Category:** Draft
(X) With Letter: letter and 2 estimates(X) With Estimate: include Est 53F100137 with current claim estimate
As per telephone conversation of 11-22-13 mailed letter with current claim estimate and prior claim 53F100137 estimate.
Sub and salvage N/A
No underwriting concern, insured has already repaired the roof.
Close claim file CWP with RCB available when interior work is completed.

**11-25-2013 - 2:13:31 PM CST**     **Performer:** Gilbert Santos             **Office:** System
   **File Note:** Claim Offline Upload
   **Participant:**                                       **COL / Line (Participant):**
   **Category:** Claim Note                               **Sub Category:**
11-22-13
Received itel reports for vinyl flooring and carpet. Added ITEL info to estimate.  Review of prior claim file concluded prior
claim 53-F100-137, with DOL of  1-13-07, paid $1862.11 for damages to the kitchen, utility rm, dining and living room which
were not repaired after the payment.
 Called mr ph and reviewed scope of repairs, estimate and EBRCB. Explained prior payment would be withdrawn from this
payment due to repairs not being made after the claim.  Mr ph advised he did not recall ever making the claim. Confirmed
draft was cashed.
 Settlement with O&P is as follows:
R/C              $10592.22
Depre          <  4779.26>
Deduct ble   <  4040.00>
prior payment  <  1862.11>
Net ACV       $      0.00   with RCB of $4690.11 available.
 Advised ph estimate, letter and draft would follow.  Insured requested State Farm send a copy of the prior claim estimate.

**11-22-2013 - 1:56:12 PM CST**     **Performer:** Gilbert Santos             **Office:** System
   **File Note:** Claim Offline Upload
   **Participant:**                                       **COL / Line (Participant):**
   **Category:** Claim Note                               **Sub Category:**
11-13-13

---

Date:  11-03-2015                                                                      Page 12

FOR INTERNAL STATE FARM USE ONLY
Contains CONFIDENTIAL information which may not be disclosed without express written authorization.

SF-Jellison - 000031

FIRE                                    Claim Number:  53-364F-184                                    RBZ000I5

Arrived at the risk at the sched time. Mr ph arrived shortly after. Inspected the interior and noted carpet had been pulled from the formal dining room floor. Carpet is continuous into the hall and living room. Mr ph advised he pulled carpet (29 yrs old) because it had been wet fro a long period of time and was soaking wet. Stated he does not always stop off at the house. House appears to be vacant but mr ph advised he stops off at the risk after work to work on his computer (was setup on a desk in the living rm) and to work in his shop on autos.  Refri also stocked with food. Noted extensive damage to the ceiling wood paneling, wall, and one wall papered wall in the formal dining rm. Ceiling is continuous into the living rm.  Noted heavy damage to the kitchen/brkfst area  and utility room. Roof leak damaged the ceiling, wall and floor in the kitchen/brkfst area and utility m.  Noted bedroom next to dining room has one wall which shows sign of damage to the wallpaper over it.  Asked insured about the ages of the wearable surfaces and he provided the following info: Vinyl floor 29 yrs old, Carpet 29 yrs old, paint 7+ yrs, wallpaper 29 yrs in the dining and 20 in the kitchen. Wood stain is original 29 yrs old.
  Inspected the metal roof on the house and noted no wind or hail damage. Noted screws which have been backing out over time to the extent that they show signs of rust. Same was noted on prior claim in 2007. No signs of wind or hail to the exterior of the home.  Leak appears to be at the transition of two different pitch slopes at the rear of the home which also has screws backing out. Attempts have been made to seal the area with sealant but per ph did not stop the leak. Reviewed findings with mr ph and explained need for me to review the prior claim file to insure no duplicate payment. Took samples of carpet and vinyl floor to submit to ITEL.
Submitted samples to ITEL.
pend ITEL report and estimate.
Discussed loss with agent's staff.

| 11-15-2013 - 2:54:18 PM CST | Performer: | Cooksey, Adrian | Office: | COMPLEX |

    File Note:  claim note
    Participant:                                     COL / Line (Participant):
    Category:  Claim Note                            Sub Category:
new mail in documets. revd itel report for damaged flooring. inspection was completed on 11/13/13 b fcr santos, estimate has not been uploaded at this time to revise with itel pricing. snt msg to fcr santos.

| 11-07-2013 - 6:51:59 PM CST | Performer: | Santos, Gilbert | Office: | COMPLEX |

    File Note:  contact
    Participant:                                     COL / Line (Participant):
    Category:  Contact                               Sub Category:
16330 FM 1826 AUSTIN TX 787378809
HO $207858.00              deductible K $2020.00  O $4040.00
Issued 1981 Built 1984
Claim History:
53-F100-137  01/13/2007 37 YES RN YES $1,862.11 NO adpl to roof, water damage to kitchen, livRm and utility room. R&R popcorn texture and strip and refinish paneling in lr.
53-Q892-570  07/15/2005 08 NO  tree limb fell on claimant's car $2,246.59
53-Q319-175  08/25/2000 43 NO NC YES $709.10, fence damage due to vehicle
Called cell # 512-496-1051 spoke to mr ph. REviewed claim process and deductible. Mr ph advised home is one story, metal, age 27 yrs. Interior damage to breakfast area and dining room (ceiling, wall and floor).  Sched appt for Wed 11-13-13 at 3:00-3:30pm.
Pend inspection results.

| 11-06-2013 - 1:47:55 PM CST | Performer: | Cooksey, Adrian | Office: | COMPLEX |

    File Note:  NI FOL
    Participant:  DAVID S JELLISON                   COL / Line (Participant):
    Category:  Contact, Investigation               Sub Category:
revd as new claim. revd prior file from 2007. leak in living room and utility room from roof leaking. no wind/hail dmg found to the roof. paid $1862.11
called ph at 512-496-1051, spoke with mr jellison. confirmed facts of loss. water damage to the ceiling, walls, and flooring in the breakfast area and dining room. roof is a 1-story metal roof and is 27 yrs old. roof was installed in 1986. gave ph fcr contact info, claim number and expd that fcr would be in contact with ph to schedule the inspection. he u/s. set cal.

| 11-04-2013 -12:40:55 PM CST | Performer: | David, Tracey | Office: | STWDGEN |

    File Note:  Reassigning to complex unit for handling
    Participant:                                     COL / Line (Participant):

FOR INTERNAL STATE FARM USE ONLY
Contains CONFIDENTIAL information which may not be disclosed without express written authorization.

SF-Jellison - 000032

FIRE                                 Claim Number:  53-364F-184                          RBZ000I5

**Category:** Claim Note                                    **Sub Category:**
Reviewed FOL and PH is claiming damage to roof.  Reassigning claim to complex unit for handling as claim requires roof
inspection.

Reassigning claim to complex unit for handling.

11-04-2013 -12:27:10 PM CST      **Performer:** System                        **Office:** System
**File Note:**  Remarks from Loss Report User
**Participant:**                                    **COL / Line (Participant):**
**Category:** New Claim                              **Sub Category:**
Remarks from Agency

Page 14

FOR INTERNAL STATE FARM USE ONLY
Contains CONFIDENTIAL information which may not be disclosed without express written authorization.

SF-Jellison - 000033

# EXHIBIT B-2



November 25, 2013

David S Jellison
16330 FM 1826
Austin, TX 78737-8809

**State Farm Insurance**
PO Box 661044
Dallas TX  75266-1044
888 208 3017 Fax 888 208 3019

RE:     Claim Number:  53-364F-184
        Date of Loss:    October 31, 2013

Dear Mr. Jellison:

This letter will confirm our conversation of November 22, 2013.  As we discussed, the investigation into the facts and circumstances of your loss has been completed and a final coverage decision has been reached.

As per our conversation, our records indicate that a payment was issued to you on April 25, 2007 in the amounts of $1,862.11 to indemnify you for damage to the interior of your home under your prior claim, 53-F100-137. After our investigation of this claim, it appears the interior has not been repaired after the prior claim. Please be aware that coverage cannot be extended for the same damage twice, if no repairs were made after the original claim.

Our inspection did find new water damage to the interior resulting from this current loss. Therefore, we will be extending coverage for this portion of the claim minus the prior payment issued under the previously referenced claims.

The estimate to repair or replace your damaged property is $10,592.22 and includes a deduction for depreciation of $4,779.26. After applying the previous payment to this claim the actual cash value (repair/replacement cost less depreciation) of the damaged part of property at the time of loss is less than your $4,040.00 deductible. Therefore, no payment is being issued to you at this time. The estimate you received from us details the depreciation applied to your loss. If you cannot have the repairs completed for the repair/replacement cost amount estimated, please contact your claim representative prior to beginning repairs.

The terms and conditions of your Homeowner's insurance policy provide for building replacement cost benefits of up to $4,690.11; however, your policy requires that repairs/replacement be completed before these benefits may be claimed.  We will then pay the covered additional amount you actually and necessarily spent to repair or replace the damaged part of the property, up to the limit of liability that exceeds what we have already paid to you.

**To obtain replacement cost benefits for this loss, you must:**
 1. Complete the actual repair or replacement of the damaged part of the property within two years of the date of loss; and

 2. Notify us within 30 days after the work has been completed.

 3. Confirm completion of repair or replacement, by submitting invoices, receipts or other to documentation your Agent or claim office.

*Providing Insurance and Financial Services*                                                    *Home Office, Bloomington, IL*

Without waiving the above requirements, we will consider paying replacement cost benefits prior to actual repair or replacement if we determine repair or replacement costs will be incurred because repairs are substantially under way or you present a signed contract acceptable to us.

All policy provisions apply to your claim.

Our inspection of the metal roof revealed no evidence of wind or hail damage but did reveal evidence of normal wear, tear and/or deterioration of the roof.  Unfortunately, a loss resulting from this cause is excluded from coverage by the terms of your insurance policy, which reads:

## SECTION I - LOSSES INSURED

**COVERAGE A - DWELLING**

> We insure for accidental direct physical loss to the property described in Coverage A, except as provided in **SECTION I - LOSSES NOT INSURED**.

## SECTION I - LOSSES NOT INSURED

1.     We do not insure for any loss to the property described in Coverage A which consists of, or is directly and immediately caused by, one or more of the perils listed in items a. through n. below, regardless of whether the loss occurs suddenly or gradually, involves isolated or widespread damage, arises from natural or external forces, or occurs as a result of any combination of these:

   g.   wear, tear, marring, scratching, deterioration, inherent vice, latent defect or mechanical breakdown;

   i.    mold, fungus or wet or dry rot;

   However, we do insure for any resulting loss from items a. through m. unless the resulting loss is itself a Loss Not Insured by this Section.

3.     We do not insure under any coverage for any loss consisting of one or more of the items below. Further, we do not insure for loss described in paragraphs 1. and 2. immediately above regardless of whether one or more of the following: (a) directly or indirectly cause, contribute to or aggravate the loss; or (b) occur before, at the same time, or after the loss or any other cause of the loss:

   b.   defect, weakness, inadequacy, fault or unsoundness in:

   (1)  planning, zoning, development, surveying, siting;

   (2)  design, specifications, workmanship, construction, grading, compaction;

   (3)  materials used in construction or repair; or

   (4)   maintenance;

2

SF-Jellison - 000269

of any property (including land, structures, or improvements of any kind) whether on or off the **residence premises;** or

However, we do insure for any resulting loss from items a., b. and c. unless the resulting loss is itself a Loss Not Insured by this Section.

Because a portion this loss falls within your insurance policy's exclusionary language, we are unable to make payment for a portion of this loss.  Before reaching this decision we conducted a thorough investigation and considered all information which you provided to us.  If there is information you think was not considered, please submit it to me for review.

By specifying these grounds, State Farm Lloyds does not intend to waive, but hereby expressly reserves, all of its rights and defenses under this insurance policy.  This letter should not be construed as estopping State Farm Lloyds from asserting any of its rights and defenses under this insurance policy.

Because you are a valued customer, it is important to us that you fully understand why a portion of this loss is excluded from coverage.  If you have any questions concerning our decision, please call me.

Sincerely,


Gilbert Santos
Claim Representative
888-208-3017 Ext 2104832725
State Farm Lloyds

Enclosures:    State Farm Estimates

PS:  As you requested I have included a copy of the prior claim, 53-F100-137, estimate for your review.

3

SF-Jellison - 000270

1

JELLISON, DAVID                                                                53-364F-184



**State Farm**
**PO Box 661044**
**Dallas, TX 75266-1044**
**888-208-3017**
**888-208-3019 fax**

## Structural Damage Claim Policy

When you have a covered structural damage claim to your real property, you should know:

- We want you to receive quality repair work to restore the damages to your property.

- We will provide you with a detailed estimate of the scope of the damage and costs of repairs. Should the contractor you select have questions concerning our estimate, they should contact your claim representative directly.

- Depending upon the complexity of your repair, our estimate may or may not include an allowance for general contractor's overhead and profit. If you have questions regarding general contractor's overhead and profit and whether general contractor services are appropriate for your loss, please contact your claim representative before proceeding with repairs.

- There may be building codes, ordinances, laws, or regulations that affect the repairs of your property. These items may or may not be covered by your policy. Please contact your claim representative if you have any questions regarding coverage which may be available under your policy.

- If you select a contractor whose estimate is the same as or lower than our estimate, based on the same scope of damages, we will pay based upon their estimate. If your contractor's estimate is higher than ours, you should contact your claim representative prior to beginning repairs.

- State Farm® cannot authorize any contractor to proceed with work on your property. Repairs should proceed only with your authorization.

- State Farm does not guarantee the quality of the workmanship of any contractor or guarantee that the work will be accomplished within any specific time frame.

- It is understood that the contractor is hired by you, our insured, and that they work for you - not State Farm.

If you have any questions or need additional information regarding your claim, please contact your claim representative immediately.

Date:    11/25/2013 3:28 PM                                132214.1  06-18-2009      Page: 1

SF-Jellison - 000320

2

53-364F-184

 **StateFarm®**   **Building Estimate Summary Guide**

**This summary guide is based on a sample estimate and is provided for reference only.**

**Please refer to the estimate for specifics of your claim.**

### State Farm Insurance

| | | |
|---|---|---|
| Insured: | Smith, Joe & Jane | Estimate: 00-0000-000 |
| Property: | 1 Main Street | Claim number: 00-0000-000 |
| | Anywhere, IL 00000-0000 | Policy Number: 00-00-0000-0 |
| Type of Loss: | Other | Price List: ILBL8F_MAR 13 |
| Deductible: | $1,000.00 | Restoration/Service/ |
| | | Remodel |
| | | F = Factored In, |
| | | D = Do Not Apply |

### Summary for Dwelling

| | | | |
|---|---|---|---|
| Line Item Total [1] | | | 5,953.10 |
| Material Sales Tax | @ | 10.000% x 1,520.00 | |
| Subtotal | | | 6,105.10 |
| General Contractor Overhead [2] | @ | 10.0% x 6,105.10 | 610.51 |
| General Contractor Profit | @ | 10.0% x 6,105.10 | 610.51 |
| Replacement Cost Value (Including General Contractor Overhead and Profit [3] | | | 7,326.12 |
| Less Depreciation (Including Taxes) [4] | | | (832.50) |
| Less General Contractor Overhead & Profit on Recoverable & | | | |
| Non - recoverable Depreciation | | | (166.50) |
| Less Deductible [5] | | | _____ |
| Net Actual Cash Value Payment [6] | | | _____ |

### Maximum Additional Amounts Available If Incurred:

| | | |
|---|---|---|
| Total Line Item Depreciation (Including Taxes) [4] | | 832.50 |
| Less Non - recoverable Depreciation (Including Taxes) [7] | | _____ |
| Subtotal | | 312.50 |
| General Contractor O&P on Depreciation | | 166.50 |
| Less General Contractor O&P on Non - recoverable Depreciation | | _____ |
| Subtotal | | _____ |
| Total Maximum Additional Amounts Available If Incurred [8] | | _____ |
| Total Amount of Claim If Incurred [9] | | _____ |

_____
Claim Representative

**ALL AMOUNTS PAYABLE ARE SUBJECT TO THE TERMS, CONDITIONS AND LIMITS OF YOUR POLICY.**

1. **Line Item Total** – Total value of all line items in the estimate plus possible adjustments for *labor minimums*. *Labor Minimum* is to cover a certain minimum number of hours for drive-time, set up time and applicable administrative costs and repairs.

2. **General Contractor's Overhead and Profit** – General contractor's charge for coordinating your repairs.

3. **Replacement Cost Value (RCV)** – Estimated cost to repair or replace damaged property.

4. **Depreciation** – The decrease in the value of property over a period of time due to wear, tear, condition, and obsolescence. A portion or all of this amount may be eligible for replacement cost benefits.

5. **Deductible** – The insurer will pay for losses, up to the policy limits, in excess of your applicable deductible.

6. **Net Actual Cash Value Payment (ACV)** – The repair or replacement cost of the damaged part of the property less *depreciation* and *deductible*.

7. **Non Recoverable Depreciation** – *Depreciation* applied to items that are not eligible for replacement cost benefits.

8. **Total Maximum Additional Amount if Incurred** – Total amount of recoverable depreciation after actual repair or replacement of the property.

9. **Total Amount of Claim if Incurred** – Total amount of the claim, including *net actual cash value payment and total maximum additional amount available if incurred*.

3

**State Farm**

JELLISON, DAVID                                                                                    53-364F-184

| | | | |
|---|---|---|---|
| Insured: | JELLISON, DAVID | Estimate: | 53-364F-184 |
| Property: | 16330 FM 1826 | Claim Number: | 53364F184 |
| | AUSTIN, TX 78737-8809 | Policy Number: | 83-32-6465-8 |
| Home: | 512-288-1263 | Price List: | TXAU28_NOV13 |
| Business: | 512-496-1051 | | Restoration/Service/Remodel |
| Type of Loss: | Water Damage | | |
| Deductible: | $4,040.00 | | |
| Date of Loss: | 10/31/2013 | | |

### Summary for Coverage A - Dwelling - 37 Water Damage and Freezing - RN

| | |
|---|---:|
| Line Item Total | 8,488.63 |
| Material Sales Tax | 332.32 |
| Cleaning Mtl Tax | 0.11 |
| Subtotal | 8,821.06 |
| General Contractor Overhead | 882.16 |
| General Contractor Profit | 882.16 |
| Cleaning Sales Tax | 6.84 |
| Replacement Cost Value (Including General Contractor Overhead and Profit) | 10,592.22 |
| Less Depreciation (Including Taxes) | (3,982.68) |
| Less General Contractor Overhead & Profit on Recoverable & Non-recoverable Depreciation | (796.58) |
| Less Deductible | (4,040.00) |
| Less Prior Claim Payment | (1,862.11) |
| Actual Cash Value Total Remaining | (89.15) |
| Net Actual Cash Value Payment | $0.00 |

### Maximum Additional Amounts Available If Incurred:

| | | | |
|---|---:|---:|---:|
| Total Line Item Depreciation (Including Taxes) | 3,982.68 | | |
| Less Actual Cash Value Total Remaining | (89.15) | | |
| Subtotal | 3,893.53 | | |
| General Contractor O&P on Depreciation | 796.58 | | |
| Replacement Cost Benefits | | 4,690.11 | |
| Total Remaining Maximum Additional Amount Available If Incurred | | | 4,690.11 |
| Total Amount of Claim If Incurred | | | $6,552.22 |

Santos, Gilbert
888-208-3017 x 2104832725
**ALL AMOUNTS PAYABLE ARE SUBJECT TO THE TERMS, CONDITIONS AND
LIMITS OF YOUR POLICY.**

SF-Jellison - 000322

4

 **StateFarm**

## Explanation of Building Replacement Cost Benefits
## Homeowner Policy
## Coverage A - Dwelling - 37 Water Damage and Freezing - RN

To:   Name:        JELLISON, DAVID
      Address:     16330 FM 1826
      City:        AUSTIN
      State/Zip:   TX, 78737-8809

Insured:          JELLISON, DAVID              Claim Number:    53364F184
Date of Loss:     10/31/2013                   Cause of Loss:   WATER

Your insurance policy provides replacement cost coverage for some or all of the loss or damage to your dwelling or structures. Replacement cost coverage pays the actual and necessary cost of repair or replacement, without a deduction for depreciation, subject to your policy's limit of liability. To receive replacement cost benefits you must:

1.  Complete the actual repair or replacement of the damaged part of the property within two years of the date of loss; and

2.  Notify us within 30 days after the work has been completed.

3.  Confirm completion of repair or replacement, by submitting invoices, receipts or other documentation to your agent or claim office.

Until these requirements have been satisfied, our payment(s) to you will be for the actual cash value of the damaged part of the property, which may include a deduction for depreciation.

Without waiving the above requirements, we will consider paying replacement cost benefits prior to actual repair or replacement if we determine repair or replacement costs will be incurred because repairs are substantially under way or you present a signed contract acceptable to us.

The estimate to repair or replace your damaged property is **$10,592.22**. The enclosed claim payment to you of **$0.00** is for the actual cash value of the damaged property at the time of loss, less any deductible that may apply. We determined the actual cash value by deducting depreciation from the estimated repair or replacement cost. Our estimate details the depreciation applied to your loss. Based on our estimate, the additional amount available to you for replacement cost benefits (recoverable depreciation) is **$4,690.11**.

If you cannot have the repairs completed for the repair/replacement cost estimated, please contact your claim representative prior to beginning repairs.

All policy provisions apply to your claim.

Date:    11/25/2013 3:28 PM                              120563.6  01-25-2010      Page: 4

SF-Jellison - 000323

5

**State Farm**

JELLISON, DAVID                                                                                      53-364F-184

**Roof**

| | | |
|---|---|---|
| 0.00 SF Walls | 0.00 SF Ceiling | 0.00 SF Walls & Ceiling |
| 0.00 SF Floor | 0.00 SF Short Wall | 0.00 LF Floor Perimeter |
| 0.00 SF Long Wall | | 0.00 LF Ceil. Perimeter |

| QUANTITY UNIT PRICE | TAX | GCO&P | RCV | DEPREC. | ACV |
|---|---|---|---|---|---|

THE INSPECTION REVEALED NO EVIDENCE OF WIND OR HAIL DAMAGE TO THE METAL ROOF.

| | QUANTITY UNIT PRICE | TAX | GCO&P | RCV | DEPREC. | ACV |
|---|---|---|---|---|---|---|
| Totals: Roof | | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |

**Main Level**



**kitchen/brkfst**                                                                                   **Height: 8'**

| | |
|---|---|
| 432.64 SF Walls | 240.76 SF Ceiling |
| 673.41 SF Walls & Ceiling | 224.54 SF Floor |
| 64.42 LF Ceil. Perimeter | 50.91 LF Floor Perimeter |

| Missing Wall | 3' 11" X 8' | Opens into DINING_ROOM |
|---|---|---|
| Door | 4' X 6' 8" | Opens into UTILITY_ROOM |
| Door | 7' 6" X 6' 8" | Opens into Exterior |

| | QUANTITY | UNIT PRICE | TAX | GCO&P | RCV | DEPREC. | ACV |
|---|---|---|---|---|---|---|---|
| 1. Detach & Reset Refrigerator - side by side - 22 to 25 cf | | | | | | | |
| | 1.00 EA | 22.74 | 0.00 | 4.54 | 27.28 | | 27.28 |
| 2. Detach & Reset Ceiling fan without light | | | | | | | |
| | 1.00 EA | 154.03 | 0.00 | 30.80 | 184.83 | | 184.83 |
| 3. Window Treatments Installer - per hour | | | | | | | |
| | 1.00 HR | 40.21 | 0.00 | 8.04 | 48.25 | | 48.25 |
| detach and reset window treatment & hardware | | | | | | | |
| 4. DRYWALL | | | | | | | |
| | 95.00 EA | 0.00 | 0.00 | 0.00 | 0.00 | | 0.00 |
| 5. R&R Batt insulation - 8" - R25 - unfaced batt | | | | | | | |
| | 95.00 SF | 1.25 | 6.35 | 25.04 | 150.14 | | 150.14 |
| 6. Detach & Reset Heat/AC register - Mechanically attached | | | | | | | |
| | 1.00 EA | 10.87 | 0.00 | 2.18 | 13.05 | | 13.05 |

Date:    11/25/2013 3:28 PM                                                                          Page: 5

6

**State Farm**

JELLISON, DAVID                                                        53-364F-184

**CONTINUED - kitchen/brkfst**

| | QUANTITY UNIT PRICE | | TAX | GCO&P | RCV | DEPREC. | ACV |
|---|---|---|---|---|---|---|---|
| 7. Acoustic ceiling (popcorn) texture | | | | | | | |
| | 120.00 SF | 0.79 | 1.68 | 19.30 | 115.78 | (22.39) | 93.39 |
| 8. Seal the surface area w/latex based stain blocker - one coat | | | | | | | |
| | 120.00 SF | 0.37 | 0.69 | 9.02 | 54.11 | | 54.11 |
| 9. Paint acoustic ceiling (popcorn) texture - 1 coat | | | | | | | |
| | 240.76 SF | 0.42 | 3.18 | 20.86 | 125.16 | (58.41) | 66.75 |
| 10. Stain & finish half louvered door slab only - (per side) | | | | | | | |
| | 4.00 EA | 37.52 | 2.71 | 30.56 | 183.35 | (146.67) | 36.68 |
| 11. Stain & finish door/window trim & jamb (per side) | | | | | | | |
| | 1.00 EA | 23.52 | 0.37 | 4.78 | 28.67 | (22.94) | 5.73 |
| 12. R&R Baseboard - 2 1/4" | | | | | | | |
| | 50.91 LF | 1.89 | 2.52 | 19.74 | 118.48 | | 118.48 |
| 13. Stain & finish baseboard | | | | | | | |
| | 50.91 LF | 0.91 | 0.63 | 9.38 | 56.34 | (45.06) | 11.28 |
| 14. R&R Corner trim | | | | | | | |
| | 16.00 LF | 1.38 | 0.98 | 4.62 | 27.68 | | 27.68 |
| 15. Stain & finish corner trim | | | | | | | |
| | 16.00 LF | 0.90 | 0.20 | 2.92 | 17.52 | (14.02) | 3.50 |
| 16. R&R Base shoe - stain grade | | | | | | | |
| | 30.00 LF | 1.08 | 1.24 | 6.72 | 40.36 | | 40.36 |
| 17. Stain & finish base shoe or quarter round | | | | | | | |
| | 30.00 LF | 0.73 | 0.35 | 4.46 | 26.71 | (21.36) | 5.35 |
| 18. Wallpaper border | | | | | | | |
| | 64.42 LF | 2.22 | 7.65 | 30.14 | 180.80 | (144.65) | 36.15 |
| 19. R&R Wallpaper | | | | | | | |
| | 432.64 SF | 2.30 | 39.62 | 206.94 | 1,241.63 | (993.32) | 248.31 |
| 20. Remove Vinyl floor covering (sheet goods) | | | | | | | |
| | 224.54 SF | 0.56 | 0.00 | 25.14 | 150.88 | | 150.88 |

SF-Jellison - 000325

7

**State Farm**

JELLISON, DAVID                                                                53-364F-184

**CONTINUED - kitchen/brkfst**

| | QUANTITY | UNIT PRICE | TAX | GCO&P | RCV | DEPREC. | ACV |
|---|---|---|---|---|---|---|---|
| 21. Vinyl floor - per specs from independent vinyl analysis | | | | | | | |
| | 346.67 SF | 4.47 * | 108.40 | 331.60 | 1,989.61 | (1,153.96) | 835.65 |
| **Totals: kitchen/brkfst** | | | 176.57 | 796.78 | 4,780.63 | 2,622.78 | 2,157.85 |



| **Utility Room** | | | | | **Height: 8'** |
|---|---|---|---|---|---|
| | 133.33 SF Walls | | | 19.56 SF Ceiling | |
| | 152.89 SF Walls & Ceiling | | | 19.56 SF Floor | |
| | 20.00 LF Ceil. Perimeter | | | 16.00 LF Floor Perimeter | |

**Door**                          4' X 6' 8"                    Opens into KITCHEN_BRKF

| | QUANTITY | UNIT PRICE | TAX | GCO&P | RCV | DEPREC. | ACV |
|---|---|---|---|---|---|---|---|
| 22. R&R Water heater - 30 gallon - Electric - 6 yr | | | | | | | |
| | 1.00 EA | 591.71 | 25.10 | 123.36 | 740.17 | | 740.17 |
| 23. R&R Light fixture | | | | | | | |
| | 1.00 EA | 56.77 | 2.18 | 11.80 | 70.75 | (56.60) | 14.15 |
| 24. R&R Baseboard - 2 1/4" | | | | | | | |
| | 16.00 LF | 1.89 | 0.79 | 6.22 | 37.25 | | 37.25 |
| 25. R&R 1/2" drywall - hung, taped, ready for texture | | | | | | | |
| | 24.56 SF | 1.63 | 0.73 | 8.16 | 48.93 | | 48.93 |
| 26. R&R Batt insulation - 8" - R25 - unfaced batt | | | | | | | |
| | 19.56 SF | 1.25 | 1.31 | 5.14 | 30.90 | | 30.90 |
| 27. Seal more than the ceiling w/latex based stain blocker - one coat | | | | | | | |
| | 24.56 SF | 0.37 | 0.14 | 1.84 | 11.07 | | 11.07 |
| 28. Acoustic ceiling (popcorn) texture | | | | | | | |
| | 19.56 SF | 0.79 | 0.27 | 3.16 | 18.88 | (3.66) | 15.22 |
| 29. Paint the walls - one coat | | | | | | | |
| | 133.33 SF | 0.41 | 1.10 | 11.16 | 66.93 | (31.22) | 35.71 |

Date:    11/25/2013 3:28 PM                                                    Page: 7

SF-Jellison - 000326

8

**State Farm**

JELLISON, DAVID                                                                                53-364F-184

**CONTINUED - Utility Room**

|  | QUANTITY | UNIT PRICE | TAX | GCO&P | RCV | DEPREC. | ACV |
|---|---|---|---|---|---|---|---|
| 30. Stain & finish baseboard |  |  |  |  |  |  |  |
|  | 16.00 LF | 0.91 | 0.20 | 2.96 | 17.72 | (14.17) | 3.55 |
| 31. Seal & paint door or window opening (per side) |  |  |  |  |  |  |  |
|  | 1.00 EA | 18.46 | 0.31 | 3.76 | 22.53 | (18.02) | 4.51 |
| 32. Remove Vinyl floor covering (sheet goods) |  |  |  |  |  |  |  |
|  | 19.56 SF | 0.56 | 0.00 | 2.20 | 13.15 |  | 13.15 |
| 33. Vinyl floor - per specs from independent vinyl analysis |  |  |  |  |  |  |  |
|  | 67.42 SF | 4.47 * | 21.08 | 64.50 | 386.95 | (224.42) | 162.53 |
| **Totals: Utility Room** |  |  | **53.21** | **244.26** | **1,465.23** | **348.09** | **1,117.14** |



| Dining Room | | Height: 10' |
|---|---|---|
| 111.25 SF Walls | 81.30 SF Ceiling | |
| 192.55 SF Walls & Ceiling | 81.30 SF Floor | |
| 30.92 LF Ceil. Perimeter | 9.42 LF Floor Perimeter | |

| **Missing Wall** | 3' 11" X 10' | **Opens into KITCHEN_BRKF** |
|---|---|---|
| **Missing Wall** | 3' X 10' | **Opens into HALLWAY** |
| **Missing Wall - Goes to Floor** | 9' 3" X 9' | **Opens into Exterior** |

| Subroom: Room3 (1) | | Height: Sloped |
|---|---|---|
| 137.52 SF Walls | 66.29 SF Ceiling | |
| 203.81 SF Walls & Ceiling | 61.25 SF Floor | |
| 35.32 LF Ceil. Perimeter | 14.50 LF Floor Perimeter | |

| **Door** | 7' 9" X 6' 8" | **Opens into Exterior** |
|---|---|---|
| **Missing Wall** | 12' 3" X 8' | **Opens into DINING_ROOM** |

|  | QUANTITY | UNIT PRICE | TAX | GCO&P | RCV | DEPREC. | ACV |
|---|---|---|---|---|---|---|---|

SF-Jellison - 000327

9

**State Farm**

JELLISON, DAVID                                                                    53-364F-184

**CONTINUED - Dining Room**

| | QUANTITY UNIT PRICE | TAX | GCO&P | RCV | DEPREC. | ACV |
|---|---|---|---|---|---|---|
| 34. Window Treatments Installer - per hour | | | | | | |
| | 1.50 HR      40.21 | 0.00 | 12.06 | 72.38 | | 72.38 |
| allowance to manipulate window treatment and hardware | | | | | | |
| 35. Detach & Reset Light fixture - High grade | | | | | | |
| | 1.00 EA      39.24 | 0.00 | 7.84 | 47.08 | | 47.08 |
| 36. R&R Crown molding - 3 1/4" stain grade | | | | | | |
| | 49.68 LF      5.43 | 10.57 | 56.08 | 336.41 | | 336.41 |
| 37. Stain & finish crown molding | | | | | | |
| | 49.68 LF      0.96 | 0.61 | 9.66 | 57.96 | | 57.96 |
| 38. R&R T & G paneling - v-joint paneling (unfinished) | | | | | | |
| | 147.59 SF      3.97 | 24.47 | 122.10 | 732.51 | (141.63) | 590.88 |
| 39. Stain & finish paneling | | | | | | |
| | 147.59 SF      0.96 | 3.04 | 28.94 | 173.67 | (138.94) | 34.73 |
| Ceiling | | | | | | |
| 40. R&R Baseboard - 2 1/4" stain grade | | | | | | |
| | 23.92 LF      2.54 | 2.35 | 12.62 | 75.73 | | 75.73 |
| 41. R&R 1/2" drywall - hung, taped, ready for texture | | | | | | |
| | 163.59 SF      1.63 | 4.86 | 54.30 | 325.81 | | 325.81 |
| 42. R&R Batt insulation - 8" - R25 - unfaced batt | | | | | | |
| | 147.59 SF      1.25 | 9.86 | 38.88 | 233.22 | | 233.22 |
| 43. Seal the surface area w/latex based stain blocker - one coat | | | | | | |
| | 16.00 SF      0.37 | 0.09 | 1.20 | 7.21 | | 7.21 |
| 44. Paint the surface area - one coat | | | | | | |
| | 118.17 SF      0.41 | 0.98 | 9.90 | 59.33 | (27.69) | 31.64 |
| 45. R&R Wallpaper | | | | | | |
| | 112.67 SF      2.30 | 10.32 | 53.88 | 323.34 | (258.67) | 64.67 |
| 46. Remove Carpet - per specs from independent carpet analysis | | | | | | |
| | 142.55 SF      0.17 | 0.00 | 4.84 | 29.07 | | 29.07 |

Date:    11/25/2013 3:28 PM                                                    Page: 9

SF-Jellison - 000328

10

**State Farm**

JELLISON, DAVID                                                                                      53-364F-184

CONTINUED - Dining Room

| | QUANTITY | UNIT PRICE | | TAX | GCO&P | RCV | DEPREC. | ACV |
|---|---|---|---|---|---|---|---|---|
| 47. Carpet - per specs from independent carpet analysis | | | | | | | | |
| | 170.17 SF | 0.49 | | 0.56 | 16.80 | 100.74 | (80.59) | 20.15 |
| 48. R&R Carpet pad | | | | | | | | |
| | 142.55 SF | 0.63 | | 5.76 | 19.12 | 114.68 | (91.75) | 22.93 |
| **Totals: Dining Room** | | | | 73.47 | 448.22 | 2,689.14 | 739.27 | 1,949.87 |



| | | | Hallway | | | | Height: 10' |
|---|---|---|---|---|---|---|---|
| | | | 67.58 SF Walls | | 30.38 SF Ceiling | | |
| | | | 97.97 SF Walls & Ceiling | | 30.38 SF Floor | | |
| | | | 12.58 LF Ceil. Perimeter | | 5.75 LF Floor Perimeter | | |

| | | |
|---|---|---|
| **Missing Wall** | 4' 8" X 10' | Opens into LIVING_ROOM |
| **Missing Wall** | 3' 11" X 10' | Opens into ENTRY_FOYER |
| **Missing Wall** | 3' X 10' | Opens into DINING_ROOM |
| **Missing Wall - Goes to Floor** | 3' 7" X 9' | Opens into Exterior |



| | | | Subroom: Hall offset (1) | | | | Height: 8' |
|---|---|---|---|---|---|---|---|
| | | | 224.67 SF Walls | | 40.08 SF Ceiling | | |
| | | | 264.75 SF Walls & Ceiling | | 40.08 SF Floor | | |
| | | | 31.33 LF Ceil. Perimeter | | 28.08 LF Floor Perimeter | | |

| | | |
|---|---|---|
| **Missing Wall** | 3' 3" X 8' | Opens into HALLWAY |

| | QUANTITY | UNIT PRICE | | TAX | GCO&P | RCV | DEPREC. | ACV |
|---|---|---|---|---|---|---|---|---|
| 49. Strip & refinish paneling | | | | | | | | |
| | 70.47 SF | 1.61 | | 3.02 | 23.30 | 139.78 | (111.83) | 27.95 |
| Ceiling | | | | | | | | |
| 50. Remove Carpet - per specs from independent carpet analysis | | | | | | | | |
| | 70.47 SF | 0.17 | | 0.00 | 2.40 | 14.38 | | 14.38 |

Date:      11/25/2013 3:28 PM                                                                        Page: 10

SF-Jellison - 000329

11

**State Farm**

JELLISON, DAVID                                                                          53-364F-184

**CONTINUED - Hallway**

| | QUANTITY | UNIT PRICE | TAX | GCO&P | RCV | DEPREC. | ACV |
|---|---|---|---|---|---|---|---|
| 51. Carpet - per specs from independent carpet analysis | | | | | | | |
| | 98.42 SF | 0.49 | 0.33 | 9.70 | 58.26 | (46.60) | 11.66 |
| **Totals: Hallway** | | | **3.35** | **35.40** | **212.42** | **158.43** | **53.99** |



**Living Room**                                                                    **Height: 10'**

| | |
|---|---|
| 115.92 SF Walls | 145.61 SF Ceiling |
| 261.53 SF Walls & Ceiling | 145.61 SF Floor |
| 19.92 LF Ceil. Perimeter | 10.67 LF Floor Perimeter |

| | | |
|---|---|---|
| **Missing Wall** | 9' 8" X 10' | Opens into ENTRY_FOYER |
| **Missing Wall** | 4' 8" X 10' | Opens into HALLWAY |
| **Missing Wall - Goes to Floor** | 9' 3" X 9' | Opens into Exterior |

**Subroom: Room7 (1)**                                                    **Height: Sloped**

| | |
|---|---|
| 166.88 SF Walls | 81.62 SF Ceiling |
| 248.50 SF Walls & Ceiling | 75.42 SF Floor |
| 20.49 LF Ceil. Perimeter | 20.08 LF Floor Perimeter |

| | | |
|---|---|---|
| **Missing Wall** | 5' X 8' | Opens into ROOM9 |
| **Missing Wall** | 15' 1" X 8' | Opens into LIVING_ROOM |

| | QUANTITY | UNIT PRICE | TAX | GCO&P | RCV | DEPREC. | ACV |
|---|---|---|---|---|---|---|---|
| 52. Mask and prep for paint - tape only (per LF) | | | | | | | |
| | 40.41 LF | 0.33 | 0.13 | 2.68 | 16.15 | | 16.15 |
| 53. Mask and cover large light fixture | | | | | | | |
| | 1.00 EA | 11.30 | 0.06 | 2.28 | 13.64 | | 13.64 |
| 54. Strip & refinish paneling | | | | | | | |
| | 227.23 SF | 1.61 | 9.75 | 75.12 | 450.71 | (360.57) | 90.14 |

Ceiling

Date:     11/25/2013 3:28 PM                                                    Page: 11

SF-Jellison - 000330

12

**State Farm**

JELLISON, DAVID                                                           53-364F-184

**CONTINUED - Living Room**

| | QUANTITY | UNIT PRICE | TAX | GCO&P | RCV | DEPREC. | ACV |
|---|---|---|---|---|---|---|---|
| 55. Remove Carpet - per specs from independent carpet analysis | | | | | | | |
| | 221.03 SF | 0.17 | 0.00 | 7.52 | 45.10 | | 45.10 |
| 56. Carpet - per specs from independent carpet analysis | | | | | | | |
| | 249.83 SF | 0.49 | 0.82 | 24.64 | 147.88 | (118.32) | 29.56 |
| 57. R&R Carpet cove (wall wrap) - 4" | | | | | | | |
| | 30.75 LF | 4.22 | 4.01 | 26.74 | 160.52 | (128.40) | 32.12 |
| **Totals: Living Room** | | | **14.77** | **138.98** | **834.00** | **607.29** | **226.71** |



**Entry/Foyer**                                                          **Height: 10'**

  98.33 SF Walls        37.86 SF Ceiling
 136.19 SF Walls & Ceiling    37.86 SF Floor
   9.83 LF Ceil. Perimeter     9.83 LF Floor Perimeter

**Missing Wall**        3' 11" X 10'      Opens into HALLWAY
**Missing Wall**        9' 8" X 10'       Opens into LIVING_ROOM

**Subroom: Room9 (1)**             **Height: Sloped**

  76.78 SF Walls        21.19 SF Ceiling
  97.97 SF Walls & Ceiling    19.58 SF Floor
   9.33 LF Ceil. Perimeter     8.92 LF Floor Perimeter

**Missing Wall**        3' 11" X 8'       Opens into ENTRY_FOYER
**Missing Wall**        5' X 8'         Opens into ROOM7

| | QUANTITY | UNIT PRICE | TAX | GCO&P | RCV | DEPREC. | ACV |
|---|---|---|---|---|---|---|---|
| 58. Mask and prep for paint - tape only (per LF) | | | | | | | |
| | 19.16 LF | 0.33 | 0.06 | 1.28 | 7.66 | | 7.66 |
| 59. Strip & refinish paneling | | | | | | | |
| | 59.05 SF | 1.61 | 2.53 | 19.52 | 117.12 | (93.70) | 23.42 |

Date:    11/25/2013 3:28 PM             Page: 12

13

**State Farm**

JELLISON, DAVID                                                                                    53-364F-184

CONTINUED - Entry/Foyer

| | QUANTITY | UNIT PRICE | TAX | GCO&P | RCV | DEPREC. | ACV |
|---|---|---|---|---|---|---|---|
| Ceiling | | | | | | | |
| **Totals: Entry/Foyer** | | | 2.59 | 20.80 | 124.78 | 93.70 | 31.08 |



| **Bedroom** | | | | | | **Height: 8'** |
|---|---|---|---|---|---|---|
| | 348.00 SF Walls | | | 137.00 SF Ceiling | | |
| | 485.00 SF Walls & Ceiling | | | 137.00 SF Floor | | |
| | 46.83 LF Ceil. Perimeter | | | 42.83 LF Floor Perimeter | | |

**Door**                                          4' X 6' 8"                          **Opens into Exterior**

| | QUANTITY | UNIT PRICE | TAX | GCO&P | RCV | DEPREC. | ACV |
|---|---|---|---|---|---|---|---|
| 60. R&R Wallpaper | | | | | | | |
| | 91.33 SF | 2.30 | 8.36 | 43.70 | 262.12 | (209.70) | 52.42 |
| 61. Clean and deodorize carpet | | | | | | | |
| | 137.00 SF | 0.33 | 4.60 | 9.06 | 58.87 | | 58.87 |
| **Totals: Bedroom** | | | 12.96 | 52.76 | 320.99 | 209.70 | 111.29 |

**Debris Removal**

| | | | | | |
|---|---|---|---|---|---|
| 0.00 SF Walls | | 0.00 SF Ceiling | | 0.00 SF Walls & Ceiling | |
| 0.00 SF Floor | | 0.00 SF Short Wall | | 0.00 LF Floor Perimeter | |
| 0.00 SF Long Wall | | | | 0.00 LF Ceil. Perimeter | |

| | QUANTITY | UNIT PRICE | TAX | GCO&P | RCV | DEPREC. | ACV |
|---|---|---|---|---|---|---|---|
| 62. Haul debris - per pickup truck load - including dump fees | | | | | | | |
| | 1.00 EA | 93.87 | 0.00 | 18.78 | 112.65 | | 112.65 |
| **Totals: Debris Removal** | | | 0.00 | 18.78 | 112.65 | 0.00 | 112.65 |

Area Totals: Main Level

Date:   11/25/2013 3:28 PM                                                              Page: 13

SF-Jellison - 000332

14

**State Farm**

JELLISON, DAVID                                                                                        53-364F-184

| | | |
|---|---|---|
| 1,912.91 SF Walls | 901.65 SF Ceiling | 2,814.56 SF Walls and Ceiling |
| 872.58 SF Floor | 955.79 Total Area | 216.99 LF Floor Perimeter |
| 872.58 Floor Area | 176.17 Exterior Perimeter | 300.98 LF Ceil. Perimeter |
| 1,335.10 Exterior Wall Area | of Walls | 1,912.91 Interior Wall Area |

| | | | | | |
|---|---|---|---|---|---|
| **Total: Main Level** | **336.92** | **1,755.98** | **10,539.84** | **4,779.26** | **5,760.58** |

**Labor Minimums Applied**

| | QUANTITY | UNIT PRICE | TAX | GCO&P | RCV | DEPREC. | ACV |
|---|---|---|---|---|---|---|---|
| * 63. General labor - labor minimum | | | | | | | |
| | 1.00 EA | 14.77 | 0.00 | 2.96 | 17.73 | | 17.73 |
| * 64. Electrical labor minimum | | | | | | | |
| | 1.00 EA | 3.21 | 0.00 | 0.64 | 3.85 | | 3.85 |
| * 65. Cleaning labor minimum | | | | | | | |
| | 1.00 EA | 23.71 | 2.35 | 4.74 | 30.80 | | 30.80 |
| **Totals: Labor Minimums Applied** | | | **2.35** | **8.34** | **52.38** | **0.00** | **52.38** |
| **Line Item Totals: 53-364F-184** | | | **339.27** | **1,764.32** | **10,592.22** | **4,779.26** | **5,812.96** |

**Grand Total Areas:**

| | | |
|---|---|---|
| 1,912.91 SF Walls | 901.65 SF Ceiling | 2,814.56 SF Walls and Ceiling |
| 872.58 SF Floor | | 216.99 LF Floor Perimeter |
| | | 300.98 LF Ceil. Perimeter |
| 872.58 Floor Area | 955.79 Total Area | 1,912.91 Interior Wall Area |
| 1,335.10 Exterior Wall Area | 176.17 Exterior Perimeter of Walls | |

SF-Jellison - 000333

15

## Trade Summary

Includes all applicable Tax, General Contractor O&P, and Labor Minimums

| DESCRIPTION | LINE ITEM QTY | REPL. COST TOTAL | GCO&P | ACV | NON-REC. DEPREC. | MAX ADDL. AMT AVAIL. |
|---|---|---|---|---|---|---|
| **APP     APPLIANCES** | | | | | | |
| Detach & Reset Refrigerator - side by side - 22 to 25 cf | 1.00 EA | $27.28 | $4.54 | $27.28 | $0.00 | $0.00 |
| **TOTAL APPLIANCES** | | **$27.28** | **$4.54** | **$27.28** | **$0.00** | **$0.00** |
| **CLN     CLEANING** | | | | | | |
| Clean and deodorize carpet | 137.00 SF | $58.87 | $9.06 | $58.87 | $0.00 | $0.00 |
| Cleaning labor minimum | 1.00 EA | $30.80 | $4.74 | $30.80 | $0.00 | $0.00 |
| **TOTAL CLEANING** | | **$89.67** | **$13.80** | **$89.67** | **$0.00** | **$0.00** |
| **DMO     GENERAL DEMOLITION** | | | | | | |
| Haul debris - per pickup truck load - including dump fees | 1.00 EA | $112.65 | $18.78 | $112.65 | $0.00 | $0.00 |
| **TOTAL GENERAL DEMOLITION** | | **$112.65** | **$18.78** | **$112.65** | **$0.00** | **$0.00** |
| **DRY     DRYWALL** | | | | | | |
| R&R 1/2" drywall - hung, taped, ready for texture | 188.15 SF | $374.74 | $62.46 | $374.74 | $0.00 | $0.00 |
| DRYWALL | 95.00 EA | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Acoustic ceiling (popcorn) texture | 139.56 SF | $134.66 | $22.46 | $108.61 | $0.00 | $26.05 |
| **TOTAL DRYWALL** | | **$509.40** | **$84.92** | **$483.35** | **$0.00** | **$26.05** |
| **ELE     ELECTRICAL** | | | | | | |
| Electrical labor minimum | 1.00 EA | $3.85 | $0.64 | $3.85 | $0.00 | $0.00 |
| **TOTAL ELECTRICAL** | | **$3.85** | **$0.64** | **$3.85** | **$0.00** | **$0.00** |
| **FCC     FLOOR COVERING - CARPET** | | | | | | |
| R&R Carpet cove (wall wrap) - 4" | 30.75 LF | $160.52 | $26.74 | $32.12 | $0.00 | $128.40 |
| Carpet - per specs from independent carpet analysis | 518.42 SF | $306.88 | $51.14 | $61.37 | $0.00 | $245.51 |
| Remove Carpet - per specs from independent carpet analysis | 434.05 SF | $88.55 | $14.76 | $88.55 | $0.00 | $0.00 |
| R&R Carpet pad | 142.55 SF | $114.68 | $19.12 | $22.93 | $0.00 | $91.75 |
| **TOTAL FLOOR COVERING - CARPET** | | **$670.63** | **$111.76** | **$204.97** | **$0.00** | **$465.66** |
| **FCV     FLOOR COVERING - VINYL** | | | | | | |
| Remove Vinyl floor covering (sheet goods) | 244.10 SF | $164.03 | $27.34 | $164.03 | $0.00 | $0.00 |
| Vinyl floor - per specs from independent vinyl analysis | 414.09 SF | $2,376.56 | $396.10 | $998.18 | $0.00 | $1,378.38 |
| **TOTAL FLOOR COVERING - VINYL** | | **$2,540.59** | **$423.44** | **$1,162.21** | **$0.00** | **$1,378.38** |
| **FNC     FINISH CARPENTRY / TRIMWORK** | | | | | | |

Note:  Slight variances may be found within report sections due to rounding

Date:     11/25/2013 3:28 PM

SF-Jellison - 000334

16

## Trade Summary

Includes all applicable Tax, General Contractor O&P, and Labor Minimums

| DESCRIPTION | LINE ITEM QTY | REPL. COST TOTAL | GCO&P | ACV | NON-REC. DEPREC. | MAX ADDL. AMT AVAIL. |
|---|---|---|---|---|---|---|
| **FNC      FINISH CARPENTRY / TRIMWORK** | | | | | | |
| R&R Baseboard - 2 1/4" | 66.91 LF | $155.73 | $25.96 | $155.73 | $0.00 | $0.00 |
| R&R Baseboard - 2 1/4" stain grade | 23.92 LF | $75.73 | $12.62 | $75.73 | $0.00 | $0.00 |
| R&R Corner trim | 16.00 LF | $27.68 | $4.62 | $27.68 | $0.00 | $0.00 |
| R&R Crown molding - 3 1/4" stain grade | 49.68 LF | $336.41 | $56.08 | $336.41 | $0.00 | $0.00 |
| R&R Base shoe - stain grade | 30.00 LF | $40.36 | $6.72 | $40.36 | $0.00 | $0.00 |
| **TOTAL FINISH CARPENTRY / TRIMWORK** | | **$635.91** | **$106.00** | **$635.91** | **$0.00** | **$0.00** |
| **HVC      HEAT,  VENT & AIR CONDITIONING** | | | | | | |
| Detach & Reset Heat/AC register - Mechanically attached | 1.00 EA | $13.05 | $2.18 | $13.05 | $0.00 | $0.00 |
| **TOTAL HEAT,  VENT & AIR CONDITIONING** | | **$13.05** | **$2.18** | **$13.05** | **$0.00** | **$0.00** |
| **INS      INSULATION** | | | | | | |
| R&R Batt insulation - 8" - R25 - unfaced batt | 262.15 SF | $414.26 | $69.06 | $414.26 | $0.00 | $0.00 |
| **TOTAL INSULATION** | | **$414.26** | **$69.06** | **$414.26** | **$0.00** | **$0.00** |
| **LAB      LABOR ONLY** | | | | | | |
| General labor - labor minimum | 1.00 EA | $17.73 | $2.96 | $17.73 | $0.00 | $0.00 |
| **TOTAL LABOR ONLY** | | **$17.73** | **$2.96** | **$17.73** | **$0.00** | **$0.00** |
| **LIT      LIGHT FIXTURES** | | | | | | |
| R&R Light fixture | 1.00 EA | $70.75 | $11.80 | $14.15 | $0.00 | $56.60 |
| Detach & Reset Light fixture - High grade | 1.00 EA | $47.08 | $7.84 | $47.08 | $0.00 | $0.00 |
| Detach & Reset Ceiling fan without light | 1.00 EA | $184.83 | $30.80 | $184.83 | $0.00 | $0.00 |
| **TOTAL LIGHT FIXTURES** | | **$302.66** | **$50.44** | **$246.06** | **$0.00** | **$56.60** |
| **PLM      PLUMBING** | | | | | | |
| R&R Water heater - 30 gallon - Electric - 6 yr | 1.00 EA | $740.17 | $123.36 | $740.17 | $0.00 | $0.00 |
| **TOTAL PLUMBING** | | **$740.17** | **$123.36** | **$740.17** | **$0.00** | **$0.00** |
| **PNL      PANELING & WOOD WALL FINISHES** | | | | | | |
| R&R T & G paneling - v-joint paneling (unfinished) | 147.59 SF | $732.51 | $122.10 | $590.88 | $0.00 | $141.63 |
| **TOTAL PANELING & WOOD WALL FINISHES** | | **$732.51** | **$122.10** | **$590.88** | **$0.00** | **$141.63** |
| **PNT      PAINTING** | | | | | | |
| Paint acoustic ceiling (popcorn) texture - 1 coat | 240.76 SF | $125.16 | $20.86 | $66.75 | $0.00 | $58.41 |
| Stain & finish baseboard | 66.91 LF | $74.06 | $12.34 | $14.83 | $0.00 | $59.23 |
| Stain & finish corner trim | 16.00 LF | $17.52 | $2.92 | $3.50 | $0.00 | $14.02 |

Note:  Slight variances may be found within report sections due to rounding

Date:     11/25/2013 3:28 PM

SF-Jellison - 000335

17

## Trade Summary

Includes all applicable Tax, General Contractor O&P, and Labor Minimums

| DESCRIPTION | LINE ITEM QTY | REPL. COST TOTAL | GCO&P | ACV | NON-REC. DEPREC. | MAX ADDL. AMT AVAIL. |
|---|---|---|---|---|---|---|
| **PNT     PAINTING** | | | | | | |
| Stain & finish crown molding | 49.68 LF | $57.96 | $9.66 | $57.96 | $0.00 | $0.00 |
| Stain & finish door/window trim & jamb (per side) | 1.00 EA | $28.67 | $4.78 | $5.73 | $0.00 | $22.94 |
| Stain & finish half louvered door slab only - (per side) | 4.00 EA | $183.35 | $30.56 | $36.68 | $0.00 | $146.67 |
| Mask and cover large light fixture | 1.00 EA | $13.64 | $2.28 | $13.64 | $0.00 | $0.00 |
| Mask and prep for paint - tape only (per LF) | 59.57 LF | $23.81 | $3.96 | $23.81 | $0.00 | $0.00 |
| Seal & paint door or window opening (per side) | 1.00 EA | $22.53 | $3.76 | $4.51 | $0.00 | $18.02 |
| Paint  - one coat | 251.50 SF | $126.26 | $21.06 | $67.35 | $0.00 | $58.91 |
| Stain & finish paneling | 147.59 SF | $173.67 | $28.94 | $34.73 | $0.00 | $138.94 |
| Strip & refinish paneling | 356.75 SF | $707.61 | $117.94 | $141.51 | $0.00 | $566.10 |
| Seal  w/latex based stain blocker - one coat | 160.56 SF | $72.39 | $12.06 | $72.39 | $0.00 | $0.00 |
| Stain & finish base shoe or quarter round | 30.00 LF | $26.71 | $4.46 | $5.35 | $0.00 | $21.36 |
| **TOTAL PAINTING** | | **$1,653.34** | **$275.58** | **$548.74** | **$0.00** | **$1,104.60** |
| **WDT     WINDOW TREATMENT** | | | | | | |
| Window Treatments Installer - per hour | 2.50 HR | $120.63 | $20.10 | $120.63 | $0.00 | $0.00 |
| **TOTAL WINDOW TREATMENT** | | **$120.63** | **$20.10** | **$120.63** | **$0.00** | **$0.00** |
| **WPR     WALLPAPER** | | | | | | |
| R&R Wallpaper | 636.64 SF | $1,827.09 | $304.52 | $365.40 | $0.00 | $1,461.69 |
| Wallpaper border | 64.42 LF | $180.80 | $30.14 | $36.15 | $0.00 | $144.65 |
| **TOTAL WALLPAPER** | | **$2,007.89** | **$334.66** | **$401.55** | **$0.00** | **$1,606.34** |
| **TOTALS** | | **$10,592.22** | **$1,764.32** | **$5,812.96** | **$0.00** | **$4,779.26** |

Note:  Slight variances may be found within report sections due to rounding

Date:     11/25/2013 3:28 PM

SF-Jellison - 000336



Main Level

Page: 18

SF-Jellison - 000337

18

Main Level

# EXHIBIT B-3

*Providing Insurance and Financial Services*
*Home Office, Bloomington, IL*



June 08, 2015

The Weinholz Law Firm
13501 Galleria Cir Ste W270
Bee Cave TX 78738-7033

**State Farm Claims**
PO Box 106169
Atlanta GA 30348-6169

RE:   Claim Number:    53-364F-184
      Date of Loss:      October 31, 2013
      Our Insured:       David S Jellison
      Policy Number:    833264658

To Whom It May Concern:

Enclosed is a payment in the amount of $ 7,337.57 which represents the Net Actual Cash Value
Payment of $5,941.67 for structure repairs and $1,395.90 which represents the applicable
statutory interest owed.

If you have questions or need assistance, please call us at (844) 458-4300 Ext. 9726572983.

Sincerely,

Jay Vath
Claim Specialist
(844) 458-4300 Ext. 9726572983
Fax: (844) 236-3646

State Farm Lloyds

Enclosure(s):  Repair estimate, draft

1

JELLISON, DAVID                                                                                       53-364F-184



**State Farm**
**PO Box 661044**
**Dallas, TX 75266-1044**
**888-208-3017**
**888-208-3019 fax**

# Structural Damage Claim Policy

When you have a covered structural damage claim to your real property, you should know:

- We want you to receive quality repair work to restore the damages to your property.

- We will provide you with a detailed estimate of the scope of the damage and costs of repairs. Should the contractor you select have questions concerning our estimate, they should contact your claim representative directly.

- Depending upon the complexity of your repair, our estimate may or may not include an allowance for general contractor's overhead and profit. If you have questions regarding general contractor's overhead and profit and whether general contractor services are appropriate for your loss, please contact your claim representative before proceeding with repairs.

- There may be building codes, ordinances, laws, or regulations that affect the repairs of your property. These items may or may not be covered by your policy. Please contact your claim representative if you have any questions regarding coverage which may be available under your policy.

- If you select a contractor whose estimate is the same as or lower than our estimate, based on the same scope of damages, we will pay based upon their estimate. If your contractor's estimate is higher than ours, you should contact your claim representative prior to beginning repairs.

- State Farm® cannot authorize any contractor to proceed with work on your property. Repairs should proceed only with your authorization.

- State Farm does not guarantee the quality of the workmanship of any contractor or guarantee that the work will be accomplished within any specific time frame.

- It is understood that the contractor is hired by you, our insured, and that they work for you - not State Farm.

If you have any questions or need additional information regarding your claim, please contact your claim representative immediately.

Date:   6/1/2015 3:06 PM                                    132214.1  06-18-2009      Page: 1

2

53-364F-184

 **StateFarm®**   ## Building Estimate Summary Guide

**This summary guide is based on a sample estimate and is provided for reference only.**
**Please refer to the estimate for specifics of your claim.**

### State Farm Insurance

| | | | |
|---|---|---|---|
| Insured: | Smith, Joe & Jane | Estimate: | 00-0000-000 |
| Property: | 1 Main Street | Claim number: | 00-0000-000 |
| | Anywhere, IL 00000-0000 | Policy Number: | 00-00-0000-0 |
| Type of Loss: | Other | Price List: | ILBL8F_MAR 13 |
| Deductible: | $1,000.00 | | Restoration/Service/ Remodel |
| | | | F = Factored In, D = Do Not Apply |

### Summary for Dwelling

| | | | |
|---|---|---|---|
| Line Item Total [1] | | | 5,953.10 |
| Material Sales Tax | @ | 10.000% x 1,520.00 | |
| Subtotal | | | 6,105.10 |
| General Contractor Overhead [2] | @ | 10.0% x 6,105.10 | 610.51 |
| General Contractor Profit | @ | 10.0% x 6,105.10 | 610.51 |
| Replacement Cost Value (Including General Contractor Overhead and Profit [3] | | | 7,326.12 |
| Less Depreciation (Including Taxes) [4] | | | (832.50) |
| Less General Contractor Overhead & Profit on Recoverable & Non - recoverable Depreciation | | | (166.50) |
| Less Deductible [5] | | | |
| Net Actual Cash Value Payment [6] | | | |

### Maximum Additional Amounts Available If Incurred:

| | | |
|---|---|---|
| Total Line Item Depreciation (Including Taxes) [4] | 832.50 | |
| Less Non - recoverable Depreciation (Including Taxes) [7] | | |
| Subtotal | 312.50 | |
| General Contractor O&P on Depreciation | 166.50 | |
| Less General Contractor O&P on Non - recoverable Depreciation | | |
| Subtotal | | |
| Total Maximum Additional Amounts Available If Incurred [8] | | |
| Total Amount of Claim If Incurred [9] | | |

Claim Representative

**ALL AMOUNTS PAYABLE ARE SUBJECT TO THE TERMS, CONDITIONS AND LIMITS OF YOUR POLICY.**

1. **Line Item Total** – Total value of all line items in the estimate plus possible adjustments for *labor minimums. Labor Minimum* is to cover a certain minimum number of hours for drive-time, set up time and applicable administrative costs and repairs.

2. **General Contractor's Overhead and Profit** – General contractor's charge for coordinating your repairs.

3. **Replacement Cost Value (RCV)** – Estimated cost to repair or replace damaged property.

4. **Depreciation** – The decrease in the value of property over a period of time due to wear, tear, condition, and obsolescence. A portion or all of this amount may be eligible for replacement cost benefits.

5. **Deductible** – The insurer will pay for losses, up to the policy limits, in excess of your applicable deductible.

6. **Net Actual Cash Value Payment (ACV)** – The repair or replacement cost of the damaged part of the property less *depreciation* and *deductible.*

7. **Non Recoverable Depreciation** – *Depreciation* applied to items that are not eligible for replacement cost benefits.

8. **Total Maximum Additional Amount If Incurred** – Total amount of recoverable depreciation after actual repair or replacement of the property.

9. **Total Amount of Claim if Incurred** – Total amount of the claim, including *net actual cash value payment and total maximum additional amount available if incurred.*

SF-Jellison - 000278

3

**State Farm**

JELLISON, DAVID                                                                           53-364F-184

| | | | |
|---|---|---|---|
| Insured: | JELLISON, DAVID | Estimate: | 53-364F-184 |
| Property: | 16330 FM 1826 | Claim Number: | 53364F184 |
| | AUSTIN, TX 78737-8809 | Policy Number: | 83-32-6465-8 |
| Home: | 512-288-1263 | Price List: | TXAU28_MAR15 |
| Business: | 512-496-1051 | | Restoration/Service/Remodel |
| Type of Loss: | Water Damage | | |
| Deductible: | $4,040.00 | | |
| Date of Loss: | 10/31/2013 | | |
| Date Inspected: | 11/13/2013 | | |

### Summary for Coverage A - Dwelling - 37 Water Damage and Freezing - RN

| | |
|---|---|
| Line Item Total | 12,402.43 |
| Material Sales Tax | 599.16 |
| Subtotal | 13,001.59 |
| General Contractor Overhead | 1,300.24 |
| General Contractor Profit | 1,300.24 |
| Replacement Cost Value (Including General Contractor Overhead and Profit) | 15,602.07 |
| Less Depreciation (Including Taxes) | (3,131.87) |
| Less General Contractor Overhead & Profit on Recoverable & Non-recoverable Depreciation | (626.42) |
| Less Deductible | (4,040.00) |
| Less Prior Claim Payment | (1,862.11) |
| Net Actual Cash Value Payment | $5,941.67 |

### Maximum Additional Amounts Available If Incurred:

| | | |
|---|---|---|
| Total Line Item Depreciation (Including Taxes) | 3,131.87 | |
| General Contractor O&P on Depreciation | 626.42 | |
| Replacement Cost Benefits | | 3,758.29 |
| Total Remaining Maximum Additional Amount Available If Incurred | | 3,758.29 |
| Total Amount of Claim If Incurred | | $11,562.07 |

Vath, Jay
844-458-4300 x 9726572983
Santos, Gilbert

**ALL AMOUNTS PAYABLE ARE SUBJECT TO THE TERMS, CONDITIONS AND LIMITS OF YOUR POLICY.**

SF-Jellison - 000279

4

 **StateFarm**

## Explanation of Building Replacement Cost Benefits
## Homeowner Policy
## Coverage A - Dwelling - 37 Water Damage and Freezing - RN

To:    Name:        JELLISON, DAVID
       Address:     16330 FM 1826
       City:        AUSTIN
       State/Zip:   TX, 78737-8809

Insured:       JELLISON, DAVID                Claim Number:    53364F184
Date of Loss:  10/31/2013                     Cause of Loss:   WATER

Your insurance policy provides replacement cost coverage for some or all of the loss or damage to your dwelling or structures. Replacement cost coverage pays the actual and necessary cost of repair or replacement, without a deduction for depreciation, subject to your policy's limit of liability. To receive replacement cost benefits you must:

1. Complete the actual repair or replacement of the damaged part of the property within two years of the date of loss; and

2. Notify us within 30 days after the work has been completed.

3. Confirm completion of repair or replacement, by submitting invoices, receipts or other documentation to your agent or claim office.

Until these requirements have been satisfied, our payment(s) to you will be for the actual cash value of the damaged part of the property, which may include a deduction for depreciation.

Without waiving the above requirements, we will consider paying replacement cost benefits prior to actual repair or replacement if we determine repair or replacement costs will be incurred because repairs are substantially under way or you present a signed contract acceptable to us.

The estimate to repair or replace your damaged property is $15,602.07 . The enclosed claim payment to you of $5,941.67 is for the actual cash value of the damaged property at the time of loss, less any deductible that may apply. We determined the actual cash value by deducting depreciation from the estimated repair or replacement cost. Our estimate details the depreciation applied to your loss. Based on our estimate, the additional amount available to you for replacement cost benefits (recoverable depreciation) is $ 3,758.29 .

If you cannot have the repairs completed for the repair/replacement cost estimated, please contact your claim representative prior to beginning repairs.

All policy provisions apply to your claim.

SF-Jellison - 000280

5

**State Farm**

JELLISON, DAVID                                                                 53-364F-184

**Roof**

|  | | |
|---|---|---|
| 0.00 SF Walls | 0.00 SF Ceiling | 0.00 SF Walls & Ceiling |
| 0.00 SF Floor | 0.00 SF Short Wall | 0.00 LF Floor Perimeter |
| 0.00 SF Long Wall | | 0.00 LF Ceil. Perimeter |

| QUANTITY | UNIT PRICE | TAX | GCO&P | RCV | AGE/LIFE CONDITION | DEPREC. DEP % | ACV |
|---|---|---|---|---|---|---|---|
| THE INSPECTION REVEALED NO EVIDENCE OF WIND OR HAIL DAMAGE TO THE METAL ROOF. | | | | | | | |
| **Totals: Roof** | | 0.00 | 0.00 | 0.00 | | 0.00 | 0.00 |

**Main Level**



**kitchen/brkfst**                                                            **Height: 8'**

|  | |
|---|---|
| 432.64 SF Walls | 240.76 SF Ceiling |
| 673.41 SF Walls & Ceiling | 224.54 SF Floor |
| 64.42 LF Ceil. Perimeter | 50.91 LF Floor Perimeter |

| Missing Wall | 3' 11" X 8' | Opens into DINING_ROOM |
|---|---|---|
| Door | 4' X 6' 8" | Opens into UTILITY_ROOM |
| Door | 7' 6" X 6' 8" | Opens into Exterior |

| QUANTITY | UNIT PRICE | TAX | GCO&P | RCV | AGE/LIFE CONDITION | DEPREC. DEP % | ACV |
|---|---|---|---|---|---|---|---|
| 1. Detach & Reset Refrigerator - side by side - 22 to 25 cf | | | | | | | |
| 1.00 EA | 22.74 | 0.00 | 4.54 | 27.28 | | | 27.28 |
| 2. Detach & Reset Ceiling fan without light | | | | | | | |
| 1.00 EA | 154.03 | 0.00 | 30.80 | 184.83 | | | 184.83 |
| 3. Window Treatments Installer - per hour | | | | | | | |
| 1.00 HR | 40.21 | 0.00 | 8.04 | 48.25 | | | 48.25 |
| detach and reset window treatment  & hardware | | | | | | | |
| 4. 1/2" drywall - hung, taped, ready for texture | | | | | | | |
| 95.00 SF | 1.44 | 3.29 | 28.02 | 168.11 | | | 168.11 |
| 5. R&R Batt insulation - 8" - R25 - unfaced batt | | | | | | | |
| 95.00 SF | 1.25 | 6.35 | 25.04 | 150.14 | | | 150.14 |
| 6. Detach & Reset Heat/AC register - Mechanically attached | | | | | | | |
| 1.00 EA | 10.87 | 0.00 | 2.18 | 13.05 | | | 13.05 |
| 7. Acoustic ceiling (popcorn) texture | | | | | | | |
| 120.00 SF | 0.79 | 1.68 | 19.30 | 115.78 | | | 115.78 |
| 8. Seal the surface area w/latex based stain blocker - one coat | | | | | | | |
| 120.00 SF | 0.37 | 0.69 | 9.02 | 54.11 | | | 54.11 |
| 9. Paint acoustic ceiling (popcorn) texture - 1 coat | | | | | | | |
| 240.76 SF | 0.42 | 3.18 | 20.86 | 125.16 | | | 125.16 |

Date:    6/1/2015 3:06 PM                                                      Page: 5

6

**State Farm**

JELLISON, DAVID                                                                53-364F-184

**CONTINUED - kitchen/brkfst**

| QUANTITY | UNIT PRICE | TAX | GCO&P | RCV | AGE/LIFE CONDITION | DEPREC. DEP % | ACV |
|---|---|---|---|---|---|---|---|
| 10. Stain & finish half louvered door slab only - (per side) | | | | | | | |
| 4.00 EA | 37.52 | 2.71 | 30.56 | 183.35 | | | 183.35 |
| 11. Stain & finish door/window trim & jamb (per side) | | | | | | | |
| 1.00 EA | 23.52 | 0.37 | 4.78 | 28.67 | | | 28.67 |
| 12. R&R Baseboard - 2 1/4" stain grade | | | | | | | |
| 50.91 LF | 2.70 | 4.96 | 28.48 | 170.90 | | | 170.90 |
| 13. Stain & finish baseboard | | | | | | | |
| 50.91 LF | 0.91 | 0.63 | 9.38 | 56.34 | | | 56.34 |
| 14. R&R Corner trim | | | | | | | |
| 16.00 LF | 1.38 | 0.98 | 4.62 | 27.68 | | | 27.68 |
| 15. Stain & finish corner trim | | | | | | | |
| 16.00 LF | 0.90 | 0.20 | 2.92 | 17.52 | | | 17.52 |
| 16. R&R Base shoe - stain grade | | | | | | | |
| 30.00 LF | 1.08 | 1.24 | 6.72 | 40.36 | | | 40.36 |
| 17. Stain & finish base shoe or quarter round | | | | | | | |
| 30.00 LF | 0.73 | 0.35 | 4.46 | 26.71 | | | 26.71 |
| 18. Wallpaper border | | | | | | | |
| 64.42 LF | 2.22 | 7.65 | 30.14 | 180.80 | | | 180.80 |
| 19. R&R Wallpaper | | | | | | | |
| 432.64 SF | 2.30 | 39.62 | 206.94 | 1,241.63 | | | 1,241.63 |
| 20. Prep wall for wallpaper | | | | | | | |
| 432.64 SF | 0.37 | 0.00 | 32.02 | 192.10 | | | 192.10 |
| 21. Remove Vinyl floor covering (sheet goods) | | | | | | | |
| 224.54 SF | 0.56 | 0.00 | 25.14 | 150.88 | | | 150.88 |
| 22. Vinyl floor - per specs from independent vinyl analysis | | | | | | | |
| 346.67 SF | 4.47 * | 108.40 | 331.60 | 1,989.61 | | | 1,989.61 |
| 23. Mask wall - plastic, paper, tape (per LF) | | | | | | | |
| 64.42 LF | 0.93 | 1.17 | 12.22 | 73.30 | | | 73.30 |
| **Totals: kitchen/brkfst** | | **183.47** | **877.78** | **5,266.56** | | **0.00** | **5,266.56** |



| Utility Room | | | Height: 8' |
|---|---|---|---|
| | 133.33 SF Walls | 19.56 SF Ceiling | |
| | 152.89 SF Walls & Ceiling | 19.56 SF Floor | |
| | 20.00 LF Ceil. Perimeter | 16.00 LF Floor Perimeter | |

**Door**                          4' X 6' 8"                    Opens into KITCHEN_BRKF

SF-Jellison - 000282

7

**State Farm**

JELLISON, DAVID                                                                                          53-364F-184

| QUANTITY | UNIT PRICE | TAX | GCO&P | RCV | AGE/LIFE CONDITION | DEPREC. DEP % | ACV |
|---|---|---|---|---|---|---|---|
| 24. R&R Water heater - 30 gallon - Electric - 6 yr | | | | | | | |
| 1.00 EA | 591.71 | 25.10 | 123.36 | 740.17 | | | 740.17 |
| 25. R&R Light fixture | | | | | | | |
| 1.00 EA | 56.77 * | 2.18 | 11.80 | 70.75 | | | 70.75 |
| 26. R&R Baseboard - 2 1/4" stain grade | | | | | | | |
| 16.00 LF | 2.70 * | 1.56 | 8.96 | 53.72 | | | 53.72 |
| 27. R&R 1/2" drywall - hung, taped, ready for texture | | | | | | | |
| 24.56 SF | 1.63 | 0.73 | 8.16 | 48.93 | | | 48.93 |
| 28. R&R Batt insulation - 8" - R25 - unfaced batt | | | | | | | |
| 19.56 SF | 1.25 | 1.31 | 5.14 | 30.90 | | | 30.90 |
| 29. Seal more than the ceiling w/latex based stain blocker - one coat | | | | | | | |
| 24.56 SF | 0.37 | 0.14 | 1.84 | 11.07 | | | 11.07 |
| 30. Acoustic ceiling (popcorn) texture | | | | | | | |
| 19.56 SF | 0.79 | 0.27 | 3.16 | 18.88 | | | 18.88 |
| 31. Paint the walls - one coat | | | | | | | |
| 133.33 SF | 0.41 | 1.10 | 11.16 | 66.93 | | | 66.93 |
| 32. Stain & finish baseboard | | | | | | | |
| 16.00 LF | 0.91 | 0.20 | 2.96 | 17.72 | | | 17.72 |
| 33. Seal & paint door or window opening (per side) | | | | | | | |
| 1.00 EA | 18.46 | 0.31 | 3.76 | 22.53 | | | 22.53 |
| 34. Remove Vinyl floor covering (sheet goods) | | | | | | | |
| 19.56 SF | 0.56 | 0.00 | 2.20 | 13.15 | | | 13.15 |
| 35. Vinyl floor - per specs from independent vinyl analysis | | | | | | | |
| 67.42 SF | 4.47 * | 21.08 | 64.50 | 386.95 | | | 386.95 |
| 36. Mask wall - plastic, paper, tape (per LF) | | | | | | | |
| 20.00 LF | 0.93 | 0.36 | 3.80 | 22.76 | | | 22.76 |
| **Totals: Utility Room** | | **54.34** | **250.80** | **1,504.46** | | **0.00** | **1,504.46** |



**Dining Room**                                                                  **Height: 10'**

| | |
|---|---|
| 101.92 SF Walls | 81.30 SF Ceiling |
| 183.22 SF Walls & Ceiling | 81.30 SF Floor |
| 30.92 LF Ceil. Perimeter | 9.42 LF Floor Perimeter |

| | | |
|---|---|---|
| **Missing Wall** | 3' 11" X 10' | Opens into KITCHEN_BRKF |
| **Missing Wall** | 3' X 10' | Opens into HALLWAY |
| **Missing Wall - Goes to Floor** | 9' 3" X 9' | Opens into Exterior |

SF-Jellison - 000283

8

**State Farm**

JELLISON, DAVID

53-364F-184



| Subroom: Room3 (1) | | | | | Height: Sloped |
|---|---|---|---|---|---|

| | | |
|---|---|---|
| 136.68 SF Walls | | 66.29 SF Ceiling |
| 202.96 SF Walls & Ceiling | | 61.25 SF Floor |
| 35.32 LF Ceil. Perimeter | | 14.50 LF Floor Perimeter |

| | | |
|---|---|---|
| **Door** | 7' 9" X 6' 8" | Opens into Exterior |
| **Missing Wall** | 12' 3" X 8' | Opens into DINING_ROOM |

| QUANTITY | UNIT PRICE | TAX | GCO&P | RCV | AGE/LIFE CONDITION | DEPREC. DEP % | ACV |
|---|---|---|---|---|---|---|---|
| 37. Window Treatments Installer - per hour | | | | | | | |
| 1.50 HR | 40.21 | 0.00 | 12.06 | 72.38 | | | 72.38 |
| allowance to manipulate window treatment and hardware | | | | | | | |
| 38. Detach & Reset Light fixture - High grade | | | | | | | |
| 1.00 EA | 39.24 | 0.00 | 7.84 | 47.08 | | | 47.08 |
| 39. R&R Crown molding - 3 1/4" stain grade | | | | | | | |
| 49.68 LF | 5.43 | 10.57 | 56.08 | 336.41 | | | 336.41 |
| 40. Stain & finish crown molding | | | | | | | |
| 49.68 LF | 0.96 | 0.61 | 9.66 | 57.96 | | | 57.96 |
| 41. R&R T & G paneling - v-joint paneling (unfinished) | | | | | | | |
| 147.59 SF | 3.97 | 24.47 | 122.10 | 732.51 | | | 732.51 |
| 42. Stain & finish paneling | | | | | | | |
| 147.59 SF | 0.96 | 3.04 | 28.94 | 173.67 | | | 173.67 |
| Ceiling | | | | | | | |
| 43. R&R Baseboard - 2 1/4" stain grade | | | | | | | |
| 23.92 LF | 2.54 | 2.35 | 12.62 | 75.73 | | | 75.73 |
| 44. R&R 1/2" drywall - hung, taped, ready for texture | | | | | | | |
| 163.59 SF | 1.63 | 4.86 | 54.30 | 325.81 | | | 325.81 |
| 45. R&R Batt insulation - 8" - R25 - unfaced batt | | | | | | | |
| 147.59 SF | 1.25 | 9.86 | 38.88 | 233.22 | | | 233.22 |
| 46. Seal the surface area w/latex based stain blocker - one coat | | | | | | | |
| 16.00 SF | 0.37 | 0.09 | 1.20 | 7.21 | | | 7.21 |
| 47. Paint the surface area - one coat | | | | | | | |
| 118.17 SF | 0.41 | 0.98 | 9.90 | 59.33 | | | 59.33 |
| 48. R&R Wallpaper | | | | | | | |
| 112.67 SF | 2.30 | 10.32 | 53.88 | 323.34 | | | 323.34 |
| 49. Remove Carpet - per specs from independent carpet analysis | | | | | | | |
| 142.55 SF | 0.17 | 0.00 | 4.84 | 29.07 | | | 29.07 |
| 50. Carpet - per specs from independent carpet analysis | | | | | | | |
| 170.08 SF | 4.35 * | 54.72 | 158.92 | 953.49 | 29/10 yrs Avg. | (762.80) 80.00% | 190.69 |
| 51. R&R Carpet pad - per specs from independent pad analysis | | | | | | | |
| 142.55 SF | 0.86 * | 8.47 | 26.22 | 157.28 | 29/10 yrs Avg. | (125.83) 80.00% | 31.45 |
| 52. Prep wall for wallpaper | | | | | | | |
| 112.67 SF | 0.37 | 0.00 | 8.34 | 50.03 | | | 50.03 |

Date:   6/1/2015 3:06 PM

Page: 8

9

**State Farm**

JELLISON, DAVID                                                                53-364F-184

CONTINUED - Dining Room

| QUANTITY | UNIT PRICE | TAX | GCO&P | RCV | AGE/LIFE CONDITION | DEPREC. DEP % | ACV |
|---|---|---|---|---|---|---|---|
| 53.  Stain & finish baseboard | | | | | | | |
| 23.92 LF | 0.96 * | 0.32 | 4.66 | 27.94 | | | 27.94 |
| **Totals:  Dining Room** | | **130.66** | **610.44** | **3,662.46** | | **888.63** | **2,773.83** |

| Hallway | | Height: 10' |
|---|---|---|
| | 61.08 SF Walls | 30.38 SF Ceiling |
| | 91.47 SF Walls & Ceiling | 30.38 SF Floor |
| | 12.58 LF Ceil. Perimeter | 5.75 LF Floor Perimeter |

| **Missing Wall** | 4' 8" X 10' | **Opens into LIVING_ROOM** |
|---|---|---|
| **Missing Wall** | 3' 11" X 10' | **Opens into ENTRY_FOYER** |
| **Missing Wall** | 3' X 10' | **Opens into DINING_ROOM** |
| **Missing Wall - Goes to Floor** | 3' 7" X 9' | **Opens into Exterior** |

| Subroom:  Hall offset (1) | | Height: 8' |
|---|---|---|
| | 224.67 SF Walls | 40.08 SF Ceiling |
| | 264.75 SF Walls & Ceiling | 40.08 SF Floor |
| | 31.33 LF Ceil. Perimeter | 28.08 LF Floor Perimeter |

| **Missing Wall** | 3' 3" X 8' | **Opens into HALLWAY** |
|---|---|---|

| QUANTITY | UNIT PRICE | TAX | GCO&P | RCV | AGE/LIFE CONDITION | DEPREC. DEP % | ACV |
|---|---|---|---|---|---|---|---|
| 54.  Strip & refinish paneling | | | | | | | |
| 70.47 SF | 1.61 | 3.02 | 23.30 | 139.78 | | | 139.78 |
| Ceiling | | | | | | | |
| 55.  Remove Carpet - per specs from independent carpet analysis | | | | | | | |
| 70.47 SF | 0.17 | 0.00 | 2.40 | 14.38 | | | 14.38 |
| 56.  Carpet - per specs from independent carpet analysis | | | | | | | |
| 98.42 SF | 4.35 * | 31.67 | 91.96 | 551.76 | 29/10 yrs Avg. | (441.40) 80.00% | 110.36 |
| 57.  R&R Carpet pad - per specs from independent pad analysis | | | | | | | |
| 70.47 SF | 0.86 * | 4.19 | 12.96 | 77.76 | 29/10 yrs Avg. | (62.22) 80.00% | 15.54 |

Date:     6/1/2015 3:06 PM                                                    Page: 9

SF-Jellison - 000285

10

**State Farm**

JELLISON, DAVID                                                                53-364F-184

**CONTINUED - Hallway**

| QUANTITY | UNIT PRICE | TAX | GCO&P | RCV | AGE/LIFE CONDITION | DEPREC. DEP % | ACV |
|---|---|---|---|---|---|---|---|
| 58. Stain & finish crown molding | | | | | | | |
| 32.94 LF | 0.96 | 0.41 | 6.40 | 38.43 | | | 38.43 |
| **Totals: Hallway** | | **39.29** | **137.02** | **822.11** | | **503.62** | **318.49** |



**Living Room**                                                          Height: 10'

|  | |
|---|---|
| 114.42 SF Walls | 145.61 SF Ceiling |
| 260.03 SF Walls & Ceiling | 145.61 SF Floor |
| 19.92 LF Ceil. Perimeter | 10.67 LF Floor Perimeter |

| | | |
|---|---|---|
| **Missing Wall** | 9' 8" X 10' | Opens into ENTRY_FOYER |
| **Missing Wall** | 4' 8" X 10' | Opens into HALLWAY |
| **Missing Wall - Goes to Floor** | 9' 3" X 9' | Opens into Exterior |

**Subroom: Room7 (1)**                                               Height: Sloped

| | |
|---|---|
| 165.84 SF Walls | 81.62 SF Ceiling |
| 247.46 SF Walls & Ceiling | 75.42 SF Floor |
| 20.49 LF Ceil. Perimeter | 20.08 LF Floor Perimeter |

| | | |
|---|---|---|
| **Missing Wall** | 5' X 8' | Opens into ROOM9 |
| **Missing Wall** | 15' 1" X 8' | Opens into LIVING_ROOM |

| QUANTITY | UNIT PRICE | TAX | GCO&P | RCV | AGE/LIFE CONDITION | DEPREC. DEP % | ACV |
|---|---|---|---|---|---|---|---|
| 59. Mask and prep for paint - tape only (per LF) | | | | | | | |
| 40.41 LF | 0.33 | 0.13 | 2.68 | 16.15 | | | 16.15 |
| 60. Mask and cover large light fixture | | | | | | | |
| 1.00 EA | 11.30 | 0.06 | 2.28 | 13.64 | | | 13.64 |
| 61. Strip & refinish paneling | | | | | | | |
| 227.23 SF | 1.61 | 9.75 | 75.12 | 450.71 | | | 450.71 |
| Ceiling | | | | | | | |
| 62. Remove Carpet - per specs from independent carpet analysis | | | | | | | |
| 221.03 SF | 0.17 | 0.00 | 7.52 | 45.10 | | | 45.10 |

Date:    6/1/2015 3:06 PM                                                    Page: 10

SF-Jellison - 000286

11

**State Farm**

JELLISON, DAVID                                                                53-364F-184

**CONTINUED - Living Room**

| QUANTITY | UNIT PRICE | TAX | GCO&P | RCV | AGE/LIFE CONDITION | DEPREC. DEP % | ACV |
|---|---|---|---|---|---|---|---|
| 63. Carpet - per specs from independent carpet analysis | | | | | | | |
| 249.83 SF | 4.35 * | 80.38 | 233.44 | 1,400.58 | 29/10 yrs Avg. | (1,120.47) 80.00% | 280.11 |
| 64. R&R Carpet pad - per specs from independent pad analysis | | | | | | | |
| 221.03 SF | 0.86 * | 13.13 | 40.64 | 243.85 | 29/10 yrs Avg. | (195.08) 80.00% | 48.77 |
| 65. R&R Carpet cove (wall wrap) - 4" | | | | | | | |
| 30.75 LF | 4.22 | 4.01 | 26.74 | 160.52 | 29/10 yrs Avg. | (128.40) 80.00% | 32.12 |
| 66. Stain & finish crown molding | | | | | | | |
| 30.31 LF | 0.96 | 0.38 | 5.90 | 35.38 | | - | 35.38 |
| 67. Detach & Reset Light fixture - Standard grade | | | | | | | |
| 2.00 EA | 39.77 * | 0.00 | 15.90 | 95.44 | | | 95.44 |
| Reset to access paneling | | | | | | | |
| **Totals:  Living Room** | | **107.84** | **410.22** | **2,461.37** | | **1,443.95** | **1,017.42** |



**Entry/Foyer**                                                        **Height: 10'**

| | |
|---|---|
| 98.33 SF Walls | 37.86 SF Ceiling |
| 136.19 SF Walls & Ceiling | 37.86 SF Floor |
| 9.83 LF Ceil. Perimeter | 9.83 LF Floor Perimeter |

**Missing Wall**          3' 11" X 10'          Opens into HALLWAY
**Missing Wall**          9' 8" X 10'          Opens into LIVING_ROOM

**Subroom:  Room9 (1)**                                          **Height: Sloped**

| | |
|---|---|
| 76.51 SF Walls | 21.19 SF Ceiling |
| 97.70 SF Walls & Ceiling | 19.58 SF Floor |
| 9.33 LF Ceil. Perimeter | 8.92 LF Floor Perimeter |

**Missing Wall**          3' 11" X 8'          Opens into ENTRY_FOYER
**Missing Wall**          5' X 8'          Opens into ROOM7

| QUANTITY | UNIT PRICE | TAX | GCO&P | RCV | AGE/LIFE CONDITION | DEPREC. DEP % | ACV |
|---|---|---|---|---|---|---|---|

SF-Jellison - 000287

12

**State Farm**

JELLISON, DAVID                                                                                          53-364F-184

CONTINUED - Entry/Foyer

| QUANTITY | UNIT PRICE | TAX | GCO&P | RCV | AGE/LIFE CONDITION | DEPREC. DEP % | ACV |
|---|---|---|---|---|---|---|---|
| 68. Mask and prep for paint - tape only (per LF) | | | | | | | |
| 19.16 LF | 0.33 | 0.06 | 1.28 | 7.66 | | | 7.66 |
| 69. Strip & refinish paneling | | | | | | | |
| 59.05 SF | 1.61 | 2.53 | 19.52 | 117.12 | | | 117.12 |
| Ceiling | | | | | | | |
| 70. Stain & finish crown molding | | | | | | | |
| 14.37 LF | 0.96 | 0.18 | 2.80 | 16.78 | | | 16.78 |
| **Totals: Entry/Foyer** | | **2.77** | **23.60** | **141.56** | | **0.00** | **141.56** |



| | | | | | | | |
|---|---|---|---|---|---|---|---|
| Bedroom | | | | | | | Height: 8' |
| | 348.00 SF Walls | | | 137.00 SF Ceiling | | | |
| | 485.00 SF Walls & Ceiling | | | 137.00 SF Floor | | | |
| | 46.83 LF Ceil. Perimeter | | | 42.83 LF Floor Perimeter | | | |

Door                          4' X 6' 8"                    Opens into Exterior

| QUANTITY | UNIT PRICE | TAX | GCO&P | RCV | AGE/LIFE CONDITION | DEPREC. DEP % | ACV |
|---|---|---|---|---|---|---|---|
| 71. R&R Wallpaper - Premium grade | | | | | | | |
| 91.33 SF | 3.41 | 15.30 | 65.34 | 392.07 | | | 392.07 |
| 72. Remove Carpet - per specs from independent carpet analysis | | | | | | | |
| 137.00 SF | 0.17 | 0.00 | 4.66 | 27.95 | | | 27.95 |
| 73. Carpet - per specs from independent carpet analysis | | | | | | | |
| 178.25 SF | 4.36 | 57.35 | 166.92 | 1,001.44 | 29/10 yrs Avg. | (801.16) 80.00% | 200.28 |
| 74. R&R Carpet pad - per specs from independent pad analysis | | | | | | | |
| 137.00 SF | 0.86 * | 8.14 | 25.20 | 151.16 | 29/10 yrs Avg. | (120.93) 80.00% | 30.23 |
| 75. Prep wall for wallpaper | | | | | | | |
| 91.33 SF | 0.37 | 0.00 | 6.76 | 40.55 | | | 40.55 |
| **Totals: Bedroom** | | **80.79** | **268.88** | **1,613.17** | | **922.09** | **691.08** |

Debris Removal

        0.00 SF Walls                    0.00 SF Ceiling                    0.00 SF Walls & Ceiling

SF-Jellison - 000288

13

**State Farm**

JELLISON, DAVID                                                                                        53-364F-184

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 0.00 SF Floor | | | 0.00 SF Short Wall | | | 0.00 LF Floor Perimeter | |
| 0.00 SF Long Wall | | | | | | 0.00 LF Ceil. Perimeter | |

| QUANTITY | UNIT PRICE | TAX | GCO&P | RCV | AGE/LIFE CONDITION | DEPREC. DEP % | ACV |
|---|---|---|---|---|---|---|---|
| 76. Haul debris - per pickup truck load - including dump fees | | | | | | | |
| 1.00 EA | 93.87 | 0.00 | 18.78 | 112.65 | | | 112.65 |
| **Totals: Debris Removal** | | **0.00** | **18.78** | **112.65** | | **0.00** | **112.65** |

Area Totals: Main Level

| | | | | | |
|---|---|---|---|---|---|
| 1,912.91 SF Walls | | 901.65 SF Ceiling | | 2,814.56 SF Walls and Ceiling | |
| 872.58 SF Floor | | 955.79 Total Area | | 216.99 LF Floor Perimeter | |
| 872.58 Floor Area | | 176.17 Exterior Perimeter | | 300.98 LF Ceil. Perimeter | |
| 1,332.10 Exterior Wall Area | | of Walls | | 1,893.42 Interior Wall Area | |

| | | TAX | GCO&P | RCV | | DEPREC. DEP % | ACV |
|---|---|---|---|---|---|---|---|
| **Total: Main Level** | | **599.16** | **2,597.52** | **15,584.34** | | **3,758.29** | **11,826.05** |

**Labor Minimums Applied**

| QUANTITY | UNIT PRICE | TAX | GCO&P | RCV | AGE/LIFE CONDITION | DEPREC. DEP % | ACV |
|---|---|---|---|---|---|---|---|
| * 77. General labor - labor minimum | | | | | | | |
| 1.00 EA | 14.77 | 0.00 | 2.96 | 17.73 | | | 17.73 |
| **Totals: Labor Minimums Applied** | | **0.00** | **2.96** | **17.73** | | **0.00** | **17.73** |
| **Line Item Totals: 53-364F-184** | | **599.16** | **2,600.48** | **15,602.07** | | **3,758.29** | **11,843.78** |

**Grand Total Areas:**

| | | | | | |
|---|---|---|---|---|---|
| 1,912.91 SF Walls | | 901.65 SF Ceiling | | 2,814.56 SF Walls and Ceiling | |
| 872.58 SF Floor | | | | 216.99 LF Floor Perimeter | |
| | | | | 300.98 LF Ceil. Perimeter | |
| 872.58 Floor Area | | 955.79 Total Area | | 1,893.42 Interior Wall Area | |
| 1,332.10 Exterior Wall Area | | 176.17 Exterior Perimeter of Walls | | | |

SF-Jellison - 000289



Main Level

Page: 14

SF-Jellison - 000290

N ⇧

14

Main Level

Date:    6/1/2015 3:06 PM

# EXHIBIT B-4

**WINSTEAD**    Austin  Charlotte  Dallas  Fort Worth  Houston  New Orleans  San Antonio  The Woodlands  Washington, D.C.

401 Congress Avenue          512.370.2800 OFFICE
Suite 2100                   512.370.2850 FAX
Austin, Texas  78701         winstead.com

Linda J. Burgess
direct dial: 512.370.2881
lburgess@winstead.com

July 10, 2015

***VIA FAX:  512.478.3625***
Matt Rider
Wenholz Law Firm
13501 Galleria Circle, Suite W270
Austin, Texas 78738

Re:    Named Insured:      David Jellison
       Claim No.:          53-364F-184
       Date of Loss:       October 31, 2013
       Location:           16330 FM 1826, Austin, Texas 78737

Dear Mr. Rider:

Please be advised that by this letter, State Farm Lloyds (State Farm) demands appraisal of Claim No. 53-364F-184 under the referenced Homeowners Policy issued by State Farm.  The Policy provides as follows:

## SECTION 1 – CONDITIONS

**4.      Appraisal.**  If you and we fail to agree on the amount of loss, either one can demand that the amount of the loss be set by appraisal.  If either makes a written demand for appraisal, each shall select a competent, disinterested appraiser.  Each shall notify the other of the appraiser's identity within 20 days of receipt of the written demand.  The two appraisers shall then select a competent, impartial umpire.  If the two appraisers are unable to agree upon an umpire within 15 days, you or we can ask a judge of a court of record in the state where the **residence premises** is located to select an umpire.  The appraisers shall then set the amount of the loss.  If the appraisers submit a written report of an agreement to us, the amount agreed upon shall be the amount of the loss.  If the appraisers fail to agree within a reasonable time, they shall submit their differences to the umpire.  Written agreement signed by any two of these three shall set the amount of the loss.  Each appraiser shall be paid by the party selecting that appraiser.  Other expenses of the appraisal and the compensation of the umpire shall be paid equally by you and us.

Matt Rider
July 10, 2015
Page - 2

    State Farm requests appraisal of the amount of loss, stating separately the actual cash value and loss to each item.   State Farm also requests appraisal of the full costs of repair or replacement of loss to such dwelling and/or other structure, without deduction for depreciation.

    State Farm appoints as appraiser Bryan Scanlan.   Mr. Scanlan can be reached at:

Bryan Scanlan
ICC Group – Insurance Claims Consultants Group, LLC
2303 RR 620, Suite 135-224
Lakeway, Texas 78734
Tel:  (512) 576-4493
Fax:  (830) 331-1494
bryan@iccgrp.com

    By this request, State Farm does not waive any of the policy provisions, conditions, exclusions or limitations, and in fact, intends to rely on them throughout the appraisal process. The appraisal award will be subject to the policy's provisions, conditions, exclusions and limitations.

    We look forward to receiving notification of your selected appraiser.

                    Very truly yours,

                    Linda J. Burgess
                    *Counsel for State Farm Lloyds*

# EXHIBIT B-5

07/27/2015   13:31                                    (FAX)                P.002/003



THE
WENHOLZ
LAW FIRM
PLLC

July 27, 2015

**VIA FAX (512) 370-2850**
Ms. Linda J. Burgess
Winstead
401 Congress Ave.
Suite 2100
Austin, TX 78701

Re:   Insured:      David Jellison
      Loss Address: 16330 FM 1826
                    Austin, Texas 78737-8809
      Claim No.:    53-364F-184
      DOL:          10/31/2013
      Policy #:     83-32-6465-8

Dear Ms. Burgess:

    I enjoyed visiting with you today about this claim. I believe the parties should be able to settle this matter without the assistance of appraisal. Out of an abundance of caution, however, please be advised that my client appoints Mr. Jeff Watson as his appraiser. Mr. Watson can be reached at the following address:

        Jeff S. Watson
        CorrectClaim
        9901 IH 10 W
        #800
        San Antonio, TX 78230
        (214) 708-5777
        jeffswatson@gmail.com

    I will ask Mr. Watson to wait to proceed until I hear back from you regarding my proposal to avoid the additional expense and attempt to negotiate a solution to this claim. Say hello to Alex Valdes for me!

SF-Jellison - 000238

2

Yours very truly,

David C. Wenholz

13501 Galleria Circle • W-270 • Bee Cave, TX 78738 • (512)478-2211 • Fax: (512)478-3625 • www.Wenholz.com

SF-Jellison - 000239

# EXHIBIT B-6



# THE WENHOLZ LAW FIRM PLLC

June 29, 2016

**VIA FAX (512) 370-2850**
Ms. Linda J. Burgess
Winstead
401 Congress Ave., Suite 2100
Austin, TX 78701

**VIA FAX (512) 651-7001**
Mr. Eddie Kaye
Skelton and Woody
248 Addie Roy Rd., Ste. B-302
Austin, TX 78746

Re:     Insured:         David Jellison
        Loss Address: 16330 FM 1826
                        Austin, Texas 78737-8809
        Claim No.:      53-364F-184
        DOL:            10/31/2013
        Policy #:       83-32-6465-8

Dear Ms. Burgess and Mr. Kaye:

       Please be advised that my client appoints Ches Bostick as his appraiser. Mr. Bostick can be reach at the following address and contact information:

                Ches Bostick
                Abba Claims Consultants, LLC
                3102 Maple Ave. #400
                Dallas, TX 75201
                Office: (214)501-0598
                Fax:    (972)591-5640
                Cell:   (214)842-3743
                Email:  Ches@AbbaClaims.com

                Yours very truly,

                David C. Wenholz

# EXHIBIT B-7

## APPRAISAL DECISION FORM

STATE OF TEXAS
City of Austin

| | | |
|---|---|---|
| Insured | : | Jellison, David |
| Claim Number | : | 53364F184 |
| Policy Number | : | N/A |
| Date of Loss | : | N/A |
| Property Address | : | 16330 FM 1826, Austin, Texas 78737 |

We the undersigned, pursuant to our appointment as appraisers and umpire in the above referenced appraisal, DO HEREBY CERTIFY, that we have conscientiously preformed the duties assigned to us and have appraised the value of all losses presented as follows:

| Coverage | Actual Cash Value | Replacement Cost Value |
|---|---|---|
| Coverage A - Structure | $29,592.90 | $32,841.89 |
| Coverage B - APS | $0 | $0 |
| Total Amount Awarded | $29,592.90 | $32,841.89 |

### STIPULATIONS

This award is made without consideration of any deductibles or prior payments. Such deductibles and prior payments will be subtracted from any payments due and owing as a result of the entry of this award. This award is made subject to all the terms, conditions and exclusions of the above listed policy.

_____          _____10/24/16_____
Appraiser for Policyholder- Bostic, Ches                        Date
         BOSTICK



_____          _____
Appraiser for Carrier- Scanlan, Bryan                           Date


_____          _____11/09/16_____
Umpire- Michael Fried                                           Date

# EXHIBIT B-8



November 18, 2016

David C. Wenholz
Wenholz Law Firm
13501 Galleria Circle, Suite W270
Austin, Texas 78738

**State Farm Insurance Companies**
Fire Claims
PO Box 106169
Atlanta, GA 30348-6169
Fax 844 236 3646

**CERTIFIED MAIL – RETURN RECEIPT REQUESTED**

RE:    Insured:    David Jellison
   Claim Number:    53-364F-184
   Date of Loss:    83-32-6465-8
   Location of Loss:    16330 FM 1826
        Austin, Texas 78737
   Type of Loss:    October 31, 2013

Dear Mr. Wenholz:

On November 11, 2016, we received the signed, itemized appraisal award for the above referenced claim.  The award set the amount of loss at $32,841.89.

Your copy of the award is enclosed, along with payment in the amount of $19,611.23.  This payment is calculated pursuant to the Loss Settlement provisions of the policy.  For your convenience, here is a breakdown of the payment:

| | |
|---|---|
| Appraisal Award Replacement Cost | $ 32,841.89 |
| Less Depreciation | <$  3,248.99> |
| Less Deductible | <$  4,040.00> |
| Less Prior Payments | <$  5,941.67> |
| Actual Cash Value Payment Enclosed | $ 19,611.23 |
| Replacement Cost Benefits Remaining: | $  3,248.99 |

The policy requires an insured to make actual repairs to the property within two years from the date of loss to receive replacement cost benefits.  The date of loss for this claim is October 31, 2013. The claim was reported on November 4, 2013, and inspected by State Farm on November 22, 2013 and March 10, 2015.  We will not count the time between November 22, 2013, and November 18, 2016, toward the two year replacement cost benefit period.

Therefore, to receive replacement cost benefits, Mr. Jellison must:

- Complete the actual repairs or replacement of the damaged part of the property by October 27, 2018; and,

*Providing Insurance and Financial Services*                  *Home Office, Bloomington, IL*

- Notify us within 30 days after the work has been completed.

- Confirm completion of repairs or replacement, by submitting invoices, receipts, or other documentation to his State Farm agent or claim office.

Under the Homeowners Policy, with respect to replacement cost, State Farm is obliged to pay, up to the applicable limit of liability shown in the policy, the amount actually and necessarily spent to replace the damaged property. In that regard, the FE-3533 Homeowners Policy Endorsement in Section I – Loss Settlement provides as follows:

**FE-3533 HOMEOWNERS POLICY ENDORSEMENT (TEXAS)**

**SECTION I – LOSS SETTLEMENT**

**COVERAGE A - DWELLING**
Items 1. and 2. are replaced by the following:

    a.    We will pay the cost to repair or replace with similar construction and for the same use on the premises shown in the **Declarations**, the damaged part of the property covered under **SECTION I - COVERAGES, COVERAGE A - DWELLING**, except for wood fences, subject to the following:

        (1)    until actual repair or replacement is completed, we will pay only the actual cash value at the time of the loss of the damaged part of the property, up to the applicable limit of liability shown in the **Declarations**, not to exceed the cost to repair or replace the damaged part of the property;

        (2)    when the repair or replacement is actually completed, we will pay the covered additional amount you actually and necessarily spend to repair or replace the damaged part of the property, or an amount up to the applicable limit of liability shown in the **Declarations**, whichever is less;

        (3)    to receive any additional payments on a replacement cost basis, you must complete the actual repair or replacement of the damaged part of the property within two years after the date of loss, and notify us within 30 days after the work has been completed; and

        (4)    we will not pay for increased costs resulting from enforcement of any ordinance or law regulating the construction, repair or demolition of a building or other structure, except as provided under **Option OL - Building Ordinance or Law Coverage**.

Please be advised State Farm is not waiving any of the policy coverages, limitations, exclusions, or provisions, all of which are specifically reserved. We appreciate the opportunity to participate in the appraisal process. If you have any questions or need further assistance, please contact me at the number listed below.

Sincerely,

Hunter Newby
Claim Specialist
844 529 5982 ext 9726572581
E-mail statefarmfireclaims@statefarm.com
State Farm Lloyds

Enclosures:    Draft
               Award Documents

# APPRAISAL DECISION FORM

STATE OF TEXAS
City of Austin

| | | |
|---|---|---|
| Insured | : | Jellison, David |
| Claim Number | : | 53364F184 |
| Policy Number | : | N/A |
| Date of Loss | : | N/A |
| Property Address | : | 16330 FM 1826, Austin, Texas 78737 |

We the undersigned, pursuant to our appointment as appraisers and umpire in the above referenced appraisal, DO HEREBY CERTIFY, that we have conscientiously preformed the duties assigned to us and have appraised the value of all losses presented as follows:

| Coverage | Actual Cash Value | Replacement Cost Value |
|---|---|---|
| Coverage A - Structure | $29,592.90 | $32,841.89 |
| Coverage B - APS | $0 | $0 |
| Total Amount Awarded | $29,592.90 | $32,841.89 |

## STIPULATIONS

This award is made without consideration of any deductibles or prior payments. Such deductibles and prior payments will be subtracted from any payments due and owing as a result of the entry of this award. This award is made subject to all the terms, conditions and exclusions of the above listed policy.

_Ches Bostick_
BOSTICK
Appraiser for Policyholder- Bostic, Ches

10/24/16
Date

_____
Appraiser for Carrier- Scanlan, Bryan

_____
Date

_AM. a f_
Umpire- Michael Fried

11/09/16
Date



## Aftermath Consulting Group

Aftermath Consulting Group, LLC
IICRC, HCRI, NFIP, GA, LPA

| | | | | |
|---|---|---|---|---|
| Insured: | Jellison, David (Umpire) | | | |
| Property: | 16330 FM 1826 | | | |
| | Austin, TX 78737 | | | |

| | | | | |
|---|---|---|---|---|
| Claim Rep.: | Mike Fried | | Business: | (561) 632-4841 |
| Company: | Mike Fried | | | |

| | | | | |
|---|---|---|---|---|
| Estimator: | Mike Fried | | Business: | (561) 632-4841 |
| Company: | Mike Fried | | | |

**Claim Number:** 53364F184          **Policy Number:** 83-32-6465-8          **Type of Loss:** WIND/HAIL

| | | | | |
|---|---|---|---|---|
| Date of Loss: | 11/19/2014 | Date Received: | | |
| Date Inspected: | | Date Entered: | 2/22/2016 | |

| | |
|---|---|
| Price List: | TXAU8X_OCT16 |
| | Restoration/Service/Remodel |
| Estimate: | JELLISON-UMPIRE |



**Aftermath Consulting Group**

Aftermath Consulting Group, LLC
IICRC, HCRI, NFIP, GA, LPA

### JELLISON-UMPIRE

#### Metal Roof

| DESCRIPTION | QUANTITY | UNIT PRICE | TAX | O&P | RCV | DEPREC. | ACV |
|---|---|---|---|---|---|---|---|
| Detach & Reset Metal roofing | 448.00 SF | 3.64 | 5.17 | 327.18 | 1,963.07 | (0.00) | 1,963.07 |
| R&R Flashing, 20" wide | 29.00 LF | 3.39 | 3.33 | 20.32 | 121.96 | (0.00) | 121.96 |
| R&R Ridge cap - metal roofing | 4.00 LF | 6.48 | 0.74 | 5.32 | 31.98 | (0.00) | 31.98 |
| **Totals:  Metal Roof** | | | **9.24** | **352.82** | **2,117.01** | **0.00** | **2,117.01** |

#### Exterior

##### Front Porch

| DESCRIPTION | QUANTITY | UNIT PRICE | TAX | O&P | RCV | DEPREC. | ACV |
|---|---|---|---|---|---|---|---|
| Floor protection - heavy paper and tape | 217.78 SF | 0.19 | 0.72 | 8.42 | 50.52 | (0.00) | 50.52 |
| Sand wood - exterior | 218.00 SF | 1.53 | 1.08 | 66.92 | 401.54 | (0.00) | 401.54 |
| Exterior - stain two coats | 218.00 SF | 1.30 | 6.11 | 57.90 | 347.41 | (0.00) | 347.41 |
| Cleaning Technician - per hour | 1.00 HR | 26.71 | 2.64 | 5.34 | 34.69 | (0.00) | 34.69 |
| **Totals:  Front Porch** | | | **10.55** | **138.58** | **834.16** | **0.00** | **834.16** |

##### Rear Porch

| DESCRIPTION | QUANTITY | UNIT PRICE | TAX | O&P | RCV | DEPREC. | ACV |
|---|---|---|---|---|---|---|---|
| Floor protection - heavy paper and tape | 260.49 SF | 0.19 | 0.86 | 10.08 | 60.43 | (0.00) | 60.43 |
| Sand wood - exterior | 260.49 SF | 1.53 | 1.29 | 79.98 | 479.82 | (0.00) | 479.82 |
| Exterior - stain two coats | 260.49 SF | 1.30 | 7.31 | 69.18 | 415.13 | (0.00) | 415.13 |
| Cleaning Technician - per hour | 1.00 HR | 26.71 | 2.64 | 5.34 | 34.69 | (0.00) | 34.69 |
| **Totals: Rear Porch** | | | **12.10** | **164.58** | **990.07** | **0.00** | **990.07** |
| **Total:  Exterior** | | | **22.65** | **303.16** | **1,824.23** | **0.00** | **1,824.23** |

#### Interior

##### Entry/Foyer

| DESCRIPTION | QUANTITY | UNIT PRICE | TAX | O&P | RCV | DEPREC. | ACV |
|---|---|---|---|---|---|---|---|
| Strip & refinish paneling | 58.86 SF | 1.89 | 2.77 | 22.82 | 136.84 | (17.11) | 119.73 |
| Stain & finish crown molding | 18.94 LF | 1.16 | 0.27 | 4.46 | 26.70 | (3.34) | 23.36 |

**Aftermath Consulting Group**

Aftermath Consulting Group, LLC
IICRC, HCRI, NFIP, GA, LPA

## CONTINUED - Entry/Foyer

| DESCRIPTION | QUANTITY | UNIT PRICE | TAX | O&P | RCV | DEPREC. | ACV |
|---|---|---|---|---|---|---|---|
| Mask the surface area per square foot – plastic and tape - 4 mil | 170.55 SF | 0.18 | 0.70 | 6.28 | 37.68 | (4.72) | 32.96 |
| Floor protection - corrugated cardboard and tape | 57.12 SF | 0.34 | 0.90 | 4.06 | 24.38 | (0.00) | 24.38 |
| Cleaning Technician - per hour | 1.00 HR | 26.71 | 2.64 | 5.34 | 34.69 | (4.34) | 30.35 |
| **Totals: Entry/Foyer** | | | 7.28 | 42.96 | 260.29 | 29.51 | 230.78 |

### Living Room

| DESCRIPTION | QUANTITY | UNIT PRICE | TAX | O&P | RCV | DEPREC. | ACV |
|---|---|---|---|---|---|---|---|
| Content Manipulation charge - per hour | 2.00 HR | 25.95 | 0.00 | 10.38 | 62.28 | (7.79) | 54.49 |
| Mask and prep for paint - plastic, paper, tape (per LF) | 40.20 LF | 0.98 | 0.76 | 8.04 | 48.20 | (6.02) | 42.18 |
| Floor protection - cloth - skid resistant, leak proof | 214.76 SF | 0.75 | 6.02 | 33.42 | 200.51 | (0.00) | 200.51 |
| Detach & Reset Smoke detector | 1.00 EA | 40.52 | 0.00 | 8.10 | 48.62 | (0.00) | 48.62 |
| Detach & Reset Ceiling fan & light | 1.00 EA | 153.86 | 0.00 | 30.78 | 184.64 | (0.00) | 184.64 |
| Detach & Reset Light fixture | 2.00 EA | 41.85 | 0.00 | 16.74 | 100.44 | (0.00) | 100.44 |
| Detach & Reset Heat/AC register - Mechanically attached | 1.00 EA | 12.10 | 0.00 | 2.42 | 14.52 | (0.00) | 14.52 |
| Window Glazing/Repair - per hour | 8.00 HR | 45.26 | 0.00 | 72.42 | 434.50 | (0.00) | 434.50 |
| R&R Window sill - stain grade | 3.00 LF | 3.00 | 0.30 | 1.86 | 11.16 | (1.21) | 9.95 |
| Stain & finish wood window sill | 3.00 LF | 2.03 | 0.04 | 1.22 | 7.35 | (0.92) | 6.43 |
| Window drapery - hardware - Detach & reset | 2.00 EA | 22.12 | 0.00 | 8.84 | 53.08 | (6.64) | 46.44 |
| Window drapery - remove and rehang - per hour | 1.00 HR | 40.37 | 0.00 | 8.08 | 48.45 | (6.06) | 42.39 |
| R&R Baseboard - 2 1/4" stain grade | 39.79 LF | 2.64 | 3.68 | 21.76 | 130.49 | (14.76) | 115.73 |
| Stain & finish baseboard | 39.79 LF | 1.07 | 0.56 | 8.64 | 51.78 | (6.47) | 45.31 |
| Stain & finish crown molding | 40.20 LF | 1.16 | 0.56 | 9.44 | 56.63 | (7.07) | 49.56 |
| Stain & finish paneling | 220.71 SF | 1.15 | 5.28 | 51.82 | 310.92 | (38.86) | 272.06 |
| Drywall patch / small repair, ready for paint | 1.00 EA | 52.46 | 0.20 | 10.54 | 63.20 | (7.90) | 55.30 |
| Texture drywall – heavy hand texture | 363.28 SF | 0.66 | 3.00 | 48.56 | 291.32 | (36.41) | 254.91 |
| Seal the surface area w/PVA primer - one coat | 12.00 SF | 0.40 | 0.05 | 0.98 | 5.83 | (0.73) | 5.10 |
| Paint the surface area - two coats | 363.28 SF | 0.68 | 5.69 | 50.54 | 303.26 | (37.90) | 265.36 |
| Remove Carpet | 214.76 SF | 0.17 | 0.00 | 7.30 | 43.81 | (0.00) | 43.81 |
| Carpet | 246.98 SF | 2.74 | 46.46 | 144.64 | 867.83 | (108.48) | 759.35 |



**Aftermath Consulting Group**

Aftermath Consulting Group, LLC
IICRC, HCRI, NFIP, GA, LPA

### CONTINUED – Living Room

| DESCRIPTION | QUANTITY | UNIT PRICE | TAX | O&P | RCV | DEPREC. | ACV |
|---|---|---|---|---|---|---|---|
| R&R Carpet pad | 214.76 SF | 0.59 | 7.97 | 26.94 | 161.62 | (17.63) | 143.99 |
| Carpet cove (wall wrap) - 8" | 20.00 LF | 5.35 | 4.77 | 22.36 | 134.13 | (16.77) | 117.36 |
| Clean floor and walls* | 795.65 SF | 0.33 | 25.99 | 52.52 | 341.07 | (42.63) | 298.44 |
| **Totals: Living Room** | | | 111.33 | 658.34 | 3,975.64 | 364.25 | 3,611.39 |

### Dining Room

| DESCRIPTION | QUANTITY | UNIT PRICE | TAX | O&P | RCV | DEPREC. | ACV |
|---|---|---|---|---|---|---|---|
| Mask and prep for paint - plastic, paper, tape (per LF) | 42.08 LF | 0.98 | 0.80 | 8.40 | 50.44 | (6.31) | 44.13 |
| Floor protection - cloth - skid resistant, leak proof | 144.42 SF | 0.75 | 4.05 | 22.48 | 134.85 | (0.00) | 134.85 |
| Detach & Reset Smoke detector | 1.00 EA | 40.52 | 0.00 | 8.10 | 48.62 | (0.00) | 48.62 |
| Content Manipulation charge - per hour | 2.00 HR | 25.95 | 0.00 | 10.38 | 62.28 | (7.79) | 54.49 |
| Detach & Reset Heat/AC register - Mechanically attached | 1.00 EA | 12.10 | 0.00 | 2.42 | 14.52 | (0.00) | 14.52 |
| R&R Chandelier | 1.00 EA | 239.05 | 10.53 | 49.90 | 299.48 | (35.69) | 263.79 |
| R&R Outlet or switch cover | 5.00 EA | 2.78 | 0.24 | 2.84 | 16.98 | (1.83) | 15.15 |
| R&R Outlet box - includes 4 connectors and plaster ring | 3.00 EA | 62.36 | 1.55 | 37.74 | 226.37 | (27.24) | 199.13 |
| R&R Outlet | 1.00 EA | 15.33 | 0.11 | 3.08 | 18.52 | (1.85) | 16.67 |
| R&R Switch | 1.00 EA | 15.37 | 0.11 | 3.10 | 18.58 | (1.86) | 16.72 |
| Sliding patio door - Detach & reset | 1.00 EA | 91.20 | 0.04 | 18.24 | 109.48 | (13.69) | 95.79 |
| Window drapery - hardware - Detach & reset | 1.00 EA | 22.12 | 0.00 | 4.42 | 26.54 | (3.32) | 23.22 |
| Window drapery - remove and rehang - per hour | 1.00 HR | 40.37 | 0.00 | 8.08 | 48.45 | (6.06) | 42.39 |
| R&R Baseboard - 2 1/4" stain grade | 40.28 LF | 2.64 | 3.72 | 22.02 | 132.08 | (14.94) | 117.14 |
| Stain & finish baseboard | 40.28 LF | 1.07 | 0.57 | 8.74 | 52.41 | (6.56) | 45.85 |
| R&R Crown molding - 3 1/4" stain grade | 42.08 LF | 5.44 | 8.99 | 47.60 | 285.50 | (33.10) | 252.40 |
| Stain & finish crown molding | 42.08 LF | 1.16 | 0.59 | 9.88 | 59.28 | (7.41) | 51.87 |
| Prep wall for wallpaper | 107.56 SF | 0.39 | 0.00 | 8.40 | 50.35 | (6.29) | 44.06 |
| R&R Wallpaper - High grade | 107.56 SF | 2.79 | 11.54 | 62.32 | 373.95 | (37.39) | 336.56 |
| R&R 1/2" drywall - hung, taped, ready for texture | 160.05 SF | 1.74 | 5.55 | 56.82 | 340.85 | (36.36) | 304.49 |
| R&R Batt insulation - 10" - R30 - paper faced | 182.52 SF | 1.41 | 13.25 | 54.14 | 324.74 | (34.57) | 290.17 |
| Texture drywall - heavy hand texture | 178.53 SF | 0.66 | 1.47 | 23.86 | 143.16 | (17.89) | 125.27 |

**Aftermath Consulting Group**

Aftermath Consulting Group, LLC
IICRC, HCRI, NFIP, GA, LPA

### CONTINUED - Dining Room

| DESCRIPTION | QUANTITY | UNIT PRICE | TAX | O&P | RCV | DEPREC. | ACV |
|---|---|---|---|---|---|---|---|
| Seal the surface area w/PVA primer - one coat | 160.05 SF | 0.40 | 0.66 | 12.94 | 77.62 | (9.70) | 67.92 |
| Paint the surface area - two coats | 178.53 SF | 0.68 | 2.80 | 24.84 | 149.04 | (18.63) | 130.41 |
| R&R Bead board - 1/2" MDF | 146.65 SF | 3.79 | 27.71 | 116.70 | 700.21 | (83.13) | 617.08 |
| Stain & finish ceiling* | 146.65 LF | 1.08 | 2.18 | 32.12 | 192.68 | (24.09) | 168.59 |
| Remove Carpet | 144.42 SF | 0.17 | 0.00 | 4.92 | 29.47 | (0.00) | 29.47 |
| Carpet | 166.08 SF | 2.74 | 31.24 | 97.26 | 583.56 | (72.95) | 510.61 |
| R&R Carpet pad | 144.42 SF | 0.59 | 5.36 | 18.14 | 108.70 | (11.85) | 96.85 |
| Clean floor and walls* | 667.06 SF | 0.33 | 21.79 | 44.02 | 285.94 | (35.74) | 250.20 |

| Totals: Dining Room | | | 154.85 | 823.90 | 4,964.65 | 556.24 | 4,408.41 |
|---|---|---|---|---|---|---|---|

### Breakfast Area/Room

| DESCRIPTION | QUANTITY | UNIT PRICE | TAX | O&P | RCV | DEPREC. | ACV |
|---|---|---|---|---|---|---|---|
| Content Manipulation charge - per hour | 2.00 HR | 25.95 | 0.00 | 10.38 | 62.28 | (7.79) | 54.49 |
| Mask and prep for paint - plastic, paper, tape (per LF) | 33.65 LF | 0.98 | 0.64 | 6.72 | 40.34 | (5.05) | 35.29 |
| Detach & Reset Smoke detector | 1.00 EA | 40.52 | 0.00 | 8.10 | 48.62 | (0.00) | 48.62 |
| R&R Ceiling fan & light | 1.00 EA | 301.11 | 10.52 | 62.32 | 373.95 | (44.99) | 328.96 |
| Detach & Reset Light fixture | 1.00 EA | 41.85 | 0.00 | 8.38 | 50.23 | (0.00) | 50.23 |
| Detach & Reset Heat/AC register - Mechanically attached | 1.00 EA | 12.10 | 0.00 | 2.42 | 14.52 | (0.00) | 14.52 |
| R&R Outlet or switch cover | 4.00 EA | 2.78 | 0.19 | 2.28 | 13.59 | (1.46) | 12.13 |
| Window drapery - hardware - Detach & reset | 1.00 EA | 22.12 | 0.00 | 4.42 | 26.54 | (3.32) | 23.22 |
| Window drapery - remove and rehang - per hour | 1.00 HR | 40.37 | 0.00 | 8.08 | 48.45 | (6.06) | 42.39 |
| Floor preparation for resilient flooring | 170.83 SF | 0.38 | 1.41 | 13.26 | 79.59 | (9.95) | 69.64 |
| Remove Vinyl floor - per specs from independent vinyl analysis | 170.83 SF | 0.57 | 0.00 | 19.48 | 116.85 | (0.00) | 116.85 |
| Vinyl floor - per specs from independent vinyl analysis | 196.45 SF | 4.47 | 2.27 | 176.08 | 1,056.48 | (132.06) | 924.42 |
| R&R Baseboard - 2 1/4" stain grade | 33.65 LF | 2.64 | 3.11 | 18.40 | 110.35 | (12.48) | 97.87 |
| R&R Base shoe - stain grade | 33.65 LF | 1.24 | 1.58 | 8.66 | 51.96 | (5.94) | 46.02 |
| R&R Corner trim - stain grade | 16.00 LF | 1.81 | 1.41 | 6.08 | 36.45 | (4.29) | 32.16 |
| Prep wall for wallpaper | 269.21 SF | 0.39 | 0.00 | 21.00 | 125.99 | (15.75) | 110.24 |
| R&R Wallpaper | 269.21 SF | 2.48 | 23.54 | 138.22 | 829.40 | (80.26) | 749.14 |
| R&R Wallpaper border | 33.65 LF | 2.68 | 3.61 | 18.76 | 112.55 | (11.59) | 100.96 |



**Aftermath Consulting Group**

Aftermath Consulting Group, LLC
IICRC, HCRI, NFIP, GA, LPA

### CONTINUED - Breakfast Area/Room

| DESCRIPTION | QUANTITY | UNIT PRICE | TAX | O&P | RCV | DEPREC. | ACV |
|---|---|---|---|---|---|---|---|
| R&R 1/2" drywall - hung, taped, ready for texture | 128.12 SF | 1.74 | 4.44 | 45.46 | 272.83 | (29.11) | 243.72 |
| R&R 5/8" drywall - hung, taped, ready for texture | 143.33 SF | 1.81 | 5.44 | 52.98 | 317.85 | (34.14) | 283.71 |
| R&R Batt insulation - 12" - R38 - paper faced | 142.35 SF | 1.60 | 11.74 | 47.90 | 287.40 | (30.37) | 257.03 |
| R&R Batt insulation - 4" - R13 - paper faced | 143.33 SF | 0.76 | 4.85 | 22.76 | 136.54 | (13.84) | 122.70 |
| Scrape the surface area & prep for paint | 14.24 SF | 0.43 | 0.01 | 1.22 | 7.35 | (0.92) | 6.43 |
| Texture drywall - heavy hand texture | 142.35 SF | 0.66 | 1.17 | 19.04 | 114.16 | (14.27) | 99.89 |
| Seal the surface area w/PVA primer - one coat | 271.45 SF | 0.40 | 1.12 | 21.94 | 131.64 | (16.46) | 115.18 |
| Paint the surface area - two coats | 142.35 SF | 0.68 | 2.23 | 19.80 | 118.83 | (14.85) | 103.98 |
| Stain & finish baseboard | 33.65 LF | 1.07 | 0.47 | 7.30 | 43.78 | (5.47) | 38.31 |
| Stain & finish base shoe or quarter round | 33.65 LF | 0.88 | 0.47 | 6.02 | 36.10 | (4.51) | 31.59 |
| Stain & finish corner trim | 16.00 LF | 1.07 | 0.22 | 3.46 | 20.80 | (2.60) | 18.20 |
| Clean floor and walls* | 553.92 SF | 0.33 | 18.10 | 36.56 | 237.45 | (29.68) | 207.77 |
| **Totals:  Breakfast Area/Room** | | | **98.54** | **817.48** | **4,922.87** | **537.21** | **4,385.66** |

### Kitchen

| DESCRIPTION | QUANTITY | UNIT PRICE | TAX | O&P | RCV | DEPREC. | ACV |
|---|---|---|---|---|---|---|---|
| Mask and prep for paint - plastic, paper, tape (per LF) | 34.13 LF | 0.98 | 0.65 | 6.84 | 40.94 | (5.12) | 35.82 |
| Floor protection - cloth - skid resistant, leak proof | 114.68 SF | 0.75 | 3.22 | 17.84 | 107.07 | (0.00) | 107.07 |
| Protect - Cover with plastic | 155.67 SF | 0.28 | 1.41 | 9.00 | 54.00 | (6.75) | 47.25 |
| Content Manipulation charge - per hour | 2.00 HR | 25.95 | 0.00 | 10.38 | 62.28 | (7.79) | 54.49 |
| Refrigerator - Remove & reset | 1.00 EA | 25.61 | 0.00 | 5.12 | 30.73 | (3.84) | 26.89 |
| Dishwasher - Detach & reset | 1.00 EA | 205.89 | 0.00 | 41.18 | 247.07 | (30.88) | 216.19 |
| Detach & Reset Light fixture | 1.00 EA | 41.85 | 0.00 | 8.38 | 50.23 | (0.00) | 50.23 |
| Fluorescent light fixture - 2' & 4' - Detach & reset | 1.00 EA | 60.76 | 0.00 | 12.16 | 72.92 | (9.11) | 63.81 |
| Ceiling hook - Detach & reset | 1.00 EA | 3.45 | 0.00 | 0.70 | 4.15 | (0.52) | 3.63 |
| Detach & Reset Heat/AC register - Mechanically attached | 1.00 EA | 12.10 | 0.00 | 2.42 | 14.52 | (0.00) | 14.52 |
| R&R Outlet or switch cover | 8.00 EA | 2.78 | 0.38 | 4.52 | 27.14 | (2.93) | 24.21 |
| Floor preparation for resilient flooring | 137.61 SF | 0.38 | 1.14 | 10.68 | 64.11 | (8.01) | 56.10 |
| Remove Vinyl floor - per specs from independent vinyl analysis | 137.61 SF | 0.57 | 0.00 | 15.68 | 94.12 | (0.00) | 94.12 |

**Aftermath Consulting Group**

Aftermath Consulting Group, LLC
IICRC, HCRI, NFIP, GA, LPA

CONTINUED - Kitchen

| DESCRIPTION | QUANTITY | UNIT PRICE | TAX | O&P | RCV | DEPREC. | ACV |
|---|---|---|---|---|---|---|---|
| Vinyl floor - per specs from independent vinyl analysis | 158.25 SF | 4.47 | 1.83 | 141.84 | 851.05 | (106.38) | 744.67 |
| Prep wall for wallpaper | 263.34 SF | 0.39 | 0.00 | 20.54 | 123.24 | (15.41) | 107.83 |
| R&R Wallpaper | 263.34 SF | 2.48 | 23.03 | 135.22 | 811.34 | (78.50) | 732.84 |
| R&R Wallpaper border | 10.24 LF | 2.68 | 1.10 | 5.70 | 34.25 | (3.52) | 30.73 |
| Scrape the surface area & prep for paint | 114.68 SF | 0.43 | 0.09 | 9.88 | 59.28 | (7.41) | 51.87 |
| Texture drywall - heavy hand texture | 114.68 SF | 0.66 | 0.95 | 15.34 | 91.98 | (11.49) | 80.49 |
| Paint the surface area - two coats | 114.68 SF | 0.68 | 1.80 | 15.96 | 95.74 | (11.97) | 83.77 |
| Clean floor and walls* | 492.69 SF | 0.33 | 16.09 | 32.52 | 211.20 | (26.40) | 184.80 |
| **Totals: Kitchen** | | | 51.69 | 521.90 | 3,147.36 | 336.03 | 2,811.33 |

Laundry Room

| DESCRIPTION | QUANTITY | UNIT PRICE | TAX | O&P | RCV | DEPREC. | ACV |
|---|---|---|---|---|---|---|---|
| Mask and prep for paint - plastic, paper, tape (per LF) | 19.00 LF | 0.98 | 0.36 | 3.80 | 22.78 | (2.84) | 19.94 |
| Floor protection - cloth - skid resistant, leak proof | 19.07 SF | 0.75 | 0.53 | 2.96 | 17.79 | (0.00) | 17.79 |
| Content Manipulation charge - per hour | 2.00 HR | 25.95 | 0.00 | 10.38 | 62.28 | (7.79) | 54.49 |
| Washing machine - Remove & reset | 1.00 EA | 21.34 | 0.00 | 4.26 | 25.60 | (3.20) | 22.40 |
| Dryer - Remove & reset | 1.00 EA | 19.22 | 0.00 | 3.84 | 23.06 | (2.88) | 20.18 |
| R&R Water heater overflow drain pan | 1.00 EA | 44.31 | 1.65 | 9.20 | 55.16 | (6.31) | 48.85 |
| R&R Water heater - 30 gallon - Electric - 6 yr | 1.00 EA | 681.66 | 30.07 | 142.36 | 854.09 | (101.38) | 752.71 |
| Shelving - Detach & reset | 10.00 LF | 5.28 | 0.02 | 10.56 | 63.38 | (7.92) | 55.46 |
| R&R Ground fault interrupter (GFI) outlet | 1.00 EA | 29.86 | 1.23 | 6.22 | 37.31 | (4.24) | 33.07 |
| R&R Light fixture | 1.00 EA | 67.91 | 2.72 | 14.12 | 84.75 | (9.82) | 74.93 |
| Detach & Reset Heat/AC register - Mechanically attached | 1.00 EA | 12.10 | 0.00 | 2.42 | 14.52 | (0.00) | 14.52 |
| R&R Baseboard - 2 1/4" stain grade | 19.90 LF | 2.64 | 1.84 | 10.88 | 65.25 | (7.38) | 57.87 |
| Stain & finish baseboard | 19.90 LF | 1.07 | 0.28 | 4.32 | 25.89 | (3.23) | 22.66 |
| R&R 1/2" drywall - hung, taped, ready for texture | 40.00 SF | 1.74 | 1.39 | 14.20 | 85.19 | (9.09) | 76.10 |
| R&R 5/8" drywall - hung, taped, ready for texture | 19.56 SF | 1.81 | 0.74 | 7.22 | 43.37 | (4.66) | 38.71 |
| R&R Batt insulation - 10" - R30 - paper faced | 19.56 SF | 1.41 | 1.42 | 5.80 | 34.80 | (3.70) | 31.10 |
| R&R Batt insulation - 4" - R13 - paper faced | 40.00 SF | 0.76 | 1.35 | 6.36 | 38.11 | (3.86) | 34.25 |



**Aftermath Consulting Group**

Aftermath Consulting Group, LLC
IICRC, HCRI, NFIP, GA, LPA

CONTINUED - Laundry Room

| DESCRIPTION | QUANTITY | UNIT PRICE | TAX | O&P | RCV | DEPREC. | ACV |
|---|---|---|---|---|---|---|---|
| Texture drywall - heavy hand texture | 178.24 SF | 0.66 | 1.47 | 23.82 | 142.93 | (17.87) | 125.06 |
| Seal the surface area w/PVA primer - one coat | 178.24 SF | 0.40 | 0.74 | 14.40 | 86.44 | (10.81) | 75.63 |
| Paint the surface area - two coats | 178.24 SF | 0.68 | 2.79 | 24.80 | 148.79 | (18.60) | 130.19 |
| Bifold door set - (4 slabs only) - Double Detach & reset | 2.00 EA | 28.05 | 0.00 | 11.22 | 67.32 | (8.42) | 58.90 |
| Stain & finish full louvered door slab only - (per side) | 4.00 EA | 50.82 | 3.20 | 41.30 | 247.78 | (30.97) | 216.81 |
| R&R Casing - 2 1/4" stain grade | 34.67 LF | 2.30 | 3.80 | 16.72 | 100.26 | (10.87) | 89.39 |
| Stain & finish casing | 34.67 LF | 1.07 | 0.49 | 7.52 | 45.11 | (5.64) | 39.47 |
| Floor preparation for resilient flooring | 19.07 SF | 0.38 | 0.16 | 1.50 | 8.91 | (1.11) | 7.80 |
| Remove Vinyl floor - per specs from independent vinyl analysis | 22.89 SF | 0.57 | 0.00 | 2.62 | 15.67 | (0.00) | 15.67 |
| Vinyl floor - per specs from independent vinyl analysis | 26.32 SF | 4.47 | 0.30 | 23.60 | 141.55 | (17.70) | 123.85 |
| Clean floor and walls* | 197.32 SF | 0.33 | 6.44 | 13.02 | 84.58 | (10.58) | 74.00 |
| **Totals:  Laundry Room** | | | 62.99 | 439.42 | 2,642.67 | 310.87 | 2,331.80 |

**Hallway**

| DESCRIPTION | QUANTITY | UNIT PRICE | TAX | O&P | RCV | DEPREC. | ACV |
|---|---|---|---|---|---|---|---|
| Remove Carpet | 41.39 SF | 0.17 | 0.00 | 1.40 | 8.44 | (0.00) | 8.44 |
| Carpet | 45.53 SF | 4.35 | 8.56 | 41.34 | 247.96 | (30.99) | 216.97 |
| R&R Carpet pad | 41.39 SF | 0.86 | 1.54 | 7.42 | 44.55 | (5.07) | 39.48 |
| Paint baseboard - two coats | 28.17 LF | 0.99 | 0.26 | 5.64 | 33.79 | (4.22) | 29.57 |
| **Totals:  Hallway** | | | 10.36 | 55.80 | 334.74 | 40.28 | 294.46 |

**Hall Closet**

| DESCRIPTION | QUANTITY | UNIT PRICE | TAX | O&P | RCV | DEPREC. | ACV |
|---|---|---|---|---|---|---|---|
| Content Manipulation charge - per hour | 1.00 HR | 25.95 | 0.00 | 5.20 | 31.15 | (3.89) | 27.26 |
| R&R Carpet pad | 20.08 SF | 0.86 | 0.75 | 3.62 | 21.64 | (2.46) | 19.18 |
| Remove Carpet | 20.08 SF | 0.17 | 0.00 | 0.68 | 4.09 | (0.00) | 4.09 |
| Carpet | 66.42 SF | 4.35 | 12.49 | 60.28 | 361.70 | (45.21) | 316.49 |
| Paint baseboard - two coats | 18.00 LF | 0.99 | 0.16 | 3.60 | 21.58 | (2.69) | 18.89 |



**Aftermath Consulting Group**

Aftermath Consulting Group, LLC
IICRC, HCRI, NFIP, GA, LPA

**CONTINUED - Hall Closet**

| DESCRIPTION | QUANTITY | UNIT PRICE | TAX | O&P | RCV | DEPREC. | ACV |
|---|---|---|---|---|---|---|---|
| Totals: Hall Closet | | | 13.40 | 73.38 | 440.16 | 54.25 | 385.91 |

### Bedroom 1

| DESCRIPTION | QUANTITY | UNIT PRICE | TAX | O&P | RCV | DEPREC. | ACV |
|---|---|---|---|---|---|---|---|
| Content Manipulation charge - per hour | 1.00 HR | 25.95 | 0.00 | 5.20 | 31.15 | (3.89) | 27.26 |
| Prep wall for wallpaper | 90.67 SF | 0.39 | 0.00 | 7.08 | 42.44 | (5.30) | 37.14 |
| R&R Wallpaper - High grade | 90.67 SF | 2.79 | 9.72 | 52.54 | 315.23 | (31.52) | 283.71 |
| R&R Carpet pad | 151.56 SF | 0.86 | 5.63 | 27.18 | 163.15 | (18.57) | 144.58 |
| Remove Carpet | 151.56 SF | 0.17 | 0.00 | 5.16 | 30.93 | (0.00) | 30.93 |
| Carpet | 205.83 SF | 4.35 | 38.72 | 186.82 | 1,120.90 | (140.11) | 980.79 |
| R&R Baseboard - 3 1/4" | 11.33 LF | 2.54 | 0.93 | 5.94 | 35.65 | (3.96) | 31.69 |
| Paint baseboard - two coats | 46.67 LF | 0.99 | 0.42 | 9.32 | 55.94 | (6.99) | 48.95 |
| Cleaning Technician - per hour | 1.00 HR | 26.71 | 2.64 | 5.34 | 34.69 | (4.34) | 30.35 |
| Totals: Bedroom 1 | | | 58.06 | 304.58 | 1,830.08 | 214.68 | 1,615.40 |

### Bedroom #2

| DESCRIPTION | QUANTITY | UNIT PRICE | TAX | O&P | RCV | DEPREC. | ACV |
|---|---|---|---|---|---|---|---|
| Content Manipulation charge - per hour | 2.00 HR | 25.95 | 0.00 | 10.38 | 62.28 | (7.79) | 54.49 |
| R&R Carpet pad | 181.14 SF | 0.86 | 6.72 | 32.50 | 195.00 | (22.20) | 172.80 |
| Remove Carpet | 181.14 SF | 0.17 | 0.00 | 6.16 | 36.95 | (0.00) | 36.95 |
| Carpet | 238.92 SF | 4.35 | 44.94 | 216.84 | 1,301.08 | (162.64) | 1,138.44 |
| Paint baseboard - two coats | 52.00 LF | 0.99 | 0.47 | 10.40 | 62.35 | (7.79) | 54.56 |
| Cleaning Technician - per hour | 1.00 HR | 26.71 | 2.64 | 5.34 | 34.69 | (4.34) | 30.35 |
| Totals: Bedroom #2 | | | 54.77 | 281.62 | 1,692.35 | 204.76 | 1,487.59 |

### Master Bedroom

| DESCRIPTION | QUANTITY | UNIT PRICE | TAX | O&P | RCV | DEPREC. | ACV |
|---|---|---|---|---|---|---|---|
| Content Manipulation charge - per hour | 2.00 HR | 25.95 | 0.00 | 10.38 | 62.28 | (7.79) | 54.49 |
| R&R Carpet pad | 305.31 SF | 0.86 | 11.33 | 54.76 | 328.65 | (37.42) | 291.23 |

**Aftermath Consulting Group**

ACG
Aftermath Consulting Group LLC

Aftermath Consulting Group, LLC
IICRC, HCRI, NFIP, GA, LPA

**CONTINUED - Master Bedroom**

| DESCRIPTION | QUANTITY | UNIT PRICE | TAX | O&P | RCV | DEPREC. | ACV |
|---|---|---|---|---|---|---|---|
| Remove Carpet | 305.31 SF | 0.17 | 0.00 | 10.38 | 62.28 | (0.00) | 62.28 |
| Carpet | 369.75 SF | 4.35 | 69.55 | 335.60 | 2,013.56 | (251.69) | 1,761.87 |
| Paint baseboard - two coats | 50.70 LF | 0.99 | 0.46 | 10.14 | 60.79 | (7.60) | 53.19 |
| Cleaning Technician - per hour | 1.00 HR | 26.71 | 2.64 | 5.34 | 34.69 | (4.34) | 30.35 |
| **Totals: Master Bedroom** | | | **83.98** | **426.60** | **2,562.25** | **308.84** | **2,253.41** |

Garage

| DESCRIPTION | QUANTITY | UNIT PRICE | TAX | O&P | RCV | DEPREC. | ACV |
|---|---|---|---|---|---|---|---|
| R&R 5/8" drywall - hung, taped, floated, ready for paint | 96.00 SF | 2.00 | 3.64 | 39.12 | 234.76 | (25.61) | 209.15 |
| Detach & Reset Overhead (garage) door opener - High grade | 1.00 EA | 148.18 | 0.00 | 29.64 | 177.82 | (0.00) | 177.82 |
| Content Manipulation charge - per hour | 2.00 HR | 25.95 | 0.00 | 10.38 | 62.28 | (7.79) | 54.49 |
| Cleaning Technician - per hour | 2.00 HR | 26.71 | 5.29 | 10.68 | 69.39 | (8.67) | 60.72 |
| **Totals: Garage** | | | **8.93** | **89.82** | **544.25** | **42.07** | **502.18** |
| **Total: Interior** | | | **716.18** | **4,535.80** | **27,317.31** | **2,998.99** | **24,318.32** |

General

| DESCRIPTION | QUANTITY | UNIT PRICE | TAX | O&P | RCV | DEPREC. | ACV |
|---|---|---|---|---|---|---|---|
| Taxes, insurance, permits & fees (Bid Item) * | 1.00 EA | 250.00 | 0.00 | 0.00 | 250.00 | (250.00) | 0.00 |
| Dumpster load - Approx. 40 yards, 7-8 tons of debris | 1.00 EA | 652.71 | 0.00 | 130.54 | 783.25 | (0.00) | 783.25 |
| Temporary toilet (per month) | 1.00 MO | 149.80 | 0.00 | 29.96 | 179.76 | (0.00) | 179.76 |
| Clean ductwork - Interior - Heavy clean (PER REGISTER) | 8.00 EA | 35.63 | 28.27 | 57.02 | 370.33 | (0.00) | 370.33 |
| **Totals: General** | | | **28.27** | **217.52** | **1,583.34** | **250.00** | **1,333.34** |
| **Line Item Totals: JELLISON-UMPIRE** | | | **776.34** | **5,409.30** | **32,841.89** | **3,248.99** | **29,592.90** |



**Aftermath Consulting Group**

Aftermath Consulting Group, LLC
IICRC, HCRI, NFIP, GA, LPA

## Summary for Dwelling

| | |
|---|---:|
| Line Item Total | 26,656.25 |
| Material Sales Tax | 637.12 |
| Cleaning Mtl Tax | 1.46 |
| Subtotal | 27,294.83 |
| Overhead | 2,704.65 |
| Profit | 2,704.65 |
| Cleaning Sales Tax | 137.76 |
| **Replacement Cost Value** | **$32,841.89** |
| Less Depreciation | (3,248.99) |
| **Actual Cash Value** | **$29,592.90** |
| **Net Claim** | **$29,592.90** |
| Total Recoverable Depreciation | 3,248.99 |
| **Net Claim if Depreciation is Recovered** | **$32,841.89** |

Mike Fried

# EXHIBIT B-9



THE
WENHOLZ
LAW FIRM
PLLC

January 19, 2015

**VIA CMRRR**
**VIA Fax: (844) 236-3646**
Jay Vath, Claim Representative
State Farm Insurance
PO Box 106169
Atlanta, Georgia 30348-6169

Re:   Insured:     David Jellison
       Loss Address: 16330 FM 1826
                    Austin, Texas 78737-8809
       Claim No.:    53-364F-184
       DOL:          10/31/2013
       Policy #:      83-32-6465-8

Dear Jay Vath:

      Please be advised that I represent David Jellison with his dispute concerning the aforementioned claim. I would ask that you and your representatives refer all communication about this claim to my office. Do not contact my client directly about this matter without my prior written approval.

      This letter shall also serve as my client's notice to State Farm Insurance ("State Farm") of their intent to file suit under the Deceptive Trade Practices Act and Texas Insurance Code at the expiration of 60 days from the date of this letter if a compromise cannot be reached.

      Mr. Jellison is troubled and disappointed by the way State Farm handled his roof loss. He paid his premiums faithfully so his home would be protected in case of weather related damage. In this claim, it is my understanding that State Farm found that Mr. Jellison had a valid covered loss totaling over $10,000.00 from the October 31, 2013 Thunderstorm that caused massive flooding of Onion Creek near his home. Mr. Jellison feels that State Farm underestimated his damages/loss and overestimated his depreciation. This led to State Farm's decision not to pay for the damage because the actual cash value of the claim allegedly did not exceed his deductible.

      According to Mr. Jellison's contractor, the damages sustained to his structure on October 31, 2013, total $38,624.21. One example of the underpayment of this claim is the roof you stated

SF-Jellison - 000174

2

there was no evidence of wind or hail damage.   Yet, Mr. Jellison paid a roofing company $1,500.00 to make necessary repairs.   That company will testify regarding the damages they witnessed to the roof.  Mr. Jellison believes this indicative of the unfair approach State Farm has taken to resolve his claim.

Mr. Jellison paid his premiums faithfully to ensure his home would be covered should it be damaged in a storm.  Instead, my client was forced to pay out of his own pocket to get his damaged roof replaced, and is still financially unable to pay for the water damage caused to the interior of his home and the roof's infrastructure.

Accordingly, my client maintains State Farm committed violations of the following provisions of  Tex. Ins. Code §541.060 (a)(1), (2), (3), (4), (7), §541.061(1)-(5), § 542.003 (b) (1), (2), (3), (4), (5); §§ 542.055, 542.056, 542.057, 542.058; D.T.P.A. § 17.46(b)(5), (7), (12), §17.50(a)(1)(A), (B)(3), (4); breached the insurance contract; and breached the common law duty of good faith and fair dealing.   Moreover, it will be my client's position that the aforementioned conduct exhibited to date on this file was committed knowingly and was a producing cause of damage.  Accordingly, my client will ask for mental anguish, three times the amount of economic damages, court costs and reasonable attorney's fees in any suit filed.

I have been authorized to demand **$55,378.37** to settle this case before filing suit.  This demand consists of the following damages: repair costs: **$34,584.21** ($38,624.21 - $4,040.00)[1]; attorney fees: **$13,833.68** (40%); late payment penalties: **$6,960.48** (18% from payment date of 11/25/13). Should this claim result in litigation, my client will seek additional damages under the Insurance Code that will greatly increase the insurance company's exposure.

In return for paying the current demand of **$55,378.37**, Mr. Jellison will release your firm, the insurer and all other insurance company representatives from all liability on this matter.

Please contact me at your earliest convenience to discuss an amicable settlement.

Yours very truly,

David C. Wenholz

enc.

cc:      Mr. David Jellison

---

[1] A copy of Mr. Jellison's repair estimate, by Mr. Jim Cumby, is enclosed.

13501 GALLERIA CIRCLE • W-270 • BEE CAVE, TX 78738 • (512)478-2211 • FAX: (512)478-3625 • WWW.WENHOLZ.COM

SF-Jellison - 000175

# WESTKADE

3436 Winding Shore Ln
Pflugerville, TX 78660
damage@westkade.com

Client:        David Jellison
Property:      16330 FM 1826
               Austin, TX 78737

Operator Info:
Operator:      WESTKADE

Estimator:     Westkade                              E-mail:   damage@westkade.com
Company:       Westkade Consulting

Type of Estimate:   Wind/Hail
Date Entered:       11/19/2014          Date Assigned:   11/17/2014

Price List:         TXAU7X_NOV14
Labor Efficiency:   Restoration/Service/Remodel
Estimate:           JELLISON

SF-Jellison - 000176

01/19/2015   14:16                                    (FAX)                        P.005/018

WESTKADE

3436 Winding Shore Ln
Pflugerville, TX 78660
damage@westkade.com

### JELLISON

**General**

| DESCRIPTION | QUANTITY | UNIT COST | RCV | DEPREC. | ACV |
|---|---|---|---|---|---|
| Electrical Allowance | 1.00 EA | 550.00 | 550.00 | (0.00) | 550.00 |
| Allowance to retain an Electrician to perform an inspection and test of the electrical system | | | | | |
| Eye protection - plastic goggles - Disposable | 6.00 EA | 7.81 | 46.86 | (0.00) | 46.86 |
| Insurance, permits & fees (6% of $29,328.13) | 1.00 EA | 1,759.69 | 1,759.69 | (0.00) | 1,759.69 |
| Dumpster load - Approx. 20 yards, 4 tons of debris | 1.00 EA | 501.00 | 501.00 | (0.00) | 501.00 |
| Clean ductwork - Interior (PER REGISTER) | 8.00 EA | 26.27 | 210.16 | (0.00) | 210.16 |
| **Totals: General** | | | **3,067.71** | **0.00** | **3,067.71** |

**Exterior**

| DESCRIPTION | QUANTITY | UNIT COST | RCV | DEPREC. | ACV |
|---|---|---|---|---|---|
| Gutter - Labor Minimum | 1.00 EA | 225.74 | 225.74 | (0.00) | 225.74 |
| **Totals: Exterior** | | | **225.74** | **0.00** | **225.74** |

### Main Level



**Breakfast Area/Room**                                                                 Height: 8'

| | |
|---|---|
| 269.21 SF Walls | 142.35 SF Ceiling |
| 411.56 SF Walls & Ceiling | 142.35 SF Floor |
| 15.82 SY Flooring | 33.65 LF Floor Perimeter |
| 33.65 LF Ceil. Perimeter | |

| | | |
|---|---|---|
| Missing Wall | 13' 4 9/16" X 8' | Opens into KITCHEN |
| Missing Wall | 6 1/16" X 8' | Opens into KITCHEN |
| Missing Wall | 4' 2 11/16" X 8' | Opens into DINING_ROOM |

| DESCRIPTION | QUANTITY | UNIT COST | RCV | DEPREC. | ACV |
|---|---|---|---|---|---|
| Mask and prep for paint - plastic, paper, tape (per LF) | 33.65 LF | 0.91 | 30.62 | (0.00) | 30.62 |
| Floor protection - cloth - skid resistant, leak proof | 142.35 SF | 0.74 | 105.34 | (0.00) | 105.34 |

LLISON                                                              12/31/2014          Page: 2

SF-Jellison - 000177

01/19/2015   14:16                                    (FAX)                        P.006/018

WESTKADE

3436 Winding Shore Ln
Pflugerville, TX 78660
damage@westkade.com

### CONTINUED - Breakfast Area/Room

| DESCRIPTION | QUANTITY | UNIT COST | RCV | DEPREC. | ACV |
|---|---|---|---|---|---|
| Sliding patio door - Detach & reset | 1.00 EA | 91.31 | 91.31 | (0.00) | 91.31 |
| Window drapery - hardware - Detach & reset | 1.00 EA | 22.13 | 22.13 | (0.00) | 22.13 |
| Window drapery - remove and rehang - per hour | 1.00 HR | 40.40 | 40.40 | (0.00) | 40.40 |
| Outlet or switch cover - Detach & reset | 4.00 EA | 1.81 | 7.24 | (0.00) | 7.24 |
| Vinyl floor covering (sheet goods) | 142.35 SF | 0.56 | 79.72 | (0.00) | 79.72 |
| Floor preparation for resilient flooring | 142.35 SF | 0.38 | 54.09 | (0.00) | 54.09 |
| Vinyl floor - per specs from independent vinyl analysis | 170.83 SF | 4.47 | 763.61 | (0.00) | 763.61 |
| *per vinyl analysis referenced by carrier | | | | | |
| Baseboard - 2 1/4" stain grade | 33.65 LF | 2.59 | 87.15 | (0.00) | 87.15 |
| Base shoe - stain grade | 33.65 LF | 1.21 | 40.72 | (0.00) | 40.72 |
| Ceiling fan & light | 1.00 EA | 279.42 | 279.42 | (0.00) | 279.42 |
| Corner trim - stain grade | 16.00 LF | 1.81 | 28.96 | (0.00) | 28.96 |
| Prep wall for wallpaper | 269.21 SF | 0.37 | 99.61 | (0.00) | 99.61 |
| Wallpaper | 269.21 SF | 2.48 | 667.64 | (0.00) | 667.64 |
| Wallpaper border | 33.65 LF | 2.77 | 93.22 | (0.00) | 93.22 |
| Additional labor charge to cover outlet/switch plates | 1.00 EA | 9.69 | 9.69 | (0.00) | 9.69 |
| 1/2" drywall - hung. taped, ready for texture | 128.12 SF | 1.65 | 211.40 | (0.00) | 211.40 |
| 5/8" drywall - hung. taped, ready for texture | 143.33 SF | 1.72 | 246.53 | (0.00) | 246.53 |
| Batt insulation - 12" - R38 - paper faced | 142.35 SF | 1.48 | 210.67 | (0.00) | 210.67 |
| Batt insulation - 4" - R13 - paper faced | 143.33 SF | 0.72 | 103.20 | (0.00) | 103.20 |
| Remove Texture | 14.24 SF | 0.55 | 7.83 | (0.00) | 7.83 |
| Texture drywall - heavy hand texture | 142.35 SF | 0.58 | 82.56 | (0.00) | 82.56 |
| Seal more than the ceiling w/PVA primer - one coat | 271.45 SF | 0.35 | 95.01 | (0.00) | 95.01 |
| Paint the ceiling - two coats | 142.35 SF | 0.61 | 86.83 | (0.00) | 86.83 |
| Stain & finish baseboard | 33.65 LF | 0.93 | 31.29 | (0.00) | 31.29 |
| Stain & finish base shoe or quarter round | 33.65 LF | 0.77 | 25.91 | (0.00) | 25.91 |
| Stain & finish corner trim | 16.00 LF | 0.93 | 14.88 | (0.00) | 14.88 |
| Clean all horizontal and vertical surfaces. | 553.92 SF | 0.28 | 155.10 | (0.00) | 155.10 |

LLISON                                          12/31/2014              Page: 3

SF-Jellison - 000178

01/19/2015   14:16                                    (FAX)                        P.007/018

WESTKADE

3436 Winding Shore Ln
Pflugerville, TX 78660
damage@westkade.com


CONTINUED - Breakfast Area/Room


| DESCRIPTION | QUANTITY | UNIT COST | RCV | DEPREC. | ACV |
|---|---|---|---|---|---|
| Totals: Breakfast Area/Room | | | 3,772.08 | 0.00 | 3,772.08 |




| Laundry Room | | | | | Height: 8' |
|---|---|---|---|---|---|

159.17 SF Walls                    19.07 SF Ceiling
178.24 SF Walls & Ceiling          19.07 SF Floor
2.12 SY Flooring                   19.90 LF Floor Perimeter
19.90 LF Ceil. Perimeter


| DESCRIPTION | QUANTITY | UNIT COST | RCV | DEPREC. | ACV |
|---|---|---|---|---|---|
| Mask and prep for paint - plastic, paper, tape (per LF) | 19.90 LF | 0.91 | 18.11 | (0.00) | 18.11 |
| Floor protection - cloth - skid resistant, leak proof | 19.07 SF | 0.74 | 14.11 | (0.00) | 14.11 |
| Outlet or switch cover - Detach & reset | 3.00 EA | 1.81 | 5.43 | (0.00) | 5.43 |
| Washing machine - Remove & reset | 1.00 EA | 21.32 | 21.32 | (0.00) | 21.32 |
| Dryer - Remove & reset | 1.00 EA | 19.20 | 19.20 | (0.00) | 19.20 |
| Water heater overflow drain pan | 1.00 EA | 44.25 | 44.25 | (0.00) | 44.25 |
| Water heater - 30 gallon - Electric - 6 yr | 1.00 EA | 625.98 | 625.98 | (0.00) | 625.98 |
| Shelving - Detach & reset | 10.00 LF | 5.16 | 51.60 | (0.00) | 51.60 |
| Ground fault interrupter (GFI) outlet | 1.00 EA | 27.04 | 27.04 | (0.00) | 27.04 |
| Vinyl floor covering (sheet goods) | 19.07 SF | 0.56 | 10.68 | (0.00) | 10.68 |
| Floor preparation for resilient flooring | 19.07 SF | 0.38 | 7.25 | (0.00) | 7.25 |
| Vinyl floor - per specs from independent vinyl analysis *per vinyl analysis referenced by carrier | 22.89 SF | 4.47 | 102.32 | (0.00) | 102.32 |
| Baseboard - 2 1/4" stain grade | 19.90 LF | 2.59 | 51.54 | (0.00) | 51.54 |
| Stain & finish baseboard | 19.90 LF | 0.93 | 18.51 | (0.00) | 18.51 |
| Light fixture | 1.00 EA | 59.50 | 59.50 | (0.00) | 59.50 |
| 1/2" drywall - hung, taped, ready for texture | 19.07 SF | 1.65 | 31.47 | (0.00) | 31.47 |
| 5/8" drywall - hung, taped, ready for texture | 159.17 SF | 1.72 | 273.77 | (0.00) | 273.77 |
| Batt insulation - 12" - R38 - paper faced | 19.07 SF | 1.48 | 28.23 | (0.00) | 28.23 |

LLISON                                              12/31/2014              Page: 4

SF-Jellison - 000179

WESTKADE

3436 Winding Shore Ln
Pflugerville, TX 78660
damage@westkade.com

CONTINUED - Laundry Room

| DESCRIPTION | QUANTITY | UNIT COST | RCV | DEPREC. | ACV |
|---|---|---|---|---|---|
| Batt insulation - 4" - R13 - paper faced | 159.17 SF | 0.72 | 114.60 | (0.00) | 114.60 |
| Texture drywall - heavy hand texture | 178.24 SF | 0.58 | 103.38 | (0.00) | 103.38 |
| Seal the walls and ceiling w/PVA primer - one coat | 178.24 SF | 0.35 | 62.38 | (0.00) | 62.38 |
| Paint the walls and ceiling - two coats | 178.24 SF | 0.61 | 108.73 | (0.00) | 108.73 |
| Interior door - Detach & reset - slab only | 2.00 EA | 13.73 | 27.46 | (0.00) | 27.46 |
| Door hinges (set of 3) and slab - Detach & reset | 2.00 EA | 18.80 | 37.60 | (0.00) | 37.60 |
| Clean door - full louvered unit (per side) | 4.00 EA | 12.20 | 48.80 | (0.00) | 48.80 |
| Stain & finish full louvered door slab only - (per side) | 4.00 EA | 43.83 | 175.32 | (0.00) | 175.32 |
| Casing - 2 1/4" stain grade | 34.67 LF | 2.41 | 83.56 | (0.00) | 83.56 |
| Stain & finish casing | 34.67 LF | 0.93 | 32.24 | (0.00) | 32.24 |
| Clean all horizontal and vertical surfaces. | 197.32 SF | 0.28 | 55.25 | (0.00) | 55.25 |
| **Totals: Laundry Room** | | | **2,259.63** | **0.00** | **2,259.63** |

| | Kitchen | | | Height: 8' |
|---|---|---|---|---|
| | 263.34 SF Walls | | 114.68 SF Ceiling | |
| | 378.01 SF Walls & Ceiling | | 114.68 SF Floor | |
| | 12.74 SY Flooring | | 32.92 LF Floor Perimeter | |
| | 34.13 LF Ceil. Perimeter | | | |

| Missing Wall | 1' 2 1/2" X 8' | Opens into DINING_ROOM |
|---|---|---|
| Missing Wall | 6 1/16" X 8' | Opens into BREAKFAST_AR |
| Missing Wall | 13' 4 9/16" X 8' | Opens into BREAKFAST_AR |

| DESCRIPTION | QUANTITY | UNIT COST | RCV | DEPREC. | ACV |
|---|---|---|---|---|---|
| Mask and prep for paint - plastic, paper, tape (per LF) | 34.13 LF | 0.91 | 31.06 | (0.00) | 31.06 |
| Floor protection - cloth - skid resistant, leak proof | 114.68 SF | 0.74 | 84.86 | (0.00) | 84.86 |
| Protect - Cover with plastic | 155.67 SF | 0.24 | 37.36 | (0.00) | 37.36 |

LLISON                                                              12/31/2014                        Page: 5

SF-Jellison - 000180

01/19/2015   14:17                                    (FAX)                      P.009/018

WESTKADE
_____

3436 Winding Shore Ln
Pflugerville, TX 78660
damage@westkade.com

CONTINUED - Kitchen

| DESCRIPTION | QUANTITY | UNIT COST | RCV | DEPREC. | ACV |
|---|---|---|---|---|---|
| Outlet or switch cover - Detach & reset | 8.00 EA | 1.81 | 14.48 | (0.00) | 14.48 |
| Vinyl floor covering (sheet goods) | 114.68 SF | 0.56 | 64.22 | (0.00) | 64.22 |
| Floor preparation for resilient flooring | 114.68 SF | 0.38 | 43.58 | (0.00) | 43.58 |
| Vinyl floor - per specs from independent vinyl analysis *per vinyl analysis referenced by carrier | 137.61 SF | 4.47 | 615.12 | (0.00) | 615.12 |
| Fluorescent light fixture - 2' & 4' - Detach & reset | 1.00 EA | 57.20 | 57.20 | (0.00) | 57.20 |
| Light fixture - Detach & reset | 1.00 EA | 39.78 | 39.78 | (0.00) | 39.78 |
| Ceiling hook - Detach & reset | 1.00 EA | 3.44 | 3.44 | (0.00) | 3.44 |
| Heat/AC register - Mechanically attached - Detach & reset | 1.00 EA | 11.97 | 11.97 | (0.00) | 11.97 |
| Prep wall for wallpaper | 263.34 SF | 0.37 | 97.44 | (0.00) | 97.44 |
| Wallpaper | 105.33 SF | 2.48 | 261.21 | (0.00) | 261.21 |
| Wallpaper border | 10.24 LF | 2.77 | 28.36 | (0.00) | 28.36 |
| Remove Texture | 114.68 SF | 0.55 | 63.07 | (0.00) | 63.07 |
| Texture drywall - heavy hand texture | 114.68 SF | 0.58 | 66.51 | (0.00) | 66.51 |
| Paint the ceiling - two coats | 114.68 SF | 0.61 | 69.95 | (0.00) | 69.95 |
| Refrigerator - Remove & reset | 1.00 EA | 25.59 | 25.59 | (0.00) | 25.59 |
| Dishwasher - Detach & reset | 1.00 EA | 205.88 | 205.88 | (0.00) | 205.88 |
| Standard opening containment (small) | 12.00 SF | 1.12 | 13.44 | (0.00) | 13.44 |
| Clean all horizontal and vertical surfaces. | 492.69 SF | 0.28 | 137.95 | (0.00) | 137.95 |
| **Totals: Kitchen** | | | **1,972.47** | **0.00** | **1,972.47** |



**Dining Room**                                                    Height: Peaked

375.98 SF Walls                     146.65 SF Ceiling
522.63 SF Walls & Ceiling           144.42 SF Floor
16.05 SY Flooring                    40.28 LF Floor Perimeter
42.08 LF Ceil. Perimeter

| Missing Wall | 4' 2 11/16" X 8' | Opens into BREAKFAST_AR |
|---|---|---|
| Missing Wall | 1' 2 1/2" X 8' | Opens into KITCHEN |
| Missing Wall | 2' 9 11/16" X 8' | Opens into ENTRY_FOYER |

LLISON                                          12/31/2014        Page: 6

SF-Jellison - 000181

WESTKADE

3436 Winding Shore Ln
Pflugerville, TX 78660
damage@westkade.com

| DESCRIPTION | QUANTITY | UNIT COST | RCV | DEPREC. | ACV |
|---|---|---|---|---|---|
| Neg. air fan/Air scrub.-Large (per 24 hr period)-No monit. | 7.00 DA | 109.08 | 763.56 | (0.00) | 763.56 |
| Equipment setup, take down, and monitoring (hourly charge) | 1.00 HR | 39.00 | 39.00 | (0.00) | 39.00 |
| Add for HEPA filter (for neg. air machine/vacuum - Large) | 1.00 EA | 237.34 | 237.34 | (0.00) | 237.34 |
| Equipment decontamination charge - per piece of equipment | 1.00 EA | 26.83 | 26.83 | (0.00) | 26.83 |
| Mask and prep for paint - plastic, paper, tape (per LF) | 42.08 LF | 0.91 | 38.29 | (0.00) | 38.29 |
| Floor protection - cloth - skid resistant. leak proof | 144.42 SF | 0.74 | 106.87 | (0.00) | 106.87 |
| Outlet or switch cover - Detach & reset | 5.00 EA | 1.81 | 9.05 | (0.00) | 9.05 |
| Heat/AC register - Mechanically attached - Detach & reset | 1.00 EA | 11.97 | 11.97 | (0.00) | 11.97 |
| Chandelier | 1.00 EA | 221.46 | 221.46 | (0.00) | 221.46 |
| Carpet | 144.42 SF | 0.17 | 24.55 | (0.00) | 24.55 |
| Carpet | 166.09 SF | 2.74 | 455.09 | (0.00) | 455.09 |
| Carpet pad | 144.42 SF | 0.63 | 90.98 | (0.00) | 90.98 |
| Baseboard - 2 1/4" stain grade | 40.28 LF | 2.59 | 104.32 | (0.00) | 104.32 |
| Stain & finish baseboard | 40.28 LF | 0.93 | 37.46 | (0.00) | 37.46 |
| Crown molding - 3 1/4" stain grade | 42.08 LF | 5.45 | 229.33 | (0.00) | 229.33 |
| Stain & finish crown molding | 42.08 LF | 1.00 | 42.08 | (0.00) | 42.08 |
| Wallpaper - High grade | 114.11 SF | 0.56 | 63.90 | (0.00) | 63.90 |
| Sliding patio door - Detach & reset | 1.00 EA | 91.31 | 91.31 | (0.00) | 91.31 |
| Window drapery - hardware - Detach & reset | 1.00 EA | 22.13 | 22.13 | (0.00) | 22.13 |
| Outlet box - includes 4 connectors and plaster ring | 3.00 EA | 59.19 | 177.57 | (0.00) | 177.57 |
| Outlet | 1.00 EA | 14.54 | 14.54 | (0.00) | 14.54 |
| Switch | 1.00 EA | 14.58 | 14.58 | (0.00) | 14.58 |
| 5/8" drywall - hung, taped, ready for texture | 292.65 SF | 1.72 | 503.36 | (0.00) | 503.36 |
| 1/2" drywall - hung, taped, ready for texture | 146.65 SF | 1.65 | 241.97 | (0.00) | 241.97 |
| Batt insulation - 12" - R38 - paper faced | 146.65 SF | 1.48 | 217.05 | (0.00) | 217.05 |
| Batt insulation - 4" - R13 - paper faced | 292.65 SF | 0.72 | 210.71 | (0.00) | 210.71 |
| Beadboard - tongue & groove | 146.65 SF | 6.21 | 910.69 | (0.00) | 910.69 |
| Stain & finish ceiling* | 146.65 SF | 1.00 | 146.65 | (0.00) | 146.65 |
| Seal part of the walls w/PVA primer - one coat | 292.65 SF | 0.35 | 102.43 | (0.00) | 102.43 |
| Prep wall for wallpaper | 114.11 SF | 0.37 | 42.22 | (0.00) | 42.22 |
| Wallpaper - High grade | 131.23 SF | 2.20 | 288.71 | (0.00) | 288.71 |
| Texture drywall - heavy hand texture | 178.53 SF | 0.58 | 103.55 | (0.00) | 103.55 |

...LISON                                          12/31/2014           Page: 7

SF-Jellison - 000182

01/19/2015   14:17                                          (FAX)                          P.011/018

WESTKADE

3436 Winding Shore Ln
Pflugerville, TX 78660
damage@westkade.com

### CONTINUED - Dining Room

| DESCRIPTION | QUANTITY | UNIT COST | RCV | DEPREC. | ACV |
|---|---|---|---|---|---|
| Paint part of the walls - two coats | 178.53 SF | 0.61 | 108.90 | (0.00) | 108.90 |
| Standard containment | 55.00 SF | 1.12 | 61.60 | (0.00) | 61.60 |
| Peel & seal zipper | 1.00 EA | 9.44 | 9.44 | (0.00) | 9.44 |
| Clean more than the walls and ceiling | 667.06 SF | 0.22 | 146.75 | (0.00) | 146.75 |

**Totals: Dining Room**      5,916.24     0.00     5,916.24



| **Living Room** | | | | **Height: Peaked** | |
|---|---|---|---|---|---|

363.28 SF Walls         217.60 SF Ceiling
580.88 SF Walls & Ceiling    214.76 SF Floor
23.86 SY Flooring        39.79 LF Floor Perimeter
40.20 LF Ceil. Perimeter

| Missing Wall | 4' 5" X 8' | Opens into ENTRY_FOYER |
|---|---|---|
| Missing Wall | 14' 5 7/8" X 8' | Opens into ENTRY_FOYER |

| DESCRIPTION | QUANTITY | UNIT COST | RCV | DEPREC. | ACV |
|---|---|---|---|---|---|
| Contents - move out then reset - Large room | 1.00 EA | 53.05 | 53.05 | (0.00) | 53.05 |
| Mask and prep for paint - plastic, paper, tape (per LF) | 40.20 LF | 0.91 | 36.58 | (0.00) | 36.58 |
| Floor protection - cloth - skid resistant, leak proof | 214.76 SF | 0.74 | 158.92 | (0.00) | 158.92 |
| Standard containment | 55.00 SF | 1.12 | 61.60 | (0.00) | 61.60 |
| Peel & seal zipper | 1.00 EA | 9.44 | 9.44 | (0.00) | 9.44 |
| Ceiling fan - Detach & reset | 1.00 EA | 154.02 | 154.02 | (0.00) | 154.02 |
| Light fixture - Detach & reset | 2.00 EA | 39.78 | 79.56 | (0.00) | 79.56 |
| Carpet | 214.76 SF | 0.17 | 36.51 | (0.00) | 36.51 |
| Carpet | 246.98 SF | 2.74 | 676.73 | (0.00) | 676.73 |
| Carpet pad | 214.76 SF | 0.63 | 135.30 | (0.00) | 135.30 |
| Carpet cove (wall wrap) - 4" | 39.79 LF | 4.34 | 172.69 | (0.00) | 172.69 |
| Baseboard - Detach and reset | 39.79 LF | 1.72 | 68.44 | (0.00) | 68.44 |
| Crown molding - 3 1/4" stain grade | 40.20 LF | 5.45 | 219.09 | (0.00) | 219.09 |
| Stain & finish crown molding | 40.20 LF | 1.00 | 40.20 | (0.00) | 40.20 |

LLISON                    12/31/2014        Page: 8

SF-Jellison - 000183

# WESTKADE

3436 Winding Shore Ln
Pflugerville, TX 78660
damage@westkade.com

## CONTINUED - Living Room

| DESCRIPTION | QUANTITY | UNIT COST | RCV | DEPREC. | ACV |
|---|---|---|---|---|---|
| Window drapery - hardware - Detach & reset | 2.00 EA | 22.13 | 44.26 | (0.00) | 44.26 |
| Aluminum window, single hung 13-19 sf (2 pane) | 4.00 EA | 201.82 | 807.28 | (0.00) | 807.28 |
| Add on for grid (double or triple glazed windows) | 58.00 SF | 2.35 | 136.30 | (0.00) | 136.30 |
| Additional charge for a retrofit window. 12-23 sf | 4.00 EA | 71.90 | 287.60 | (0.00) | 287.60 |
| Window sill - stain grade | 3.00 LF | 2.96 | 8.88 | (0.00) | 8.88 |
| Stain & finish wood window sill | 3.00 LF | 1.74 | 5.22 | (0.00) | 5.22 |
| Beadboard - tongue & groove | 217.60 SF | 6.21 | 1,351.30 | (0.00) | 1,351.30 |
| Stain & finish ceiling* | 217.60 SF | 1.00 | 217.60 | (0.00) | 217.60 |
| 1/2" drywall - hung, taped, ready for texture | 217.60 SF | 1.65 | 359.04 | (0.00) | 359.04 |
| Batt insulation - 12" - R38 - paper faced | 217.60 SF | 1.48 | 322.04 | (0.00) | 322.04 |
| Drywall patch / small repair, ready for paint | 1.00 EA | 50.21 | 50.21 | (0.00) | 50.21 |
| Seal more than the ceiling w/PVA primer - one coat | 221.60 SF | 0.35 | 77.56 | (0.00) | 77.56 |
| Texture drywall - heavy hand texture | 4.00 SF | 0.63 | 2.52 | (0.00) | 2.52 |
| Paint the surface area - two coats | 119.54 SF | 0.61 | 72.92 | (0.00) | 72.92 |
| Clean more than the walls and ceiling | 795.65 SF | 0.22 | 175.04 | (0.00) | 175.04 |
| **Totals: Living Room** | | | **5,819.90** | **0.00** | **5,819.90** |

Entry/Foyer                                                              Height: Peaked

277.03  SF Walls                          83.81  SF Ceiling
360.85  SF Walls & Ceiling                86.50  SF Floor
9.61  SY Flooring                         28.31  LF Floor Perimeter
31.96  LF Ceil. Perimeter

| Missing Wall | 14' 5 7/8" X 8' | Opens into LIVING_ROOM |
|---|---|---|
| Missing Wall | 4' 5" X 8' | Opens into LIVING_ROOM |
| Missing Wall | 2' 9 11/16" X 8' | Opens into DINING_ROOM |
| Missing Wall | 3' 3" X 8' | Opens into HALLWAY |

SF-Jellison - 000184

WESTKADE

3436 Winding Shore Ln
Pflugerville. TX 78660
damage@westkade.com

| DESCRIPTION | QUANTITY | UNIT COST | RCV | DEPREC. | ACV |
|---|---|---|---|---|---|
| Mask and prep for paint - plastic, paper, tape (per LF) | 31.96 LF | 0.91 | 29.08 | (0.00) | 29.08 |
| Floor protection - cloth - skid resistant. leak proof | 86.50 SF | 0.74 | 64.01 | (0.00) | 64.01 |
| Baseboard - Detach and reset | 28.31 LF | 1.72 | 48.69 | (0.00) | 48.69 |
| Crown molding - 3 1/4" stain grade | 31.96 LF | 5.45 | 174.18 | (0.00) | 174.18 |
| Stain & finish crown molding | 31.96 LF | 1.00 | 31.96 | (0.00) | 31.96 |
| 1/2" drywall - hung, taped, ready for texture | 83.81 SF | 1.65 | 138.29 | (0.00) | 138.29 |
| Batt insulation - 12" - R38 - paper faced | 83.81 SF | 1.48 | 124.03 | (0.00) | 124.03 |
| Seal the ceiling w/PVA primer - one coat | 83.81 SF | 0.35 | 29.33 | (0.00) | 29.33 |
| Beadboard - tongue & groove | 83.81 SF | 6.21 | 520.46 | (0.00) | 520.46 |
| Stain & finish ceiling* | 83.81 SF | 1.00 | 83.81 | (0.00) | 83.81 |
| Clean more than the walls and ceiling | 447.34 SF | 0.22 | 98.41 | (0.00) | 98.41 |

**Totals: Entry/Foyer**                                        1,342.25        0.00    1,342.25



**Hallway**                                                                              Height: 8'

223.76 SF Walls                      39.90 SF Ceiling
263.65 SF Walls & Ceiling            39.90 SF Floor
4.43 SY Flooring                     27.97 LF Floor Perimeter
31.22 LF Ceil. Perimeter

Missing Wall                          3' 3" X 8'              Opens into ENTRY_FOYER

| DESCRIPTION | QUANTITY | UNIT COST | RCV | DEPREC. | ACV |
|---|---|---|---|---|---|
| Carpet | 39.90 SF | 0.17 | 6.78 | (0.00) | 6.78 |
| Carpet | 45.88 SF | 2.74 | 125.71 | (0.00) | 125.71 |
| Carpet pad | 39.90 SF | 0.63 | 25.14 | (0.00) | 25.14 |
| Baseboard - Detach and reset | 27.97 LF | 1.72 | 48.11 | (0.00) | 48.11 |
| Clean more than the walls and ceiling | 303.55 SF | 0.22 | 66.78 | (0.00) | 66.78 |

**Totals: Hallway**                                             272.52          0.00      272.52

LLISON                                              12/31/2014        Page: 10

01/19/2015  14:18                                              (FAX)                                 P.014/018

WESTKADE

3436 Winding Shore Ln
Pflugerville, TX 78660
damage@westkade.com



| Bedroom 1 | | | | | Height: 8' |
|---|---|---|---|---|---|
| 379.00 SF Walls | | | 140.26 SF Ceiling | | |
| 519.26 SF Walls & Ceiling | | | 140.26 SF Floor | | |
| 15.58 SY Flooring | | | 47.38 LF Floor Perimeter | | |
| 47.38 LF Ceil. Perimeter | | | | | |

| DESCRIPTION | QUANTITY | UNIT COST | RCV | DEPREC. | ACV |
|---|---|---|---|---|---|
| Mask and prep for paint - plastic, paper, tape (per LF) | 47.38 LF | 0.91 | 43.12 | (0.00) | 43.12 |
| Floor protection - cloth - skid resistant, leak proof | 140.26 SF | 0.74 | 103.79 | (0.00) | 103.79 |
| Ceiling fan - Detach & reset | 1.00 EA | 154.02 | 154.02 | (0.00) | 154.02 |
| Outlet or switch cover - Detach & reset | 1.00 EA | 1.81 | 1.81 | (0.00) | 1.81 |
| Carpet | 140.26 SF | 0.17 | 23.84 | (0.00) | 23.84 |
| Carpet | 161.30 SF | 2.74 | 441.96 | (0.00) | 441.96 |
| Carpet pad | 140.26 SF | 0.63 | 88.36 | (0.00) | 88.36 |
| Baseboard - 2 1/4" | 47.38 LF | 2.16 | 102.34 | (0.00) | 102.34 |
| Stain & finish baseboard | 47.38 LF | 0.93 | 44.06 | (0.00) | 44.06 |
| 5/8" drywall - hung, taped, ready for texture | 93.96 SF | 1.72 | 161.61 | (0.00) | 161.61 |
| Batt insulation - 4" - R13 - paper faced | 93.96 SF | 0.72 | 67.65 | (0.00) | 67.65 |
| Seal the surface area w/PVA primer - one coat | 93.96 SF | 0.35 | 32.89 | (0.00) | 32.89 |
| Additional labor charge to cover outlet/switch plates | 1.00 EA | 9.69 | 9.69 | (0.00) | 9.69 |
| Prep wall for wallpaper | 93.96 SF | 0.37 | 34.77 | (0.00) | 34.77 |
| Wallpaper - Premium grade | 93.96 SF | 3.39 | 318.53 | (0.00) | 318.53 |
| Clean more than the walls and ceiling | 659.53 SF | 0.22 | 145.10 | (0.00) | 145.10 |
| **Totals: Bedroom 1** | | | **1,773.54** | **0.00** | **1,773.54** |



| Porch | | | | | Height: 8' |
|---|---|---|---|---|---|
| 202.71 SF Walls | | | 193.90 SF Ceiling | | |
| 396.62 SF Walls & Ceiling | | | 193.90 SF Floor | | |
| 21.54 SY Flooring | | | 25.34 LF Floor Perimeter | | |
| 25.34 LF Ceil. Perimeter | | | | | |

| Missing Wall | 7' 8 7/16" X 8' | Opens into Exterior |
|---|---|---|
| Missing Wall | 7' 8 7/16" X 8' | Opens into Exterior |
| Missing Wall | 25' 2 1/16" X 8' | Opens into Exterior |

LLISON                                                          12/31/2014          Page: 11

32c1501918871WPSDZDM2 Received 1/19/2015 3:19:36 PM [Central Standard Time]

SF-Jellison - 000186

01/19/2015   14:18                                             (FAX)                              P.015/018

## WESTKADE

3436 Winding Shore Ln
Pflugerville, TX 78660
damage@westkade.com

| DESCRIPTION | QUANTITY | UNIT COST | RCV | DEPREC. | ACV |
|---|---|---|---|---|---|
| Soffit - wood - tongue & groove | 193.90 SF | 7.74 | 1,500.78 | (0.00) | 1,500.78 |
| Fascia - 1" x 6" - #3 cedar | 25.17 LF | 5.19 | 130.63 | (0.00) | 130.63 |
| Exterior - stain two coats | 206.49 SF | 1.15 | 237.46 | (0.00) | 237.46 |
| **Totals: Porch** | | | **1,868.87** | **0.00** | **1,868.87** |

### Master Bedroom

| DESCRIPTION | QUANTITY | UNIT COST | RCV | DEPREC. | ACV |
|---|---|---|---|---|---|
| Contents - move out then reset - Small room | 1.00 EA | 26.54 | 26.54 | (0.00) | 26.54 |
| Mask and prep for paint - plastic, paper, tape (per LF) | 15.00 LF | 0.91 | 13.65 | (0.00) | 13.65 |
| Floor protection - cloth - skid resistant, leak proof | 150.00 SF | 0.74 | 111.00 | (0.00) | 111.00 |
| Window drapery - hardware - Detach & reset | 3.00 EA | 22.13 | 66.39 | (0.00) | 66.39 |
| Window blind - horizontal or vertical - Detach & reset | 3.00 EA | 22.13 | 66.39 | (0.00) | 66.39 |
| Aluminum window, single hung 13-19 sf (2 pane) | 3.00 EA | 201.82 | 605.46 | (0.00) | 605.46 |
| Add on for grid (double or triple glazed windows) | 43.50 SF | 2.35 | 102.23 | (0.00) | 102.23 |
| Additional charge for a retrofit window, 12-23 sf | 3.00 EA | 71.90 | 215.70 | (0.00) | 215.70 |
| Window sill - stain grade | 9.00 LF | 2.96 | 26.64 | (0.00) | 26.64 |
| Stain & finish wood window sill | 9.00 LF | 1.74 | 15.66 | (0.00) | 15.66 |
| **Totals: Master Bedroom** | | | **1,249.66** | **0.00** | **1,249.66** |

### Master Bath

| DESCRIPTION | QUANTITY | UNIT COST | RCV | DEPREC. | ACV |
|---|---|---|---|---|---|
| Floor protection - cloth - skid resistant, leak proof | 20.00 SF | 0.74 | 14.80 | (0.00) | 14.80 |
| Window blind - horizontal or vertical - Detach & reset | 1.00 EA | 22.13 | 22.13 | (0.00) | 22.13 |
| Aluminum window, picture/fixed 3-11 sf (2 pane) | 1.00 EA | 130.64 | 130.64 | (0.00) | 130.64 |
| Add on for grid (double or triple glazed windows) | 6.00 SF | 2.35 | 14.10 | (0.00) | 14.10 |

_LISON                                              12/31/2014                Page: 12

32c1501918872WPSDZDM2 Received 1/19/2015 3:19:36 PM [Central Standard Time]

SF-Jellison - 000187

01/19/2015   14:18                                    (FAX)                        P.016/018

WESTKADE

3436 Winding Shore Ln
Pflugerville, TX 78660
damage@westkade.com

### CONTINUED - Master Bath

| DESCRIPTION | QUANTITY | UNIT COST | RCV | DEPREC. | ACV |
|---|---|---|---|---|---|
| Additional charge for a retrofit window, 3-11 sf | 1.00 EA | 50.95 | 50.95 | (0.00) | 50.95 |
| **Totals: Master Bath** | | | **232.62** | **0.00** | **232.62** |

### Garage

| DESCRIPTION | QUANTITY | UNIT COST | RCV | DEPREC. | ACV |
|---|---|---|---|---|---|
| Contents - move out then reset - Extra large room | 1.00 EA | 106.11 | 106.11 | (0.00) | 106.11 |
| Mask and prep for paint - plastic, paper, tape (per LF) | 20.00 LF | 0.91 | 18.20 | (0.00) | 18.20 |
| Floor protection - cloth - skid resistant, leak proof | 200.00 SF | 0.74 | 148.00 | (0.00) | 148.00 |
| Window blind - horizontal or vertical - Detach & reset | 1.00 EA | 22.13 | 22.13 | (0.00) | 22.13 |
| Aluminum window, single hung 13-19 sf (2 pane) | 2.00 EA | 201.82 | 403.64 | (0.00) | 403.64 |
| Add on for grid (double or triple glazed windows) | 29.00 SF | 2.35 | 68.15 | (0.00) | 68.15 |
| Additional charge for a retrofit window, 12-23 sf | 2.00 EA | 71.90 | 143.80 | (0.00) | 143.80 |
| Window sill - stain grade | 6.00 LF | 2.96 | 17.76 | (0.00) | 17.76 |
| Stain & finish wood window sill | 6.00 LF | 1.74 | 10.44 | (0.00) | 10.44 |
| **Totals: Garage** | | | **938.23** | **0.00** | **938.23** |
| **Total: Main Level** | | | **27,418.01** | **0.00** | **27,418.01** |
| **Line Item Subtotals: JELLISON** | | | **30,711.46** | **0.00** | **30,711.46** |

| Adjustments for Base Service Charges | Adjustment |
|---|---|
| Cleaning Remediation Technician | 78.00 |
| Drywall Installer/Finisher | 213.08 |
| Painter | 85.28 |
| Total Adjustments for Base Service Charges: | 376.36 |

LLISON                                      12/31/2014        Page: 13

SF-Jellison - 000188

01/19/2015   14:19                          (FAX)                    P.017/018

WESTKADE

> 3436 Winding Shore Ln
> Pflugerville, TX 78660
> damage@westkade.com

**Adjustments for Base Service Charges**                                    Adjustment

| Line Item Totals: JELLISON | 31,087.82 | 0.00 | 31,087.82 |
|---|---|---|---|

## Grand Total Areas:

| | | | | | |
|---|---|---|---|---|---|
| 2,689.55 | SF Walls | 1,123.84 | SF Ceiling | 3,813.38 | SF Walls and Ceiling |
| 1,121.46 | SF Floor | 124.61 | SY Flooring | 317.54 | LF Floor Perimeter |
| 0.00 | SF Long Wall | 0.00 | SF Short Wall | 327.85 | LF Ceil. Perimeter |
| 1,121.46 | Floor Area | 1,195.51 | Total Area | 2,689.55 | Interior Wall Area |
| 1,197.37 | Exterior Wall Area | 165.40 | Exterior Perimeter of Walls | | |
| 0.00 | Surface Area | 0.00 | Number of Squares | 0.00 | Total Perimeter Length |
| 0.00 | Total Ridge Length | 0.00 | Total Hip Length | | |

LLISON                                    12/31/2014        Page: 14

SF-Jellison - 000189

WESTKADE

3436 Winding Shore Ln
Pflugerville, TX 78660
damage@westkade.com

## Summary

| | | | |
|---|---|---|---|
| Line Item Total | | | 30,711.46 |
| Total Adjustments for Base Service Charges | | | 376.36 |
| Material Sales Tax | @ | 8.250% | 994.35 |
| Cleaning Mtl Tax | @ | 8.250% | 30.47 |
| | | | |
| Subtotal | | | 32,112.64 |
| Overhead | @ | 10.0% | 3,211.55 |
| Profit | @ | 10.0% | 3,211.55 |
| Cleaning Sales Tax | @ | 8.250% | 88.47 |
| | | | |
| **Replacement Cost Value** | | | **$38,624.21** |
| **Net Claim** | | | **$38,624.21** |

Westkade

LLISON                                              12/31/2014        Page: 15

SF-Jellison - 000190

# EXHIBIT B-10



# THE
# WENHOLZ
# LAW FIRM
PLLC

June 19, 2015

**VIA FAX (844) 236-3646**
Jay Vath, Claim Representative
State Farm Insurance
P.O. Box 106169
Atlanta, Georgia 30348-6169

Re:    Insured:       David Jellison
       Loss Address: 16330 FM 1826
                      Austin, Texas 78737-8809
       Claim No.:    53-364F-184
       DOL:          10/31/2013
       Policy #:     83-32-6465-8

Dear Jay Vath:

Per your phone conversation with Matt Rider, the Wenholz law firm has already provided State Farm with a breakdown of our demand. In the interest of compromise, Mr. Jellison authorized us to reduce his demand to $40,000.00 in the hopes that we could reach an amicable settlement.

Your request for a new breakdown of our reduced demand is unwarranted. If we are mistaken, please highlight the section of Mr. Jellison's policy that requires it. We remain hopeful that a settlement can be reached without a protracted litigation fight, and look forward to receiving a response to our demand.

Yours very truly,

David C. Wenholz

cc:    Mr. David Jellison

13501 GALLERIA CIRCLE • W-270 • BEE CAVE, TX 78738 • (512)478-2211 • FAX: (512)478-3625 • WWW.WENHOLZ.COM

9c151700454¹WPSDZDM4 Received 6/19/2015 9:48:31 AM [Central Daylight Time]

SF-Jellison - 000170

07/02/2015   14:44                                    (FAX)                        P.002/002



THE
WENHOLZ
LAW FIRM
PLLC

July 2, 2015

**Via Fax (844) 236-3646**
Mr. Jay Vath
State Farm Insurance
P.O. Box 106169
Atlanta, Georgia 30348-6169

Re:   Insured:        David Jellison
      Loss Address:   16330 FM 1826
                      Austin, Texas 78737-8809
      Claim No.:      53-364F-184
      DOL:            10/31/2013
      Policy #:       83-32-6465-8

Dear Mr. Vath:

    I am writing you in regards to the efforts our firm has made to settle Mr. Jellison's claim. On June 15, 2015, in response to State Farm's offer of $16,997.97 to settle Mr. Jellison's claim, we reduced our demand to $40,000.00. You requested a new breakdown to reflect our reduced demand; however, the reduced demand was merely an attempt to reach an amicable settlement with State Farm and it is our position that your request was unwarranted, which we stated in writing on June 19, 2015.

    We have not received any response from State Farm since clarifying our position, despite reaching out to you via phone; however, we remain hopeful that a settlement can be reached. It is our sincere wish to avoid litigation, and look forward to receiving a response to our reduced demand.

                                        Yours very truly,

                                        David C. Wenholz

cc:   Mr. David Jellison

13501 GALLERIA CIRCLE • W-270 • BEE CAVE, TX 78738 • (512)478-2211 • FAX: (512)478-3625 • WWW.WENHOLZ.COM

6c1518325418WPSDZDM2 Received 7/2/2015 4:48:37 PM [Central Daylight Time]

SF-Jellison - 000168

# EXHIBIT C

United States District Court
Southern District of Texas

**ENTERED**

October 21, 2015

David J. Bradley, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

GREGORY STEWART,                    §
                                    §
        Plaintiff,                  §
                                    §
v.                                  §        CIVIL ACTION NO. H-14-3162
                                    §
GEOVERA SPECIALTY INSURANCE         §
COMPANY,                            §
                                    §
        Defendant.                  §

<u>MEMORANDUM AND ORDER</u>

Pending is Defendant Geovera Specialty Insurance Company's
Motion for Summary Judgment (Document No. 11).[1]  After carefully
considering the motion, response, reply, and the applicable law,
the Court concludes for the reasons that follow that the motion
should be granted.

I. <u>Background</u>

This suit arises from a dispute about the amount of loss
sustained to Plaintiff Gregory Stewart's ("Plaintiff") home during
an October 27, 2013 hailstorm.  Defendant Geovera Specialty
Insurance Company ("Defendant") was at all relevant times the

---

[1] Also pending is Defendant's Objection to and Motion to
Strike Summary Judgment Evidence, wherein Defendant moves to strike
the Affidavit of John Blankenship and the estimate of Storm
Recovery.  Document No. 14 at 6.  As discussed below, even
considering this evidence, Defendant is still entitled to summary
judgment.  Therefore, this motion is denied as MOOT.

insurer on Plaintiff's home in Humble, Texas (the "Property").[2]
Approximately ten months after the hailstorm caused damage to the
Property, Plaintiff filed a claim with Defendant on his Homeowners
Insurance Policy (the "Policy").[3]   Defendant engaged Team One
Claims ("Team One") to perform an inspection of the Property, and
after Team One inspected the Property, it determined that the total
loss on the Property was "$11,544.64 less depreciation of $2,285.14
and the policy deductible of $4,880.00 for an actual cash value
loss of $4,379.50."[4]  Defendant mailed a check to Plaintiff for the
actual cash value on September 18, 2014, and Plaintiff, in
response, sent to Defendant a statutory demand letter stating that
the damages were $37,154.46.[5]   Defendant thereupon sent to
Plaintiff a letter on October 8, 2014, invoking the Policy's
appraisal process and named Mike Murphy as its appraiser.[6]  After
some months of delay, Plaintiff belatedly named his appraiser and
the parties' two appraisers ultimately submitted a binding
appraisal award on April 14, 2015, finding that the total
replacement cost was $15,795.95, and the actual cash value was

---

[2] *See* Document No. 1-3 at 2 of 23 to 4 of 23 (Pl.'s Orig.
Pet.).

[3] Document No. 11-4 at 1 of 4; *see also* Document No. 11-3 (the
Policy).

[4] Document No. 11-4 at 1 of 4.

[5] Id.; Document No. 13 at 2; Document No. 14 at 2.

[6] Document No. 11-4 at 1 of 4 to 3 of 4.

2

$12,560.41. Within one week's time, Defendant sent to Plaintiff a check for $6,536.45, the amount of the total appraisal award, less the deductible and prior payment, and Defendant waived the requirement for Plaintiff to provide documentation that the repairs were made in order to receive the total recovery amount.[7]

Plaintiff alleges claims for (1) negligence, (2) breach of contract, (3) violations of Texas Deceptive Trade Practices Act ("DTPA") and tie-in statutes, (4) violations of the Texas Insurance Code, (5) breach of the common-law duty of good faith and fair dealing, (6) breach of fiduciary duty, (7) unfair insurance practices, (8) misrepresentation, and (9) common-law fraud by negligent misrepresentation.[8] Defendant moves for summary judgment, arguing that Plaintiff's breach of contract claim fails because (1) Defendant timely paid the appraisal award as required by the Policy, (2) Plaintiff's non-contractual claims fail because bad faith claims require a breach of contract, (3) Plaintiff's negligence claim fails for lack of an independent injury, (4) Plaintiff's fraud and fraud by misrepresentation claims fail because Plaintiff cannot produce evidence of reliance, and (5) Plaintiff's breach of fiduciary duty claim fails because there is no fiduciary relationship between an insurer and its insured.[9]

---

[7] Document No. 11-7; Document No. 11-8 at 3 of 10.

[8] Document No. 1-3.

[9] Document No. 11.

3

## II. Legal Standard

Rule 56(a) provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). Once the movant carries this burden, the burden shifts to the nonmovant to show that summary judgment should not be granted. Morris v. Covan World Wide Moving, Inc., 144 F.3d 377, 380 (5th Cir. 1998). A party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials in a pleading, and unsubstantiated assertions that a fact issue exists will not suffice. Id. "[T]he nonmoving party must set forth specific facts showing the existence of a 'genuine' issue concerning every essential component of its case." Id. "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by: (A) citing to particular parts of materials in the record . . . or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." FED. R. CIV. P. 56(c)(1). "The court need consider only the cited materials, but it may consider other materials in the record." Id. 56(c)(3).

In considering a motion for summary judgment, the district court must view the evidence "through the prism of the substantive evidentiary burden." Anderson v. Liberty Lobby, Inc., 106 S. Ct.

4

2505, 2513 (1986). All justifiable inferences to be drawn from the underlying facts must be viewed in the light most favorable to the nonmoving party. <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 106 S. Ct. 1348, 1356 (1986). "If the record, viewed in this light, could not lead a rational trier of fact to find" for the nonmovant, then summary judgment is proper. <u>Kelley v. Price-Macemon, Inc.</u>, 992 F.2d 1408, 1413 (5th Cir. 1993). On the other hand, if "the factfinder could reasonably find in [the nonmovant's] favor, then summary judgment is improper." <u>Id.</u> Even if the standards of Rule 56 are met, a court has discretion to deny a motion for summary judgment if it believes that "the better course would be to proceed to a full trial." <u>Anderson</u>, 106 S. Ct. at 2513.

### III. <u>Analysis</u>

A.   <u>Breach of Contract</u>

Plaintiff alleges that Defendant "had the absolute duty to investigate Plaintiff's damages, and to pay Plaintiff's policy benefits for the claims made due to the extensive storm-related damages."[10] Defendant argues that its payment of the appraisal award to Plaintiff precludes Plaintiff's claim for breach of contract.[11] "Under Texas law, when an insurer makes timely payment

---

[10] Document No. 1-3 at 6 of 23.

[11] Document No. 11 at 10 of 25 to 15 of 25.

of a binding and enforceable appraisal award, and the insured accepts the payment, the insured is 'estopped by the appraisal award from maintaining a breach of contract claim against [the insurer].'" Blum's Furniture Co. v. Certain Underwriters at Lloyds London, 459 F. App'x 366, 368 (5th Cir. 2012) (quoting Franco v. Slavonic Mut. Fire Ins. Ass'n, 154 S.W.3d 777, 787 (Tex. App.-Houston [14th Dist.] 2004, no pet.)).

Plaintiff does not dispute that the parties engaged in the binding appraisal process established by the Policy, but argues that payment of the appraisal award "does not address the damages resulting from unreasonable investigations, **late payments,** breach of the common law duty of good faith and fair dealing and other violations addressed in the Texas Insurance Code and Deceptive Trade Practices Act" and that "Defendant's failure to conduct a reasonable investigation is also a basis for breach of contract."[12] Plaintiff's first argument--that payment of the appraisal award does not address damages under other claims--relates to Plaintiff's other claims and does not raise a genuine issue of material fact that would preclude summary judgment on Plaintiff's breach of contract claim. Plaintiff's second argument--that Defendant failed to conduct a reasonable investigation--also fails because Plaintiff has produced no evidence to support such a claim, nor does

---

[12] Document No. 13 at 6 (emphasis in original).

Plaintiff point to any provision in the Policy supporting this claim.

The uncontroverted summary judgment evidence is that Defendant timely paid to Plaintiff the full amount of the appraisal award, which Plaintiff accepted.   Plaintiff is therefore estopped from presenting a breach of contract claim on the Policy, and Defendant is entitled to summary judgment on Plaintiff's breach of contract claim. Blum's Furniture, 459 F. App'x at 368; Mag-Dolphus, Inc. v. Ohio Cas. Ins. Co., 906 F. Supp. 2d 642, 648 (S.D. Tex. 2012) (Harmon, J.) ("Plaintiffs, having accepted timely payment of the binding and enforceable appraisal award, are thus estopped from maintaining a breach of contract claim against Defendant."); Barry v. Allstate Texas Lloyds, No. 4:14-cv-870, 2015 WL 1470429, at *4 (S.D. Tex. March 31, 2015) (Hoyt, J.) ("Here, in the absence of evidence raising a genuine issue of fact as to a ground for setting aside the appraisal award in this case, the plaintiff, having accepted payment of the appraisal award minus any applicable offsets, is estopped from pursuing a breach of contract claim against Allstate.").

B.   Prompt Payment Act

Defendant argues that Texas law precludes claims under Chapter 542 of the Texas Insurance Code (the "Chapter 542" or the "Prompt Payment Act") for failure to timely pay amounts due under an

insurance policy when the insurer has made full and timely payment of an appraisal award.[13]   Plaintiff does not argue that Defendant failed to make full and timely payment of the appraisal award, but rather argues that full and timely payment of an appraisal award does not preclude his claim under Chapter 542.[14]   Numerous cases have held that "timely payment of an appraisal award under the policy precludes an award of statutory penalties under the Texas Insurance Code chapter 542." Bernstien v. Safeco Ins. Co. of Ill., 05-13-01533 CV, 2015 WL 3958282, at *1 (Tex. App.—Dallas June 30, 2015, no. pet.); Breshears v. State Farm Lloyds, 155 S.W.3d 340, 344 (Tex. App.—Corpus Christi 2004, pet. denied); Mag-Dolphus, 906 F. Supp. 2d at 652; Barry, 2015 WL 1470429, at *6; Burks v. Metro. Lloyds Ins. Co. of Tex., CIV. A. H-14-591, 2015 WL 4126654, at *4, n.25 (S.D. Tex. July 8, 2015); *but see* Graber v. State Farm Lloyds, 3:13-CV-2671 B, 2015 WL 3755030, at *10 (N.D. Tex. June 15, 2015) (Boyle, J.) (finding that timely payment of appraisal award did not preclude plaintiff's claim under the Texas Prompt Payment Act). Defendant is entitled to judgment on Plaintiff's Prompt Payment Act claim as a matter of law.

---

[13] Document No. 11 at 13 of 25 to 14 of 25.

[14] Document No. 13 at 7.

8

C.   Bad Faith, Unfair Settlement Practices, and DTPA Claims

Plaintiff alleges claims for (1) violations of the DTPA and tie-in-statutes, (2) other violations of the Texas Insurance Code, (3) breach of the common-law duty of good faith and fair dealing, and (4) unfair insurance practices.[15]   Defendant argues that these claims must be dismissed because there was no breach of the insurance contract and these extra-contractual claims require such a breach.[16]

While some of Plaintiff's extra-contractual claims are statutory in nature and others are common law claims, "[l]iability under § 541 of the Texas Insurance Code is reviewed under the 'same standard as a common law bad faith claim.'" Mag-Dolphus, 906 F. Supp. 2d at 649 (quoting Blum's Furniture, 2011 WL 819491, at *4, aff'd, 459 F. App'x 366, and collecting cases); Burks, 2015 WL 4126654, at *4 (quoting Mag-Dolphus).   Under Texas law, "in most circumstances, an insured may not prevail on a bad faith claim without first showing that the insurer breached the contract." Liberty Nat. Fire Ins. Co. v. Akin, 927 S.W.2d 627, 629 (Tex. 1996).   "The only recognized exceptions to this rule are if the insurer 'commit[s] some act, so extreme, that would cause injury independent of the policy claim,' or fails 'to timely investigate the insured's claim.'"   Blum's Furniture, 459 F. App'x at 369

---

[15] Document No. 1-3 at 5-15.

[16] Document No. 11 at 16 of 25 to 24 of 25.

(quoting Republic Ins. Co. v. Stoker, 903 S.W.2d 338, 341 (Tex. 1995)).

Plaintiff argues that "withholding policy proceeds due and owed for many months while he and his family are forced to live in their home, which is in a state of disrepair, even though they have purchased and pay on the Policy's premiums every month, is 'so extreme, that would cause injury independent of the policy claim.'"[17]  Viewing the evidence in the light most favorable to Plaintiff, he has not produced evidence that Defendant committed an act "so extreme, that [it] would cause injury independent of the policy claim." Blum's Furniture, 459 F. App'x at 369.  The Fifth Circuit noted two years ago that "[t]he Stoker language [creating the exception noted in Blum's Furniture] has frequently been discussed, but in seventeen years since the decision appeared, no Texas court has yet held that recovery is available for an insurer's extreme act, causing injury independent of the policy claim." Mid-Continent Cas. Co. v. Eland Energy, Inc., 709 F.3d 515, 521-22 (5th Cir. 2013).

The summary judgment evidence is uncontroverted that Defendant never denied coverage of Plaintiff's Property under the Policy, it promptly investigated the claim, and it tendered payment based on its adjuster's findings.  Indeed, when the parties engaged in this contractual remedy and an appraisal award was made, Defendant

---

[17] Document No. 11 at 8-9.

10

timely paid to Plaintiff the full amount of the total replacement cost without requiring Plaintiff to make repairs in order to receive the full amount.   Moreover, any delay in Plaintiff's receipt of insurance proceeds was caused by Plaintiff himself who waited ten months before filing a claim and did not name his own appraiser for the appraisal process until more than two months after his deadline for such.   Accordingly, Defendant is entitled to summary judgment on Plaintiff's extra-contractual claims.   *See* Mag-Dolphus, 906 F. Supp. 2d at 649 (bad faith claim subject to summary judgment dismissal where "Plaintiffs' claim appears to be premised on their dispute of their property's loss valuation," insurance policy "contained an appraisal provision providing Plaintiffs a means for disputing and negotiating the amount of loss," and "Plaintiffs negotiated and accepted the appraisal award"); Barry, 2015 WL 1470429, at *4-7 (granting summary judgment on extra-contractual claims where plaintiff's breach of contract claim was estopped and plaintiff failed to produce evidence of an act so extreme as to cause injury independent of policy claim or of failure timely to  investigate the insured's claim).

D.   Negligence

Defendant argues that it is entitled to judgment as a matter of law on Plaintiff's negligence claim because Plaintiff does not have an injury independent of those injuries that would have

11

resulted from a wrongful denial under the policy.[18]  Plaintiff does not make any specific argument that his negligence claim should survive, nor has he produced any evidence of negligence. Plaintiff's bare allegation that Defendant withheld policy proceeds is insufficient to raise a genuine issue of material fact on his negligence claim.

E.   <u>Misrepresentation and Fraud by Misrepresentation</u>

Defendant argues that Plaintiff's misrepresentation and fraud claims fail as a matter of law because "Plaintiff has no evidence that he acted in reliance upon any alleged misrepresentations by GeoVera and no evidence of any independent injury as a result of reliance on alleged misrepresentations by GeoVera and thus his misrepresentation and fraud claims fail."[19]  Both of these claims require Plaintiff to prove reliance.  *See* <u>Italian Cowboy Partners, Ltd. v. Prudential Ins. Co. of America</u>, 341 S.W.3d 323, 337 (Tex. 2011) (listing the elements of fraud including reliance); <u>Willis v. Marshall</u>, 401 S.W.3d 689, 698 (Tex. App.—El Paso 2013, no pet.) (listing the elements of negligent misrepresentation including reliance).  Plaintiff produces no summary judgment evidence to raise a genuine issue of material fact that he relied on any alleged misrepresentation.  Thus, Defendant is entitled to judgment

---

[18] Document No. 11 at 20 of 25.

[19] <u>Id.</u> at 21 of 25.

as a matter of law on Plaintiff's misrepresentation and fraud by misrepresentation claims.

F.    Fiduciary Duty

      Defendant correctly argues that under Texas law, there is no general fiduciary duty between an insurer and its insured.    *See* First Christian Acad., Inc. v. N.H. Ins. Co., CIV. A. H-13-1452, 2014 WL 2949439, at *7 (S.D. Tex. July 1, 2014) ("Texas law does not recognize a general fiduciary duty between an insurer and its insured."); Wayne Duddlesten, Inc. v. Highland Ins. Co., 110 S.W.3d 85, 96 (Tex. App.-Houston [1st Dist.] 2003, pet. denied) ("There is no general fiduciary duty between an insurer and its insured."). Accordingly, Plaintiff's breach of fiduciary duty claim is dismissed as a matter of law.

G.    Attorney's Fees

      Plaintiff also claims he is entitled to attorney's fees based on his breach of contract and extra-contractual claims.    As Defendant is entitled to judgment as a matter of law on all of Plaintiff's claims, Defendant is also entitled to judgment as a matter of law denying Plaintiff's claim for attorney's fees.

13

IV. Order

For the foregoing reasons, it is

ORDERED that Defendant Geovera Specialty Insurance Company's Motion for Summary Judgment (Document No. 11) is GRANTED and Plaintiff Gregory Stewart's claims are DISMISSED with prejudice. Defendant's counterclaim for declaratory judgment limiting its liability under the Policy based on water or steam seepage or leakage is subsumed and mooted by Defendant's payment and Plaintiff's acceptance of the full appraisal award, which fully satisfies Defendant's contractual obligations under the Policy. Defendant's counterclaim is therefore DISMISSED as moot.

The Clerk shall notify all parties and provide them with a true copy of this Order.

SIGNED at Houston, Texas, on this 21ST day of October, 2015.

EWING WERLEIN, JR.
UNITED STATES DISTRICT JUDGE